FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk (SBN 109234)
Mark L. Knutson (SBN 131770)
William R. Restis (SBN 246823)
501 West Broadway, Suite 1250
San Diego, CA 92101
Telephone: (619) 238-1333
Fax:  (619) 238-5425
jrk@classactionlaw.com
mlk@classactionlaw.com
wrr@classactionlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CALIFORNIA NORTHERN DISTRICT (OAKLAND)

| | |
|---|---|
| PAUL MERRITT, individually, on behalf of himself all others similarly situated, | Case No. 4:14-MD-02555-JSW |
| Plaintiffs, | |
| -vs.- | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| BCI COCA-COLABOTTLING COMPANY OF LOS ANGELES, COCA-COLA BOTTLING COMPANY OF SONORA, CALIFORNIA, INC., AND THE COCA-COLA COMPANY. | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Paul Merritt ("Merritt"), individually, and on behalf of similarly situated Californians, through their undersigned attorneys, allege the following against defendants BCI Coca-Cola Bottling Company of Los Angeles, Coca-Cola Bottling Company of Sonora, California, Inc.and The Coca-Cola Company. (collectively "Coca-Cola" or "Defendants").

**PRELIMINARY STATEMENT**

1.      Pursuant to this Court's September 3, 2014 scheduling order, Plaintiff files this First Amended Class Action complaint.  This case is about Coca-Cola, one of the most famous and

respected brands in the world.  Faced with clear evidence that it was losing market share because consumers increasingly preferred beverages without artificial flavoring and chemical preservatives, The Coca-Cola Company, owner of the brand, responded, not by providing consumers with what they wanted -- a natural and healthy drink -- but by deceiving them into thinking that Coca-Cola was natural and healthy when, in fact, it contained artificial flavoring and chemical preservatives. This choice by The Coca-Cola Company was not just an example of bad corporate citizenship.  It also clearly violated federal and California state laws specifically prohibiting the precise kind of misbranding and misleading behavior exhibited by Defendants.

2.    The Coca-Cola Company is the world's largest beverage company.  Its product, Coca-Cola,[1] is the world's most popular soft drink and is one of the most well-known and trusted brand names in the world.  Sales of Coca-Cola, however, are fueled by false and deceptive representations that Coca-Cola is not only a healthy product, but one free of artificial flavoring and chemical preservatives.  Every container of Coca-Cola sold in the United States either falsely states that it does not contain artificial flavoring and chemical preservatives, or fails to affirmatively state - - as required by state and federal law - - that it, in fact, contains both artificial flavoring and chemical preservatives.

3.    Advertisements containing the "Coca-Cola" brand name are ubiquitous throughout the country.  There are few places in the United States where it is not prominently displayed on billboards, television and radio advertisements, and in-store displays.  Defendants leverage this brand name to sell millions of containers of Coca-Cola.  Through their advertising efforts, Defendants portray Coca-Cola as an all-American product.  They also falsely portray Coca-Cola as a healthy and all-natural product.

4.    Indeed, The Coca-Cola Company's own website directs consumers to the website of The Coca-Cola Company Beverage Institute for Health & Wellness, which portrays Defendants' products, including Coca-Cola, as an integral part of a healthy diet and an excellent means of

---

[1]    For the avoidance of any confusion, by "Coca-Cola," Plaintiff means that specific soft drink that is commonly sold by Defendants in red cans or bottles containing red labels, and that is sometimes referred to by Defendants as the "original formula."  As used herein, the term "Coca-Cola" is not meant to include any distinct soft drinks that may have similar names, such as Diet Coke, Cherry Coke, or Caffeine Free Coca-Cola.

First Amended Complaint                                    14-MD-02555-JSW

maintaining proper hydration.  The website specifically states that: "Global in scope, the Beverage Institute for Health & Wellness (BIHW) is part of The Coca-Cola Company's ongoing commitment to use evidence-based science to advance knowledge and understanding of beverages, beverage ingredients, and the important role that active healthy lifestyles play in supporting health and wellbeing."  *See* http://beverageinstitute.org/us/about-us/.

5.      It goes so far as to recommend that Defendants' products, including Coca-Cola, should specifically be used to maintain the health and well-being of children.  It states: "Studies suggest that active children consume more fluids and stay better hydrated when the liquid is flavored.  Beverages that are sweetened with caloric sweeteners or with low- and no-calorie sweeteners can be an important contributor to hydration, providing a sweet taste that encourages a child to consume more fluid."  *See* http://beverageinstitute.org/us/article/special-considerations-for-children/.

6.      Defendants' concerted efforts to employ false and deceptive labeling practices to mislead consumers into thinking Coca-Cola is natural and healthy, when in fact it is neither, did not occur by accident.  Rather, it was a response to changing consumer preferences, which were causing Coca-Cola, as well as other carbonated soft drinks, to lose market share.

7.      By 2008, Defendants realized they had a significant problem.  Sales of carbonated sodas were precipitously dropping and reached their lowest levels since 1997.  *See* Jessica Wohl, *U.S. Soft-Drink Volume Decline Steepest in Decades*, Reuters, March 30, 2009.

8.      Worse still, consumers were not only buying and drinking less soda, they were switching to other beverages entirely.  Studies showed that because soda was associated with empty calories and artificial ingredients, consumers were fundamentally changing their drinking habits.  One leading study showed that, between 2003 and 2008, the regular carbonated soft drink market lost 15.6 million adult drinkers.   Marketing research showed that consumers were increasingly interested in all natural foods that did not contain chemical preservatives or artificial flavors. *See Classic Soft Drinks Fall Out of Favor*, Mar. 30, 2009 (available at http://www.mintel.com/press-centre/food-and-drink/classic-soft-drinks-fall-out-of-favor).

9.      These developments were a major concern for Defendants because their beverage

First Amended Complaint                                          14-MD-02555-JSW

business, and their flagship Coca-Cola brand, contained chemical preservatives and artificial flavorings.

10.     Defendants were aware that sales were declining because, as established by consumer surveys, an overwhelming majority of consumers correctly and accurately perceived their products to be unnatural, artificial and chemically preserved.  This critical fact was compounded as competitors like Pepsi and Red Bull began introducing new cola products that were being touted as "all natural" or "100% natural," and which lacked certain artificial ingredients, like the phosphoric acid that Defendants used to artificially flavor and chemically preserve their Coca-Cola products.

11.     The situation so substantially affected Defendants that The Coca-Cola Company's Chief Marketing and Commercial Officer referred to these changes in consumer preferences as a "category five" hurricane that was "really bearing down on us."  *See* FD (Fair Disclosure) Wire, *The Coca Cola Company Analyst Meeting Day 1*, Nov. 16, 2009.  He went on to note that: "That is not a fad. Consumers who classify themselves as LOHAS [Lifestyles of Health and Sustainability] or those who value natural ingredients represent in some markets 35% of the total market."  *Id.*

**The Pemberton Campaign**

12.     Rather than reformulate Coca-Cola and their other soft drinks to appeal to these changing consumer preferences for natural and healthy beverages, Defendants adopted a global campaign of disinformation, false advertising, false labeling and misbranding that was dubbed "Pemberton" after the pharmacist who invented Coca-Cola.  This campaign was designed to fool consumers into the erroneous belief that their products were not artificially flavored or chemically preserved.  In so doing, they not only misled and deceived consumers but, as described below, broke a number of federal and state food labeling laws designed to protect consumers from such illegal and deceptive practices.

13.     The main goal of the Pemberton campaign was, as admitted at the time by the Global Brand Director of Coca-Cola, to falsely represent to consumers that Coca-Cola never had, and never would, add chemical preservatives or artificial flavorings.  "'Pemberton' is more fact-based, affirming for consumers that Coca-Cola never has had, and never will have, added

First Amended Complaint                                          14-MD-02555-JSW

preservatives or artificial flavors."  *See Coke Campaign Focuses on What's Not in the Can; 'No Added Preservatives or Artificial Flavors,' New York Times*, Aug. 6, 2008.

14.     As part of the campaign, Defendants placed false statements on product labels on, for example, two-liter bottles and 12-pack and 24-pack cartons of cans of Coca-Cola that affirmatively misrepresented: "no artificial flavors.  no preservatives added.  since 1886."  This statement, as well as the entire premise of the Pemberton campaign, was false and misleading.

15.     In fact, Coca-Cola contains phosphoric acid.  Phosphoric acid is both an artificial flavoring and a chemical preservative.

16.     Also false was the prominent representation on Coca-Cola containers and advertisements that Coca-Cola is still made with the "original formula" devised by Pemberton in 1886.  In fact, the composition of Coca-Cola has repeatedly changed over time.  These changes have included, among other things, an increase in the amount of unhealthy ingredients like sugar and corn syrup and the addition of artificial ingredients like phosphoric acid.  *See Coca-Cola Bottling Company of Shreveport, Inc. v. The Coca-Cola Company*, 563 F. Supp. 1122, 1131 (D. Del. 1983).

17.     Ignoring the falsity of their statements and labeling, Defendants conceded that Pemberton was designed to deceive consumers by misrepresenting that Coca-Cola does not use chemical preservatives or artificial flavorings.  According to one of Defendants' marketing directors: "When we talked to consumers about Coke, we realized they did not know that it has no added preservatives or artificial flavors. We felt it was important to reassure Coke drinkers of this fact."  *See Coke Campaign Focuses on What's Not in the Can; 'No Added Preservatives or Artificial Flavors,' New York Times*, Aug. 6, 2008.

18.     Similarly, a regional marketing director for a Coca-Cola entity was quoted as saying: "Our research has highlighted that there is a need and an opportunity to remind consumers that Coca-Cola is the 'real thing.' The Pemberton campaign is simply about letting consumers know that the formula for Coca-Cola has not changed for more than 120 years."  *See Coca-Cola: New and Improved? Nope, Still the Same, Marketing Magazine*, Sept. 5, 2008.

19.     The Coca-Cola Company's own CFO, Gary Fayard, made the following statement

First Amended Complaint                                          14-MD-02555-JSW

at a consumer conference held on September 3, 2008:

> North America, it's the one last market we really need to turnaround. We acknowledge it but we've got some very good plans to do that. We think we know what we need to do. We needed to fix our marketing and we think we've done that. We've got very good marketing in the US now. We've started what we call Project Pemberton. This is about sparkling beverages. It will be print. You'll see it soon. It will be print but it's actually re-educating the consumer, and I don't know that you can read what it says there but it says "No preservatives added, no artificial flavors since 1886. Never has, never will". And if you think about the new teenagers today and young adults as they've grown up and there's just an explosion of choices they didn't grow up with their limited choices like I did and maybe they've forgotten that Coke actually was born in 1886 <u>and there weren't artificial ingredients back then. This is all pretty natural stuff and we're just -- to remind people</u>.

*See* The Coca-Cola Company at Lehman Brothers Back-to-School Consumer Conference, *FD (Fair Disclosure) Wire*, Sept. 3, 2008 (emphasis added).

20.    Additionally, Defendants concealed the fact that their Coca-Cola products contained artificial flavors and chemical preservatives by failing to make legally mandated labeling disclosures detailing  the function of ingredients like phosphoric acid that are used as artificial flavorings and chemical preservatives in those products.

21.    Under both federal, and California, Defendants are required to disclose the presence of artificial flavoring and chemical preservatives in food products.

22.    Defendants are also required to clearly state the function of any ingredient that is used as either an artificial flavoring or a chemical preservative.

23.    Nowhere on any Coca-Cola product does the label identify the function of phosphoric acid.

24.    Nowhere on any Coca-Cola product does the label state that the product contains artificial flavoring or chemical preservatives.

25.    In fact, many containers of Coca-Cola affirmatively state that they do not contain any artificial flavoring or chemical preservatives.

26.    Such false statements and omissions violate federal, and California law and render these products illegally misbranded.

27.    These products cannot be lawfully manufactured, distributed, or sold to consumers.

28.     The Food, Drug & Cosmetic Act ("FDCA") and regulations promulgated thereunder bar food manufacturers and distributors like Defendants from selling misbranded and illegal products that contain labels that fail to accurately disclose the nature of their contents.

29.     Under federal, and California, products such as Coca-Cola are "misbranded" if their "labeling is false or misleading in any particular" or does not contain certain information on its labeling.  *See* 21 U.S.C. §§ 343(a), (f) and (k); Cal. Heath and Safety Code § 109875, *et seq.*

30.     Coca-Cola products are misbranded under federal and California law because they fail to disclose on their labeling that they contain artificial flavors or chemical preservatives.  *See* 21 U.S.C. § 343(k); Cal. Health and Safety Code § 110660.

31.     Because the manufacture and sale of Coca-Cola violates the food labeling laws of California, the actions of Defendants also constitute predicate acts under consumer protection laws of this State, including California's Sherman Law, Unfair Competition Law [Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL")], and California's Consumer Legal Remedy Act, [Cal. Civ. Code §§ 1750, *et seq.* ("CLRA")].

32.     Defendants are major international food manufacturers and are well aware of the requirements of federal and California law.  Yet, they have chosen to ignore those laws in order to increase sales and profits at the expense of consumers, including Plaintiffs and members of the class

33.     In order to conceal from consumers (including Plaintiffs) that Coca-Cola and other soft drinks include artificial flavorings and chemical preservatives, Defendants have knowingly and intentionally failed to disclose their existence in Coca-Cola products.

34.     Plaintiffs, individually, and on behalf of other consumers who purchased Coca-Cola, now bring this action, not only to recover damages, but to stop Defendants from continuing to engage in such unlawful actions.

## PARTIES

35.     Plaintiff is a resident of Laguna Beach, California, but has purchased Coca-Cola soda both in Los Angeles and San Francisco, California during the relevant time period. Plaintiff Merritt purchased Coca-Cola in California within the four years preceding the filing of this action (the

1   "Class Period").

2        36.     Upon information and belief, Defendants BCI Coca-Cola Bottling Company of Los

3   Angeles and Coca-Cola Bottling Company of Sonora, California, Inc., are subsidiary affiliates of the

4   Coca-Cola Company, with their respective principal place of business located at One Coca-Cola

5   Plaza, Atlanta, Georgia, and 3624 Jefferson Avenue, Redwood City, CA 94062.

6        37.     Defendants' parent company is the Coca-Cola Company located on Atlanta, Geogia

7   which is one of the world's largest soda beverage company, with more than 1.8 billion servings of

8   its Coca-Cola sodas are consumed world-wide every day.

9        38.     Coca-Cola LA and Coca-Cola Sonoma (combined) manufacture, distribute, and sell

10   approximately 50 percent of the Coca-Cola Company's unit case volume of Coca-Cola soda in

11   California.

12   **JURISDICTION AND VENUE**

13        39.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) because

14   this is a class action in which: (1) the matter in controversy exceeds the sum or value of

15   $5,000,000, exclusive of interest and costs; (2) a member of the class (Plaintiff/ Merritt) is a

16   citizen of California and thus different from the primary defendants; and (3) the number of

17   members of all the proposed plaintiff class in the aggregate is greater than 100.

18        40.     The Court has personal jurisdiction over Defendants because a substantial portion

19   of the wrongdoing alleged herein occurred in California.  Defendants also have sufficient

20   minimum contacts with California and have otherwise intentionally availed themselves of the

21   markets in California (and Nationwide) through the promotion, marketing, and sale of products

22   sufficient to render the exercise of jurisdiction by this Court permissible under traditional

23   notions of fair play and substantial justice.

24        41.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3)

25   because a substantial part of the events or omissions giving rise to these claims occurred in this

26   District, a substantial part of the property that is the subject of this action is situated in this

27   District, and Defendants are subject to the Court's personal jurisdiction with respect to this

28   action.

First Amended Complaint                               14-MD-02555-JSW

## FACTS RELEVANT TO ALL CLAIMS

**Coca-Cola products are misbranded and illegal**

42.    All containers of Coca-Cola sold in California and elsewhere in the United States are misbranded and illegal.

43.    Defendants knowingly and intentionally sold these misbranded products to consumers (including Plaintiff) with the intent to deceive.

44.    Plaintiff Merritt purchased Coca-Cola in Laguna Beach and in Orange County, and also in San Francisco County, California within the past four years.

45.    All containers of Coca-Cola fail to state that any Coca-Cola ingredients are used as artificial flavoring or as a chemical preservative.

46.    Labels on 2 liter bottles, 24-packs of 12 ounce cans, and 12-packs of 12 ounce cans of Coca-Cola state, "no artificial flavors.  no preservatives added since 1886."

47.    Plaintiff Merritt's purchases of Coca-Cola in California included 2 liter bottles and 12-packs of 12 ounce cans that: 1) included the false affirmative statement that Coca-Cola contains no artificial flavors or preservatives; 2) failed to disclose the function of phosphoric acid as a chemical preservative and artificial flavor; and 3) falsely represented that Coca-Cola was manufactured according to the original formula.  In particular, Plaintiff purchased 2 liter bottles and 12-packs of 12 ounce cans that stated on the labels "no artificial flavors.  no preservatives added.  since 1886." and "original formula."

48.    The ingredients in Coca-Cola include phosphoric acid, which is both an artificial flavoring and a chemical preservative.

**Phosphoric acid is an artificial flavoring**

49.    Phosphoric acid is an artificial flavoring.

50.    It has a characteristic tart taste that is imparted into Coca-Cola.

51.    The Coca-Cola Company's own website (http://productnutrition.thecoca-colacompany.com/ingredients) previously stated: "Phosphoric acid is a used in certain soft drinks, including Coca-Cola, to add tartness to the beverage."

52.    It also discussed acidulants such as phosphoric acid and stated that acidulants are:

9

"Acids, which include phosphoric acid and citric acid, and acidic salts help to provide flavoring. They are responsible for the tart taste which helps to balance the sweetness. They also help to reduce the growth of microorganisms (*i.e.*, protect the food from spoiling)."

53.     Today, those same statements have been moved to the website of The Coca-Cola Company Beverage Institute for Health & Wellness.  *See* http://beverageinstitute.org/us/beverage-ingredient-glossary/.

54.     These statements were also present on The Coca-Cola Company's website located at www.cocacolaambassadors.com.

55.     In a publication entitled "What is in Coca-Cola? A briefing on our ingredients," Defendants explicitly state that phosphoric acid "is used to add a tangy taste to some colas."  *See* http://conoce.cocacola.es/img/comunicacioncientifica/docu_ingredientes_ing.pdf.

56.     Further, the American Beverage Association website defines "Phosphoric Acid" in the following manner: "This flavoring agent in soft drinks is a preservative that provides tartness." *See* http://www.ameribev.org/resources/beverage-industry-terms/.

57.     The board of directors of the American Beverage Association (which is a leading trade association for soda manufacturers) is chaired by an officer of a Coca-Cola entity.

58.     Seven officers of The Coca-Cola Company or affiliated entities are board members of the American Beverage Association.

59.     21 C.F.R. § 101.22(a)(1) provides that, "The term *artificial flavor* or *artificial flavoring* means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof."

60.     Similarly, the Coca-Cola Company's website defines "artificial flavors" as "substances used to impart flavor that are not derived from a natural substance such as a spice, fruit or fruit juice, vegetables or herbs."  *See* http://beverageinstitute.org/us/beverage-ingredient-glossary/.

61.     The function of phosphoric acid in Coca-Cola, in part, is to impart flavor.

62.     Phosphoric acid is not derived from a spice, fruit or fruit juice, vegetable or

10

vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

63.     Therefore, phosphoric acid is an artificial flavoring under 21 C.F.R. § 101.22(a)(1).

64.     Phosphoric acid also meets Defendants' own definition of "artificial flavor."

65.     Phosphoric acid also does not meet the criteria to be a natural flavoring.

66.     21 C.F.R. § 101.22(a)(3) provides that, "The term *natural flavor* or *natural flavoring* means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional."

67.     Similarly, the website of Defendants or affiliated entities defines "natural flavors" as follows: "Natural flavors are derived from the essential oils or extracts of spices, fruits, vegetables and herbs."  *See* http://beverageinstitute.org/us/beverage-ingredient-glossary/.

68.     Phosphoric acid is not an essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof.

69.     Therefore, phosphoric acid is not a "natural flavor," as defined in 21 C.F.R. § 101.22(a)(3).

70.     Nor does phosphoric acid meet the Defendants' own definition of a natural flavor.

71.     The FDA considers phosphoric acid to be an artificial flavoring.

72.     In the 1975 Select Committee on GRAS Substances ("SCOGS") Report on phosphates, phosphoric acid is described as follows:

> Phosphoric acid, $H_3PO_4$, is used in the commercial production of polyphosphates, metaphosphates, and other orthophosphates. They serve as acidulants, sequestrants, and flavoring agents in nonalcoholic beverages.

First Amended Complaint                                          14-MD-02555-JSW

1

2          73.     After the SCOGS review, in 1979, FDA published a proposed rule explicitly stating

3  that phosphoric acid is used as a "flavoring agent," as that term is defined in 21 C.F.R. §

4  170.3(o)(12).  *See* 44 Fed. Reg. 74845, 74854 (Dec. 18, 1979).

5          74.     The proposed rule intended to formally identify phosphoric acid as "Generally

6  Recognized as Safe" or "GRAS" for use as a flavoring agent. *See* 44 Fed. Reg. at 74854.

7          75.     However, together with about eighty other pending proposals, the proposed rule was

8  withdrawn - - not because FDA no longer considered phosphoric acid to be GRAS or a flavoring

9  agent - - but because FDA determined "that the backlog of pending proposals dilutes its ability to

10 concentrate on higher priority regulations that are mandated by statute or are necessary to address

11 current public health issues. Because of the agency's limited resources and changing priorities,

12 FDA has been unable to: (1) Consider, in a timely manner, the issues raised by the comments on

13 these proposals and (2) complete the action on them."  *See* 69 Fed. Reg. 68831-01, 68832 (Nov.

14 26, 2004).

15         76.     In addition, FDA commissioned "A Comprehensive Survey of Industry on the Use

16 of Food Chemicals Generally Recognized as Safe" (September 1972)  ("GRAS Report"). The

17 GRAS Report is incorporated into 21 C.F.R. § 170.3(o).

18         77.     The GRAS Report expressly states that phosphoric acid is a GRAS substance with

19 technical functions that include use as a "flavoring agent."  *See* GRAS Report Table 6  at 20.

20         78.     The GRAS Report shows that twenty-three food manufacturers identified

21 phosphoric acid as being used in their products as a flavoring agent.  *Id*.

22         79.     Phosphoric acid is listed on an FDA recognized list of GRAS flavoring substances

23 published by the Flavor and Extract Manufacturers Association ("FEMA").

24         80.     Phosphoric acid is specifically listed in FEMA GRAS List III, which was published

25 in the scientific journal, *Food Technology*, Vol. 19, No. 2.  The FDA has specifically recognized

26 FEMA GRAS List III as reliable. *See* 44 Fed. Reg. 71460, 71461 (Dec. 11, 1979).

27         81.     Defendants are well-aware of this GRAS list.  The Coca-Cola Company is a leading

28 member of FEMA.

First Amended Complaint                                          14-MD-02555-JSW

82.     A representative of The Coca-Cola Company presently sits on FEMA's board of governors. *See* http://www.femaflavor.org/officersgovernors.  A representative of The Coca-Cola Company has served as FEMA's president on multiple occasions, including as recently as 2012. *See* http://www.femaflavor.org/past-fema-presidents.

83.     The Federal Register also states that "Phosphoric acid has many uses including an acidulate and flavor in beverages of the soft drink type." 62 Fed. Reg. 48837-01, 48841 (Sept. 17, 1997).

**Phosphoric acid is a chemical preservative**

84.     Phosphoric acid is a chemical preservative.

85.     21 C.F.R. § 101.22(a)(5) provides that, "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

86.     Phosphoric acid is not a common salt, sugar, vinegar, spice, or oil extracted from spices, nor is it a substance added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties.

87.     As used in Coca-Cola, phosphoric acid prevents or retards deterioration of the product.

88.     The Coca-Cola Company's website describes phosphoric acid as having a preservative effect, discussing acidulants such as phosphoric acid and stating that acidulants are: "Acids, which include phosphoric acid and citric acid, and acidic salts help to provide flavoring. They are responsible for the tart taste which helps to balance the sweetness. They also help to reduce the growth of microorganisms (*i.e.*, protect the food from spoiling)." *See* http://beverageinstitute.org/us/beverage-ingredient-glossary/.

89.     The website of American Beverage Association defines Phosphoric Acid in the following manner: "This flavoring agent in soft drinks is a preservative that provides tartness." *See* http://www.ameribev.org/resources/beverage-industry-terms/.

90.    Coca-Cola bottlers have submitted expert testimony in legal proceedings where the expert testified that phosphoric acid acts as a preservative in Coca-Cola.

91.    Phosphoric acid is a "chemical preservative," as defined in 21 C.F.R. § 101.22(a)(5).

92.    FDA considers phosphoric acid to be a preservative.

93.    FDA also states that such acidulents are used as part of the "acidification" process, "[a] technology used by processors to preserve foods by adding acids and rendering food safe from harmful bacteria." *See* http://www.fda.gov/food/foodscienceresearch/toolsmaterials/ucm215830.htm.  Also "[a]cidification is one way to maintain safe pH levels and keep various foods safe from harmful bacteria." *Id*.

94.    FDA also states that an "inherent control for biological hazards" in carbonated soft drinks is the "[c]ombination of low pH, high carbon dioxide level and the antimicrobial activity of acids such as phosphoric acid." *See:*
http://www.fda.gov/downloads/food/foodscienceresearch/ucm334110.pdf  at 39.

95.    FDA has also stated that phosphoric acid is a "common acidulent[]" found in "cola soda."  *See* http://www.fda.gov/food/foodscienceresearch/toolsmaterials/ucm215830.htm.

96.    The 1979 proposed rule stated that phosphoric acid is used as a pH control agent. *See* 44 Fed. Reg. 74845, 74854 (Dec. 18, 1979).

97.    The GRAS Report also states that technical functions of phosphoric acid include use as a pH control agent. *See* GRAS Report Table 6 at 20.

**Coca-Cola products are misbranded and illegal**

98.    Because Coca-Cola contains artificial flavoring and chemical preservatives, Coca-Cola product labels are required to state the presence of such artificial flavoring and chemical preservatives and must specifically identify the function of phosphoric acid, as used in Coca-Cola.

99.    21 C.F.R. § 101.22(c) provides that "[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."

First Amended Complaint                                        14-MD-02555-JSW

100.    It further provides that "[a] food to which a chemical preservative(s) is added shall …bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, *e.g.*, 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention.'"

101.    Containers of Coca-Cola do not have a statement that they contain artificial flavoring.

102.    Containers of Coca-Cola do not have a statement that they contain chemical preservatives.

103.    Containers of Coca-Cola do not specify the function of phosphoric acid, as used in the product.

104.    Because Coca-Cola containers do not have labels with statements that they contain artificial flavoring or chemical preservatives, they are misbranded under the FDCA and California food labeling laws.

105.    Because Coca-Cola containers do not have labels with statements that the function of phosphoric acid therein is as an artificial flavor or chemical preservative, they are misbranded under the FDCA and the food labeling laws of California.

106.    Certain Coca-Cola containers (2-liter bottles, 24-packs of 12 ounce cans, and 12-packs of 12 ounce cans) also contain the affirmative statement that there are "no artificial flavors. no preservatives added."

107.    This statement is false.

108.    Defendants knowingly and intentionally failed to include statements on containers of Coca-Coca regarding the presence of artificial flavoring and chemical preservatives, despite the fact that Coca-Cola contains artificial flavoring and chemical preservatives.

109.    Defendants knowingly, intentionally, and falsely affirmatively stated that Coca-Cola has "no artificial flavors.  no preservatives added," despite the fact that Coca-Cola contains artificial flavoring and chemical preservatives.

110.    Because these Coca-Cola containers falsely represent that they contain no artificial flavors or preservatives, they are misbranded under both the FDCA and the labeling laws of

California.

111.   Defendants have violated the requirements of 21 C.F.R. § 101.22, 21 U.S.C. § 343(a), 21 U.S.C. § 343(f) and 21 U.S.C. § 343(k).

112.   Defendants have also violated 21 C.F.R. § 1.21 by, *inter alia*, failing to reveal material facts on the labels of Coca-Cola containers.

113.   Defendants are aware of these statutes and regulations, as evidenced by the labels of their other products.

114.   For example, the ingredient list on the label of Minute Maid Pomegranate Blueberry Flavored Blend of 5 Juices states that it contains citric acid and that the citric acid's technical function is that it "provides tartness."

115.   This statement of citric acid's technical function was included on the label in an effort to comply with 21 C.F.R. § 101.22.

116.   There is no other reason why this label would say that the citric acid's technical function is to "provide[] tartness."

117.   With respect to each of the aforementioned misbranded Coca-Cola soda products, Defendants have violated the FDCA and regulations promulgated thereunder.

118.   As a result, Defendants have violated the Sherman Law.

119.   Inter alia, Defendants have specifically violated the following Sherman Law provisions.

120.   Defendants have violated California Health & Safety Code § 110740 because Coca-

121.   Cola products bear or contain artificial flavoring, artificial coloring, or chemical preservative without labeling stating that fact.

122.   Defendants have violated California Health & Safety Code § 110705 because words, statements, or other information required pursuant to the Sherman Law to appear on the label or labeling are not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

123.    Defendants have violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

124.    Defendants have violated California Health & Safety Code § 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely advertised food.

125.    Defendants have violated California Health & Safety Code §§ 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

126.    Defendants have violated California Health & Safety Code § 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

127.    Defendants have violated California Health & Safety Code § 110765, which makes it unlawful for any person to misbrand any food.

128.    Defendants have violated California Health & Safety Code § 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer any such food for delivery.

129.    Defendants have violated California Health & Safety Code § 110660 because their labeling is false and misleading in one or more ways.

130.    Defendants have violated California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations promulgated thereunder.

131.    Defendants have violated California Health & Safety Code § 110670 because their labeling fails to conform to the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations promulgated thereunder.

132.    Because Defendants' products are misbranded and illegal, they have a value of zero.

133.    Plaintiffs and other consumers were injured when paying money for a worthless

17

product.

**Purchasers of Misbranded Products Have Been Injured**

134.  Had Plaintiff Merritt and the Class known that Coca-Cola was misbranded, they would not have purchased Coca-Cola.

135.  Had Plaintiff known that Coca-Cola was an illegal product, Plaintiff would not have purchased Coca-Cola.

136.  Had Plaintiff known that Coca-Cola violated federal or state laws and regulations, Plaintiff would not have purchased Coca-Cola.

137.  Plaintiff did not know that phosphoric acid was a chemical preservative or an artificial flavoring.

138.  Had Plaintiff known that Coca-Cola contained artificial flavoring, Plaintiff would not have purchased Coca-Cola.

139.  Had Plaintiff Merritt and the Class known that Coca-Cola contained chemical preservatives, they would not have purchased Coca-Cola.

140.  Because Coca-Cola products are illegal and misbranded, they are economically worthless.

141.  Because Coca-Cola products are illegal and misbranded, they cannot be lawfully resold.

142.  Plaintiff paid money for Coca-Cola products that were worth zero.

143.  Had Plaintiff known that Coca-Cola was worthless, Merritt and the Class would not have purchased Coca-Cola.

144.  Had Plaintiff known that Coca-Cola could not be lawfully sold, held or possessed, Plaintiff would not have purchased Coca-Cola.

145.  Had Plaintiff known that Coca-Cola could not be lawfully resold, Plaintiff Merritt and the Class would not have purchased Coca-Cola.

146.  Plaintiff could have purchased cheaper alternative products that were not illegal, misbranded, or worthless.

147.  Plaintiff paid an unwarranted premium for Coca-Cola over cheaper alternative cola

First Amended Complaint                                    14-MD-02555-JSW

products that were not illegal, misbranded, or worthless.

148.    Plaintiff relied on the Coca-Cola labels to Plaintiff' detriment.

149.    Plaintiff's' reliance was reasonable.

150.     A reasonable consumer would have been misled by the Defendants' actions.

151.    As a result of Defendants' unlawful misrepresentations, Plaintiff Merritt and millions of others in California and throughout the United States purchased Coca-Cola.

152.    Plaintiff and millions of others in California and throughout the United States who purchased Coca-Cola were injured as a result of Defendants' actions.

153.    Plaintiff and other purchasers of Coca-Cola paid money for products that were worth zero.

154.    Plaintiff and other purchasers of Coca-Cola paid money for products that were of a lesser value than represented by Defendants.

155.    Plaintiff Merritt and other purchasers of Coca-Cola also paid an unwarranted premium above alternative products that were not illegal, misbranded, or worthless.

## CLASS ACTION ALLEGATIONS

156.    Plaintiff Merritt brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class (the "Class"):

> 1)   All persons who, while residing in California and within four years from the commencement of this lawsuit (the "Class Period") purchased Coca-Cola soda in California in 12 can packs, 20 can packs and/or 1 liter bottles (the "Class").

157.    Plaintiff seeks to represent the members of the Class who purchased Coca-Cola in California.

158.    The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

159.    This action can be maintained as a class action because there is a well-defined

community of interest in the litigation and the proposed Class is easily ascertainable.

160. **Numerosity**:  Based upon Defendants' publicly available sales data with respect to Coca-Cola, it is estimated that the number of Class members is potentially in the millions, and that joinder of all Class members is impracticable.

161. **Common Questions Predominate**:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

a. Whether Defendants engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Coca-Cola sold to consumers;

b. Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law;

c. Whether Defendants made unlawful and misleading claims regarding artificial flavoring and chemical preservatives in Coca-Cola;

d. Whether Defendants unlawfully sold misbranded products in violation of the FDCA and the labeling laws of California;

e. Whether Defendants violated California Bus. & Prof. Code § 17200 *et seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the Consumer Legal Remedies Act, Cal. Civ. Code. § 1750 et seq., the Sherman Law; or the FDCA and regulations promulgated thereunder;

f. Whether Defendants breached express or implied warranties;

g. Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

h. Whether Defendants' unlawful, unfair and deceptive practices harmed Plaintiff and the Class; and

i. Whether Defendants were unjustly enriched by their deceptive practices.

162. **Typicality**:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendants' Purchased Products during the Class Period.  Defendants' unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  The injuries of each member of the

First Amended Complaint                                                    14-MD-02555-JSW

Class were caused directly by Defendants' wrongful conduct.  In addition, the factual

underpinning of Defendants' misconduct is common to all Class members and represents a

common thread of misconduct resulting in injury to all members of the Class.  Plaintiff Merritt's

claims arise from the same practices and course of conduct that give rise to the claims of the

Class members and are based on the same legal theories.

163.   **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the Class.

Neither Plaintiff nor his counsel have any interests that conflict with or are antagonistic to the

interests of the Class members.  Plaintiff has retained highly competent and experienced class

action attorneys to represent his interests and those of the members of the Class.  Plaintiff and

his counsel have the necessary resources to adequately and vigorously litigate this class action,

and Plaintiff and his counsel are aware of their fiduciary responsibilities to the Class members

and will diligently discharge those duties by vigorously seeking the maximum possible recovery

for the Class.

164.   **Superiority**:  There is no plain, speedy, or adequate remedy other than by

maintenance of this class action.  The prosecution of individual remedies by members of the

Class will tend to establish inconsistent standards of conduct for Defendants and result in the

impairment of Class members' rights and the disposition of their interests through actions to

which they are not parties.  Class action treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

and without the unnecessary duplication of effort and expense that numerous individual actions

would create.  Further, as the damages suffered by individual members of the Class may be

relatively small, the expense and burden of individual litigation would make it difficult or

impossible for individual members of the Class to redress the wrongs done to them, while an

important public interest will be served by addressing the matter as a class action. Class

treatment of common questions of law and fact would also be superior to multiple individual

actions or piecemeal litigation in that class treatment will conserve the resources of the Court

and the litigants, and will promote consistency and efficiency of adjudication.

165.   The prerequisites to maintaining a class action for injunctive or equitable relief

First Amended Complaint                                                   14-MD-02555-JSW

pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

166.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

167.    Plaintiff and his counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

168.    Plaintiff Merritt is a member of the Class he seeks to represent.  Plaintiff's claims are typical of the Class members' claims.  Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff's claims are typical and representative of the Class.

169.    There are no unique defenses which may be asserted against Plaintiff Merritt individually, as distinguished from the Class.  The claims of Plaintiff are the same as those of the Class.

170.    No conflicts of interest exist between Plaintiff and the other Class members. Plaintiff  has retained counsel that is competent and experienced in complex class action litigation.  Plaintiff and his counsel will fairly and adequately represent and protect the interests of the Class.

171.    This class action is superior to any other method for the fair and efficient adjudication of this dispute.

### FIRST COUNT

**Business and Professions Code § 17200, *et seq.*
<u>Unlawful Business Acts and Practices</u>**

172.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

173.   Defendants' conduct constitutes unlawful business acts and practices.

174.   Defendants sold Coca-Cola soda in California during the Class Period.

175.   Defendants are corporations and, therefore, are "persons" within the meaning of the Sherman Law.

176.   Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

177.   Defendants' business practices are unlawful under § 17200, *et seq.*, by virtue of Defendants' violations of § 17500, *et seq.,* which forbids untrue and misleading advertising.

*178.*   Defendants' business practices are unlawful under § 17200, *et seq.*, by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*,

179.   Defendants sold to Plaintiff and the Class products that were not capable of being sold legally, and which have no economic value.

180.   Plaintiff and the Class paid a premium price for these products.

181.   Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

182.   As a result of Defendants' illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any Class member any money paid for Coca-Cola soda.

## SECOND COUNT

### Business and Professions Code § 17200, *et seq.*
### Unfair Business Acts and Practices

183.   Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

184.   Defendants' conduct as set forth herein constitutes unfair business acts and practices.

First Amended Complaint                                   14-MD-02555-JSW

185.    Plaintiff and members of the Class suffered a substantial injury by virtue of buying Coca-Cola that they would not have purchased absent Defendant's illegal conduct.

186.    Defendants' deceptive marketing, advertising, packaging and labeling of Coca-Cola soda and their sale of unsalable misbranded products was of no benefit to consumers, and the harm to consumers and competition is substantial.

187.    Defendants sold to Plaintiff and the Class products that were not capable of being legally sold and that have no economic value.

188.    Plaintiff and the Class paid a premium price for Coca-Cola soda.

189.    Plaintiff and the Class who purchased Coca-Cola soda had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

190.    The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor.

191.    Defendants' conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

192.    As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Coca-Cola soda by Plaintiff and the Class.

**THIRD COUNT**

**Business and Professions Code § 17200, *et seq.*
Fraudulent Business Acts and Practices**

193.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

*194.*    Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code § 17200, *et seq.*

First Amended Complaint                                    14-MD-02555-JSW

195.    Defendants' misleading marketing, advertising, packaging and labeling of Coca-Cola soda were likely to deceive reasonable consumers.

196.    Plaintiff and members of the Class were deceived.

197.    Defendants have engaged in fraudulent business acts and practices.

198.    Defendants' fraud and deception caused Plaintiff and the Class to purchase Coca-Cola soda that they would otherwise not have purchased had they known the true nature of these products.

199.    As a result of Defendants' conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Coca-Cola soda by Plaintiff and the Class.

**FOURTH COUNT**

**Business and Professions Code § 17500,** *et seq.*
**Misleading and Deceptive Advertising**

200.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

201.    Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.*, for misleading and deceptive advertising against Defendants.

202.    Defendants engaged in a scheme of offering Coca-Cola soda for sale to Plaintiff and members of the Class by way of, *inter alia,* product packaging and labeling, and other promotional materials.

203.    These materials misrepresented and/or omitted the true contents and nature of Coca-Cola soda.

204.    Defendants' advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code § 17500, *et seq.,* in that such product packaging, labeling, and promotional materials were intended as inducements to purchase Coca-Cola soda and are

25

statements disseminated by Defendants to Plaintiff and the Class that were intended to reach members of the Class.

205.    Defendants knew, or in the exercise of reasonable care, should have known, that these statements were misleading and deceptive as set forth herein.

206.    In furtherance of its plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Coca-Cola soda.

207.    Plaintiff and the Class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

208.    Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obscuring the true composition and nature of Coca-Cola soda in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

209.    As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.,* Defendants have been unjustly enriched at the expense of Plaintiff and the Class.

210.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Coca-Cola soda by Plaintiff and the Class.

### FIFTH COUNT

**Business and Professions Code § 17500,** *et seq.*
**Untrue Advertising**

211.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

212.    Plaintiff assert this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.,* regarding untrue advertising.

213.   Defendants engaged in a scheme of offering Coca-Cola soda for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.

214.   These materials misrepresented or omitted the true contents and nature of Coca-Cola soda.

215.   Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising contained in Business and Professions Code §17500, *et seq.*, where the product packaging, labeling, and promotional materials were intended as inducements to purchase Coca-Cola soda, and are statements disseminated by Defendants to Plaintiff and the Class.

216.   Defendants knew, or in the exercise of reasonable care, should have known, that these statements were untrue.

217.   In furtherance of its plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Coca-Cola soda, and falsely misrepresented the nature of Coca-Cola.

218.   Purchasers like Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

219.   Defendants' conduct in disseminating untrue advertising throughout the United States and California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Coca-Cola soda in violation of the "untrue prong" of California Business and Professions Code § 17500.

220.   As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.,* Defendants have been unjustly enriched at the expense of Plaintiff and the Class.

221.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Coca-Cola soda by Plaintiff and the Class.

## SIXTH COUNT

### Consumer Legal Remedies Act. Cal. Civ. Code §1750, *et seq.*

222.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

223.     This cause of action is brought pursuant to the CLRA. This cause of action does not currently seek monetary relief and is limited to injunctive relief.

224.     Plaintiff intends to amend this Complaint to seek monetary relief in accordance with the CLRA after providing Defendants with notice pursuant to Cal. Civ. Code § 1782.

225.     At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

226.     Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendants for its violations of the CLRA.

227.     In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to

228.     Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

229.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

230.     Defendants sold Coca-Cola soda in California and nationwide during the Class Period.

231.     Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

232.     Coca-Cola soda is a "good" within the meaning of Cal. Civ. Code §1761(a).

233.     By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5), of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the

1    particular ingredients, characteristics, uses, benefits and quantities of the goods.

2          234.     By engaging in the conduct set forth herein, Defendants violated and continue to

3    violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair

4    methods of competition and unfair or fraudulent acts or practices in that it advertises goods as

5    processing a particular standard, quality or grade which it lacks and/or with the intent not to sell

6    the goods as advertised.

7          235.     By engaging in the conduct set forth herein, Defendants have violated and

8    continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes

9    unfair methods of competition and unfair or fraudulent acts or practices in that it represents that

10    a subject of a transaction has been supplied in accordance with a previous representation when

11    they have not.

12          236.     Plaintiff requests that the Court enjoin Defendants from continuing to employ the

13    unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).

14          237.     If Defendants are not restrained from engaging in these practices in the future,

15    Plaintiff and the Class will continue to suffer harm.

16

17                                **SEVENTH COUNT**

18            **Restitution Based on Unjust Enrichment/Quasi-Contract**

19          238.     Plaintiff repeats and realleges each of the above allegations as if fully set forth

20    herein.

21          239.     As a result of Defendants' fraudulent and misleading labeling, advertising,

22    marketing, and sales of Coca-Cola, Defendants were enriched at the expense of Plaintiff and the

23    Class.

24          240.     Defendants sold Coca-Cola soda to Plaintiff and the Class that was not capable of

25    being sold and had no economic value.

26          241.     It would be against equity and good conscience to permit Defendants to retain the

27    ill-gotten benefits it received from Plaintiff and the Class in light of the fact that the products

28    were not what Defendants purported them to be.

First Amended Complaint                              14-MD-02555-JSW

242.   Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendants for the products at issue.

243.   As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## EIGHTH COUNT

## (Breach of Implied Warranty of Merchantability)

244.   Plaintiff Merritt repeats and realleges each of the above allegations as if fully set forth herein.

245.   Implied in the purchase of Coca-Cola by Plaintiff and the Class is the warranty that the purchased products are legal and can be lawfully held, possessed, sold or resold.

246.   Implied in the purchase of Coca-Cola by Plaintiff and the Class is the warranty that the purchased products are properly labeled and packaged.

247.   Defendants knowingly and intentionally misbranded Coca-Cola products.

248.   Defendants knew those Coca-Cola products were illegal.

249.   Plaintiff would not have knowingly purchased products that were illegal, misbranded, or unsellable.

250.   Plaintiff would not have knowingly purchased products that were illegal to hold, possess, sell or resell.

251.   No reasonable consumer would knowingly purchase products that are illegal, misbranded, or unsellable.

252.   No reasonable consumer would purchase products that cannot be legally held, possessed, sold or resold.

253.   The purchased Coca-Cola products were unfit for the ordinary purpose for which Plaintiff and the Class purchased them.

254.   As misbranded products that could not be legally sold, held, possessed or resold, the Coca-Cola products were not merchantable.

255.    As a result, Plaintiff and the Class were injured through their purchase of an unsuitable, useless, illegal, misbranded, and unsellable product.

256.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Coca-Cola products, together with punitive damages.

### NINTH COUNT

### (Breach of Express Warranty)

257.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

258.    Defendants engaged in a scheme of offering Coca-Cola for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.

259.    In furtherance of its plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and nature of Coca-Cola.

260.    Plaintiff Merritt and the Class were the intended targets of such representations.

261.    Plaintiff and the Class reasonably relied on Defendants' representations.

262.    Defendants' affirmations of fact and/or promises relating to their Coca-Cola products created express written warranties that the products would conform to Defendants' affirmations of fact and/or promises.

263.    Alternatively, Defendants' descriptions of their Coca-Cola products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiff and the other Class members would conform to Defendants' descriptions and specifications.

264.    In fact, the Coca-Cola products purchased by Plaintiff did not so conform.

265.    Defendants expressly warrant on Coca-Cola products that they do not contain artificial flavors or preservatives.

266.    Coca-Cola products do, in fact, contain artificial flavors and preservatives.

267.     Plaintiff and members of the Class relied on the false representation that Coca-Cola products do not contain artificial flavors or preservatives.

268.     Defendants have breached their express warranty.

269.     As a result of the foregoing, Plaintiff and the other Class members have suffered damages in that the value of the products they purchased was less than warranted by Defendants.

270.     Plaintiff asserts this cause of action for violations of the laws of California pertaining to express warranties.

271.     Plaintiff and the Class were injured as a result of Defendants' breach of their express warranties about Coca-Cola.

272.     Coca-Cola that is misbranded due to the Defendants' disregard of food labeling regulations enacted for the protection of public health is a thing of danger that, like all misbranded food, poses a risk to public health.

273.     By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Coca-Cola products, together with punitive damages.

## TENTH COUNT

### (Negligent Misrepresentation)

274.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

275.     Defendants had a duty to disclose the presence of artificial flavoring and chemical preservatives in Coca-Cola.

276.     In making misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about their Coca-Cola products, Defendants failed to fulfill their duties to disclose the material facts alleged above. Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendants.

277.     Plaintiff and the other Class members, as a direct and proximate cause of Defendants' breaches of their duties, reasonably relied upon such representations and omissions to their detriment.

278.     By reason of the foregoing, Plaintiff and the other Class members have suffered

damages in an amount to be proved at trial, together with punitive damages, to the extents available.

### ELEVENTH COUNT

#### (Negligence)

279.   Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

280.   Defendants negligently made misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about their Coca-Cola products.

281.   Defendants failed to label or advertise their Coca-Cola products in a lawful manner and violated their duties to disclose the material facts alleged above.

282.   Plaintiff and the other Class members, as a direct and proximate cause of Defendants' breaches of their duties, reasonably relied upon such representations to their detriment.

283.   As described above, Defendants' actions violated a number of express statutory provisions designed to protect Plaintiff and the Class.

284.   Defendants' illegal actions constitute negligence *per se*.

285.   Moreover, the statutory food labeling and misbranding provisions violated by Defendants are strict liability provisions.

286.   By reason of the foregoing, Plaintiff and the other Class members have suffered damages in an amount to be determined at trial, together with punitive damages.

### TWELFTH COUNT

#### (Unjust Enrichment)

287.   Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

288.   As a result of Defendants unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiff and the Class through the payment of the purchase price for Coca-Cola.

289.   Under the circumstances, it would be against equity and good conscience to

First Amended Complaint                                                    14-MD-02555-JSW

permit Defendants to retain the ill-gotten benefits that they received from the Plaintiff and the Class.

290.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Coca-Cola products, together with punitive damages.

## THIRTEENTH COUNT

### (Money Had and Received)

291.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

292.    The sale of a misbranded food product is an illegal act in California.  Such a sale is expressly prohibited by California law.

293.    The sale of a misbranded product violates the public policy of California.

294.    The misbranded products purchased by Plaintiff and the Class were illegal and worthless as a matter of law.

295.    Plaintiff and members of the Class were unaware that the Coca-Cola products they purchased were misbranded, illegal, and worthless.

296.    Defendants received the money from Plaintiff and the Class used to purchase Coca-Cola products.

297.    Defendants benefitted from receipt of this money.

298.    Under principles of equity and good conscience, Defendants should not be permitted to keep this money.

299.    Plaintiff and the members of the Class are thus entitled to recovery of the funds they expended to purchase the Defendants' misbranded Coca-Cola products, together with punitive damages.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all other similarly situated persons, prays for judgment against Defendants as follows:

First Amended Complaint                                    14-MD-02555-JSW

1       A.    For an order certifying this case as a class action and appointing Plaintiff and his

2   counsel to represent the Class;

3       B.    For an order awarding, as appropriate, damages, restitution, and/or disgorgement to

4   Plaintiff and the Class including all monetary relief to which Plaintiff and the Class are entitled

5   pursuant to California Bus. & Prof. Code § 17200, *et seq.,* California Bus. & Prof. Code § 17500,

6   *et seq.,* the Consumer Legal Remedies Act, Cal. Civ. Code. § 1750, *et seq.,* the Sherman Law; or

7   the FDCA and regulations promulgated thereunder;

8       C.    For an order requiring Defendants to immediately cease and desist from selling

9   Coca-Cola in violation of law; enjoining Defendants from continuing to market, advertise,

10  distribute, and sell Coca-Cola in the unlawful manner described herein; and ordering Defendants to

11  engage in corrective action;

12      D.    For all equitable remedies available under California Law, as a result of the sale

13          of a misbranded products in this State;

14      E.    For an award of monetary and statutory damages as permitted by law;

15      E.    For an order awarding attorneys' fees and costs;

16      F.    For an order awarding punitive damages;

17      G.    For an order awarding pre-judgment and post-judgment interest; and

18      H.    For an order providing such further relief as this Court deems just and proper.

19      Respectfully submitted,

20      FINKELSTEIN & KRINSK LLP

21  Dated: September 22, 2014    By:___/s/ Mark L. Knutson_____

22      Mark L. Knutson, Esq.

23      mlk@classactionlaw.com
    Jeffrey R. Krinsk, Esq.

24      jrk@classactionlaw.com
    William R. Restis, Esq.

25      wrr@classactionlaw.com
    501 West Broadway, Suite 1250

26      San Diego, CA  92101
    Tel:  (619) 238-1333

27      Fax:  (619) 238-5425

28      Attorneys for Plaintiff

First Amended Complaint    14-MD-02555-JSW