Keith M. Fleischman
Bradley F. Silverman
Joshua D. Glatter
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, NY 10017
(212) 880-9571
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com
jglatter@fleischmanlawfirm.com

Don Barrett
Brian K. Herrington
BARRETT LAW GROUP, P.A.
404 Court Square North
Lexington, MS 39095
(662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com

*Lead Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: COCA-COLA PRODUCTS MARKETING AND SALES PRACTICES LITIGATION (NO. II) | Case No.  4:14-md-02555-JSW |
| | **CLASS ACTION AND REPRESENTATIVE ACTION** |
| | **AMENDED CONSOLIDATED COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF** |
| | JURY TRIAL DEMANDED |
| THIS DOCUMENT RELATES TO: | |
| *Engurasoff v. The Coca-Cola Company, et al.* Case No. 4:13-CV-03990-JSW | |
| *Aumiller v. The Coca-Cola Company, et al.* Case No.  4:14-cv-01447-JSW | |
| *Merritt v. The Coca-Cola Company, et al.* Case No. 4:14-cv-0l067-JSW | |
| *Nobles v. The Coca-Cola Company, et al.* Case No.  4:13-cv-05017-JSW | |

Plaintiffs Ayanna Nobles, Thomas C. Woods[1], Paul Merritt, George Engurasoff, and Joshua Ogden (collectively "Plaintiffs"), individually, and on behalf of similarly situated persons, through their undersigned attorneys, bring this lawsuit against Defendants The Coca-Cola Company, Coca-Cola Refreshments USA, Inc., BCI Coca-Cola Bottling Company of Los Angeles, and Coca-Cola Bottling Company of Sonora, California Inc. (collectively "Defendants").

## PRELIMINARY STATEMENT

1.      This case is about Coca-Cola, one of the most famous and respected brands in the world. Faced with clear evidence that it was losing market share because consumers increasingly preferred beverages without artificial flavoring and chemical preservatives, The Coca-Cola Company, owner of the brand, responded not by providing consumers with what they wanted -- a natural and healthy drink -- but by deceiving them into thinking that Coca-Cola was natural and healthy when in fact it contained artificial flavoring and chemical preservatives. This choice by The Coca-Cola Company was not just an example of bad corporate citizenship. It also clearly violated federal and state laws specifically prohibiting the precise kind of misbranding and misleading behavior exhibited by The Coca-Cola Company.

2.      The Coca-Cola Company is the world's largest beverage company. Its product, Coca-Cola,[2] is the world's most popular soft drink and is one of the most well-known and trusted brand names in the world. Sales of Coca-Cola, however, are fueled by false and deceptive representations that Coca-Cola is not only a healthy product, but one free of artificial flavoring and chemical preservatives. Every container of Coca-Cola sold in the United States either falsely states that it does not contain artificial flavoring and chemical preservatives, or fails to affirmatively state - - as required by state and federal law - - that it, in fact, contains both artificial flavoring and chemical preservatives.

---

[1] Plaintiff Thomas C. Woods has substituted and replaced plaintiff Bristol I. Aumiller.

[2] As used in this complaint "Coca-Cola" is defined to mean that specific soft drink that is commonly sold by Defendants in red cans or bottles containing red labels, and that is sometimes referred to by Defendants as the "original formula." As used herein, the term "Coca-Cola" is not meant to include any distinct soft drinks, including but not limited to, Diet Coke, Cherry Coke, Coca-Cola Life, Coke-Zero, or Caffeine Free Coca-Cola, which may have similar names.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 4:14-md-02555-JSW

3.     Advertisements containing the "Coca-Cola" brand name are ubiquitous throughout the country. There are few places in the United States where it is not prominently displayed on billboards, television and radio advertisements, and in-store displays. Defendants leverage this brand name to sell millions of containers of Coca-Cola. Through their advertising efforts, Defendants portray Coca-Cola as an all-American product. They also falsely portray Coca-Cola as a healthy and all-natural product.

4.     Indeed, The Coca-Cola Company's own website directs consumers to the website of The Coca-Cola Company Beverage Institute for Health & Wellness, which portrays Defendants' products, including Coca-Cola, as an integral part of a healthy diet and an excellent means of maintaining proper hydration. The website specifically states that: "Global in scope, the Beverage Institute for Health & Wellness (BIHW) is part of The Coca-Cola Company's ongoing commitment to use evidence-based science to advance knowledge and understanding of beverages, beverage ingredients, and the important role that active healthy lifestyles play in supporting health and wellbeing." *See* http://beverageinstitute.org/us/about-us/.

5.     It goes so far as to recommend that Defendants' products, including Coca-Cola, should specifically be used to maintain the health and well-being of children. It states: "Studies suggest that active children consume more fluids and stay better hydrated when the liquid is flavored. Beverages that are sweetened with caloric sweeteners or with low- and no-calorie sweeteners can be an important contributor to hydration, providing a sweet taste that encourages a child to consume more fluid." *See* http://beverageinstitute.org/us/article/special-considerations-for-children/.

6.     Defendants' concerted efforts to employ false and deceptive labeling practices to mislead consumers into thinking Coca-Cola is natural and healthy, when in fact it is neither, did not occur by accident. Rather, it was a response to changing consumer preferences, which were causing Coca-Cola, as well as other carbonated soft drinks, to lose market share.

7.     By 2008, Defendants realized they had a significant problem. Sales of carbonated sodas were precipitously dropping and reached their lowest levels since 1997. *See* Jessica Wohl, *U.S. Soft-Drink Volume Decline Steepest in Decades*, Reuters, Mar. 30, 2009.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 4:14-md-02555-JSW

8.      Worse still, consumers were not only buying and drinking less soda, they were switching to other beverages entirely. Studies showed that because soda was associated with empty calories and artificial ingredients, consumers were fundamentally changing their drinking habits. One leading study showed that between 2003 and 2008 the regular carbonated soft drink market lost 15.6 million adult drinkers. Marketing research showed that consumers were increasingly interested in all natural foods that did not contain chemical preservatives or artificial flavors. *See Classic Soft Drinks Fall Out of Favor*, Mar. 30, 2009 (available at http://www.mintel.com/press-centre/food-anddrink/classic-soft-drinks-fall-out-of-favor).

9.      These developments were a major concern for Defendants because their beverage business, and their flagship Coca-Cola brand, contained chemical preservatives and artificial flavorings.

10.      Defendants were aware that Coca-Cola's sales were declining because, as established by consumer surveys, an overwhelming majority of consumers correctly and accurately perceived their products to be unnatural, artificial and chemically preserved. This critical fact was compounded as competitors like PepsiCo. and Red Bull GmBH began introducing new cola products that were being touted as "all natural" or "100% natural" and which lacked certain artificial ingredients, like the phosphoric acid the Defendants used to artificially flavor and chemically preserve  Coca-Cola.

11.      The situation so substantially affected Defendants that The Coca-Cola Company's Chief Marketing and Commercial Officer referred to these changes in consumer preferences as a "category five" hurricane that was "really bearing down on us." *See* FD (Fair Disclosure) Wire, *The Coca Cola Company Analyst Meeting Day 1*, Nov. 16, 2009. He went on to note that: "That is not a fad. Consumers who classify themselves as LOHAS [Lifestyles of Health and Sustainability] or those who value natural ingredients represent in some markets 35% of the total market." *Id.*

**The Pemberton Campaign**

12.     Rather than reformulate Coca-Cola and their other soft drinks to appeal to these changing consumer preferences for natural and healthy beverages, Defendants adopted a global campaign of disinformation, false advertising, false labeling and misbranding, dubbed "Pemberton" after John Pemberton, the pharmacist who invented Coca-Cola. This campaign was designed to mislead into falsely believing that Coca-Cola was not artificially flavored or chemically preserved. In so doing, they not only misled and deceived consumers but, as described below, broke a number of federal and state food labeling laws designed to protect consumers from such illegal and deceptive practices.

13.     The main goal of the Pemberton campaign was, as admitted at the time by the Global Brand Director of Coca-Cola, to falsely represent to consumers that Coca-Cola never had, and never would, add chemical preservatives or artificial flavorings. As a spokesperson for Defendants stated in 2008, "'Pemberton' is more fact-based, affirming for consumers that Coca-Cola never has had, and never will have, added preservatives or artificial flavors." *See New York Times,* Aug. 6, 2008*,* "Coke Campaign Focuses on What's Not in the Can; 'No Added Preservatives or Artificial Flavors.'"

14.     As a key linchpin of their Pemberton Campaign, Defendants placed false affirmative statements on product labels and packages of two-liter bottles and 12-pack and 24-pack cartons of Coca-Cola. Specifically, the Defendants placed a false statement on the labels and packages representing that Coca-Cola contained "**no artificial flavors. no preservatives added. since 1886**." This statement, as well as the entire premise of the Pemberton campaign, was false and misleading.

15.     In fact, Coca-Cola contains phosphoric acid. Phosphoric acid is both an artificial flavoring and a chemical preservative.

16.     Also false was the prominent representation on Coca-Cola containers and advertisements that Coca-Cola is still made with the "original formula" devised by Pemberton in 1886. In fact, the composition of Coca-Cola has repeatedly changed over time. These changes have included, among other things, an increase in the amount of unhealthy ingredients like sugar and corn syrup and the addition of artificial ingredients like phosphoric acid. *See Coca-Cola*

1    *Bottling Company of Shreveport, Inc. v. The Coca-Cola Company*, 563 F. Supp. 1122, 1131 (D.

2    Del. 1983).

3            17.     Ignoring the falsity of their statements and labeling, Defendants conceded that

4    Pemberton was designed to deceive consumers by misrepresenting that Coca-Cola does not use

5    chemical preservatives or artificial flavorings. According to one of Defendants' marketing

6    directors: "When we talked to consumers about Coke, we realized they did not know that it has

7    no added preservatives or artificial flavors. We felt it was important to reassure Coke drinkers of

8    this fact." *See New York Times*, Aug. 6, 2008, "*Coke Campaign Focuses on What's Not in the*

9    *Can; 'No Added Preservatives or Artificial Flavor*s.'"

10           18.     Similarly, a regional marketing director for a Coca-Cola entity was quoted as

11   saying: "Our research has highlighted that there is a need and an opportunity to remind consumers

12   that Coca-Cola is the 'real thing.' The Pemberton campaign is simply about letting consumers

13   know that the formula for Coca-Cola has not changed for more than 120 years." *See Marketing*

14   *Magazine,* Sept. 5, 2008, "*Coca-Cola: New and Improved? Nope, Still the Same.*"

15           19.     The Coca-Cola Company's own Chief Financial Officer, Gary Fayard, made the

16   following statement at a consumer conference held on September 3, 2008:

17           North America, it's the one last market we really need to turnaround. We
             acknowledge it but we've got some very good plans to do that. We think we know
18           what we need to do. We needed to fix our marketing and we think we've done
             that. We've got very good marketing in the US now. We've started what we call
19           Project Pemberton. This is about sparkling beverages. It will be print. You'll see it
             soon. It will be print but it's actually re-educating the consumer, and I don't know
20           that you can read what it says there but it says "No preservatives added, no
             artificial flavors since 1886. Never has, never will". And if you think about the
21           new teenagers today and young adults as they've grown up and there's just an
             explosion of choices they didn't grow up with their limited choices like I did and
22           maybe they've forgotten that Coke actually was born in 1886 and there weren't
             artificial ingredients back then. This is all pretty natural stuff and we're just -- to
23           remind people.

24   *See* The Coca-Cola Company at Lehman Brothers Back-to-School Consumer Conference, *FD*

25   *(Fair Disclosure) Wire*, Sept. 3, 2008.

26           20.     Additionally, Defendants concealed the fact that Coca-Cola  contained artificial

27   flavors and chemical preservatives by failing to make legally mandated labeling disclosures

28

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 4:14-md-02555-JSW                                                              6

detailing the function of ingredients like phosphoric acid that are used as artificial flavorings and chemical preservatives in those products.

21.     Under federal, California, and Florida law, Defendants are required to disclose the presence of artificial flavoring and chemical preservatives in food products, including Coca-Cola.

22.     Defendants are also required to clearly state the function of any ingredient that is used as either an artificial flavoring or a chemical preservative.

23.     Nowhere on Coca-Cola labels or packaging is the function of phosphoric acid identified.

24.     Nowhere on Coca-Cola labels or packaging does it state that the product contains artificial flavoring or chemical preservatives.

25.     Instead, many labels and packages of Coca-Cola affirmatively state that it does not contain any artificial flavorings or chemical preservatives, and never had since 1866.

26.     Such false statements and omissions violate federal, California, and Florida law and render Coca-Cola illegally misbranded.

27.     These products cannot be lawfully manufactured, distributed, or sold to consumers.

28.     The Food, Drug & Cosmetic Act ("FDCA") and regulations promulgated thereunder bar food manufacturers and distributors like Defendants from selling misbranded and illegal products that contain labels that fail to accurately disclose the nature of their contents.

29.     Under federal, California, and Florida law, products such as Coca-Cola are "misbranded" if their "labeling is false or misleading in any particular" or does not contain certain information on its labeling. *See* 21 U.S.C. § 343(a), (f) and (k); California Health & Safety Code § 110660, 201(1), (6) and (11); Florida Food Safety Act § 500, *et seq.*

30.     Coca-Cola products are misbranded under federal, California, and Florida law, because they fail to disclose on their labeling that they contain artificial flavors or chemical preservatives. *See* 21 U.S.C. § 343(k); California Health & Safety Code § 110660; Florida Food Safety Act § 500, *et seq.*

31.     Because the manufacture and sale of Coca-Cola violates the food labeling laws of California and Florida, the actions of Defendants also constitute predicate acts under consumer protection laws of California, including, California Business and Profession Code Section 17200 *et seq*., California Business and Profession Code Section 17500, *et seq*.;  California Civil Code §1750, *et seq*., Florida Consumer Protection Statute §§ 501.201-501.213, and Florida Intentional False Advertising Statute §817.44.

32.     Defendants are major international food manufacturers and are well aware of the requirements of federal and state laws. Yet, they have chosen to ignore those laws in order to increase Coca-Cola's sales and profits at the expense of consumers, including Plaintiffs.

33.     In order to conceal from consumers (including Plaintiffs) that Coca-Cola includes artificial flavorings and chemical preservatives, Defendants have knowingly and intentionally failed to disclose their existence in Coca-Cola.

34.     Plaintiffs, individually, and on behalf of other consumers who purchased Coca-Cola, now bring this action, not only to compensate consumers, but to stop Defendants from continuing to engage in such unlawful actions.

## PARTIES

35.     Plaintiff Engurasoff is a resident citizen of San Jose, California.

36.     Plaintiff Ogden is a resident citizen of Morgan Hill, California.

37.     Plaintiff Noble is a resident citizen of Alameda County, California.

38.     Plaintiff Woods is a resident citizen of Tallahassee, Florida.

39.     Plaintiff Merritt is a resident of citizen Laguna Beach, California.

40.     Plaintiffs purchased more than $25.00 worth of Coca-Cola during the relevant time period (the "Class Period").

41.      Upon information and belief, Defendant The Coca-Cola Company is a Delaware corporation, with its principal place of business at One Coca-Cola Plaza, Atlanta, Georgia.

42.     Defendant The Coca-Cola Company has the world's largest beverage distribution system. More than 1.8 billion servings of its products are consumed every day.

43.    Upon information and belief, Defendant Coca-Cola Refreshments USA, Inc. is a Delaware corporation with its principal place of business at One Coca-Cola Plaza, Atlanta, Georgia.

44.    Upon information and belief, Defendant Coca-Cola Refreshments USA, Inc. is The Coca-Cola Company's bottling and customer service organization for North America.

45.    Coca-Cola Refreshments USA, Inc. manufactures, distributes, and sells approximately 88 percent of The Coca-Cola Company's unit case volume in the United States. Upon information and belief, this includes Coca-Cola.

46.    Upon information and belief, Defendants BCI Coca-Cola Bottling Company of Los Angeles and Coca-Cola Bottling Company of Sonora, California, Inc., are subsidiary affiliates of the Coca-Cola Company, with their respective principal place of business located at One Coca-Cola Plaza, Atlanta, Georgia, and 3624 Jefferson Avenue, Redwood City, CA 94062.

47.    Coca-Cola LA and Coca-Cola Sonoma (combined) manufacture, distribute, and sell approximately 50 percent of the Coca-Cola Company's unit case volume of Coca-Cola soda in California.

### JURISDICTION AND VENUE

48.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) a member of the class of plaintiffs is a citizen of a State different from a defendant; and (3) the number of members of all proposed plaintiff classes in the aggregate is greater than 100.

49.    The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged herein occurred in California. Defendants also have sufficient minimum contacts with California, and have otherwise intentionally availed themselves of the markets in California (and Nationwide) through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

50.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTS RELEVANT TO ALL CLAIMS

**Coca-Cola Is A Misbranded And Illegal Product**

51.     All containers of Coca-Cola sold in the United States are misbranded and illegal.

52.     Defendants knowingly and intentionally sold these misbranded products to consumers (including Plaintiffs) with the intent to deceive.

53.     Plaintiffs purchased Coca-Cola within the Class Period in California and Florida.

54.     Plaintiff Engurasoff's purchases of Coca-Cola included 2 liter bottles.

55.     Plaintiff Ogden's purchases of Coca-Cola included 24-packs of 12 ounce cans and 12-packs of 12 ounce cans.

56.     Plaintiff Noble's purchase of Coca-Cola included 2 liter bottles and 12-packs of 12 ounce cans.

57.     Plaintiff Wood's purchase of Coca-Cola included 2 liter bottles and 12-packs of 12 ounce cans.

58.     Plaintiff Merritt's purchase of Coca-Cola included 2 liter bottles and 12-packs of 12 ounce cans.

59.     All containers of Coca-Cola fail to state that any Coca-Cola ingredients are used as artificial flavoring or as a chemical preservative.

60.     Labels on 2 liter bottles, 24-packs of 12 ounce cans, and 12-packs of 12 ounce cans of Coca-Cola state, "**no artificial flavors. no preservatives added. since 1886.**"

61.     The ingredients in Coca-Cola include phosphoric acid, which is used in the product as both an artificial flavoring and a chemical preservative.

**Phosphoric Acid Is An Artificial Flavoring**

62.     Phosphoric acid is an artificial flavoring.

63.     Phosphoric acid provides a characteristic tart taste that is imparted into Coca-Cola.

64.     The Coca-Cola Company's own website states: "Phosphoric acid is used in certain soft drinks, including Coca-Cola, to add tartness to the beverage." *See* http://productnutrition.thecoca-colacompany.com/ingredients.

65.     The website also discussed acidulants such as phosphoric acid and stated that acidulants are: "Acids, which include phosphoric acid and citric acid, and acidic salts help to provide flavoring. They are responsible for the tart taste which helps to balance the sweetness. They also help to reduce the growth of microorganisms (i.e., protect the food from spoiling)."

66.     Today, those same statements have been moved to the website of The Coca-Cola Company Beverage Institute for Health & Wellness *See* http://beverageinstitute.org/us/beverageingredient-glossary/.

67.     These statements were also present on The Coca-Cola Company's website located at www.cocacolaambassadors.com.

68.     In a publication entitled "What is in Coca-Cola? A briefing on our ingredients," Defendants explicitly state that phosphoric acid "is used to add a tangy taste to some colas." *See* http://conoce.cocacola.es/img/comunicacioncientifica/docu_ingredientes_ing.pdf.

69.     21 C.F.R. § 101.22(a)(1) provides that, "The term *artificial flavor* or *artificial flavoring* means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof."

70.     Similarly, The Coca-Cola Company's website defines "artificial flavors" as "substances used to impart flavor that are not derived from a natural substance such as a spice, fruit or fruit juice, vegetables or herbs." *See* http://beverageinstitute.org/us/beverage-ingredientglossary/.

71.     As noted above, the function of phosphoric acid in Coca-Cola, in part, is to impart flavor.

72.     Phosphoric acid is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

73.     Therefore, phosphoric acid is an artificial flavoring under 21 C.F.R. § 101.22(a)(1).

74.     Phosphoric acid also meets Defendants' own definition of "artificial flavor."

75.     Phosphoric acid does not satisfy the criteria to be a natural flavoring.

76.     21 C.F.R. § 101.22(a)(3) provides that, "The term *natural flavor* or *natural flavoring* means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional."

77.     Similarly, the website of Defendants or affiliated entities defines "natural flavors" as follows: "Natural flavors are derived from the essential oils or extracts of spices, fruits, vegetables and herbs." *See* http://beverageinstitute.org/us/beverage-ingredient-glossary/.

78.     Phosphoric acid is not an essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof.

79.     Therefore, phosphoric acid is not a "natural flavor," as defined in 21 C.F.R. § 101.22(a) (3).

80.     Nor does phosphoric acid meet the Defendants' own definition of a natural flavor.

81.     The FDA considers phosphoric acid to be an artificial flavoring.

82.     In the 1975 Select Committee on GRAS Substances ("SCOGS") Report on phosphates, phosphoric acid is described as follows:

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 4:14-md-02555-JSW                                                                                    12

> Phosphoric acid, H3PO4, is used in the commercial production of polyphosphates, metaphosphates, and other orthophosphates. They serve as acidulants, sequestrants, and flavoring agents in nonalcoholic beverages.

83.     After the SCOGS review, in 1979, FDA published a proposed rule explicitly stating that phosphoric acid is used as a "flavoring agent," as that term is defined in 21 C.F.R. § 170.3(o)(12). *See* 44 Fed. Reg. 74845, 74854 (Dec. 18, 1979).

84.     The proposed rule intended to formally identify phosphoric acid as "Generally Recognized as Safe" or "GRAS" for use as a flavoring agent. *See* 44 Fed. Reg. at 74854.

85.     However, together with about eighty other pending proposals, the proposed rule was withdrawn - - not because FDA no longer considered phosphoric acid to be GRAS or a flavoring agent - - but because FDA determined "that the backlog of pending proposals dilutes its ability to concentrate on higher priority regulations that are mandated by statute or are necessary to address current public health issues. Because of the agency's limited resources and changing priorities, FDA has been unable to: (1) Consider, in a timely manner, the issues raised by the comments on these proposals and (2) complete the action on them." *See* 69 Fed. Reg. 68831-01, 68832 (Nov. 26, 2004).

86.     In addition, FDA commissioned "A Comprehensive Survey of Industry on the Use of Food Chemicals Generally Recognized as Safe" (September 1972) ("GRAS Report"). The GRAS Report is incorporated into 21 C.F.R. § 170.3(o).

87.     The GRAS Report expressly states that phosphoric acid is a GRAS substance with technical functions that include use as a "flavoring agent." *See* GRAS Report Table 6 at 20.

88.     The GRAS Report shows that twenty-three food manufacturers identified phosphoric acid as being used in their products as a flavoring agent. *Id.*

89.     Phosphoric acid is listed on an FDA recognized list of GRAS flavoring substances published by the Flavor and Manufacturers Association ("FEMA").

90.     Phosphoric acid is specifically listed in FEMA GRAS List III, which was published in the scientific journal, *Food Technology*, Vol. 19, No. 2. The FDA has specifically recognized FEMA GRAS List III as reliable. *See* 44 Fed. Reg. 71460, 71461 (Dec. 11, 1979).

1    91.    Defendants are well aware of this GRAS list. The Coca-Cola Company is a

2    leading member of FEMA.

3    92.    A representative of The Coca-Cola Company presently sits on FEMA's board of

4    governors. *See* http://www.femaflavor.org/officersgovernors. A representative of The Coca-Cola

5    Company has served as FEMA's president on multiple occasions, including as recently as 2012.

6    *See* http://www.femaflavor.org/past-fema-presidents.

7    93.    The Federal Register also states that "Phosphoric acid has many uses including an

8    acidulate and flavor in beverages of the soft drink type." 62 Fed. Reg. 48837-01, 48841 (Sept. 17,

9    1997).

10   **Phosphoric Acid Is A Chemical Preservative**

11   94.    Phosphoric acid is a chemical preservative.

12   95.    21 C.F.R. § 101.22(a)(5) provides that, "The term *chemical preservative* means

13   any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does

14   not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added

15   to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or

16   herbicidal properties."

17   96.    Phosphoric acid is not a common salt, sugar, vinegar, spice, or oil extracted from

18   spices, nor is it a substance added to food by direct exposure thereof to wood smoke, or chemicals

19   applied for their insecticidal or herbicidal properties.

20   97.    As used in Coca-Cola, phosphoric acid prevents or retards deterioration of the

21   product.

22   98.    The Coca-Cola Company's website describes phosphoric acid as having a

23   preservative effect, discussing acidulates such as phosphoric acid and stating that acidulates are:

24   "Acids, which include phosphoric acid and citric acid, and acidic salts help to provide flavoring.

25   They are responsible for the tart taste which helps to balance the sweetness. They also help to

26   reduce the growth of microorganisms (i.e., protect the food from spoiling)." *See*

27   http://beverageinstitute.org/us/beverage-ingredient-glossary/.

28

99.     The website of the American Beverage Association defines Phosphoric Acid in the following manner: "This flavoring agent in soft drinks is a preservative that provides tartness." *See* http://www.ameribev.org/resources/beverage-industry-terms/.

100.     Coca-Cola bottlers have submitted expert testimony in legal proceedings where the expert testified that phosphoric acid acts as a preservative in Coca-Cola.

101.     Phosphoric acid is a "chemical preservative," as defined in 21 C.F.R. § 101.22(a)(5).

102.     The FDA considers phosphoric acid to be a preservative.

103.     The FDA has also stated that such acidulents are used as part of the "acidification" process, "[a] technology used by processors to preserve foods by adding acids and rendering food safe from harmful bacteria." *See* http://www.fda.gov/food/foodscienceresearch/toolsmaterials/ucm215830.htm. Also "[a]cidification is one way to maintain safe pH levels and keep various foods safe from harmful bacteria." *Id*.

104.      The FDA has also stated that an "inherent control for biological hazards" in carbonated soft drinks is the "[c]ombination of low pH, high carbon dioxide level and the antimicrobial activity of acids such as phosphoric acid." *See* http://www.fda.gov/downloads/food/foodscienceresearch/ucm334110.pdf at 39.

105.     Furthermore, the FDA has also stated that phosphoric acid is a "common acidulent[]" found in "cola soda." *See* http://www.fda.gov/food/foodscienceresearch/toolsmaterials/ucm215830.htm.

106.     The 1979 proposed rule stated that phosphoric acid is used as a pH control agent. *See* 44 Fed. Reg. 74845, 74854 (Dec. 18, 1979).

107.     The GRAS Report also states that technical functions of phosphoric acid include use as a pH control agent. *See* GRAS Report Table 6 at 20.

**Coca-Cola Is Misbranded And Illegal**

108.     Because Coca-Cola contains artificial flavoring and chemical preservatives, Coca-Cola product labels are required to state the presence of such artificial flavoring and chemical

preservatives and must specifically identify the function of phosphoric acid, as used in Coca-Cola.

109.    21 C.F.R. § 101.22(c) provides that "[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."

110.    The same regulation further provides that "[a] food to which a chemical preservative(s) is added shall …bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention.'"

111.    Containers of Coca-Cola do not include a statement disclosing that they contain artificial flavoring.

112.    Containers of Coca-Cola do not contain a statement disclosing that Coca-Cola contains chemical preservatives.

113.    Containers of Coca-Cola do not disclose or specify the function of phosphoric acid, as used in the product.

114.    Because Coca-Cola containers fail to have labels or packaging disclosing that Coca-Cola contains artificial flavoring or chemical preservatives, they are misbranded under the FDCA and California and Florida food labeling laws.

115.    Because Coca-Cola containers fail to have labels with statements disclosing that that the function of phosphoric acid therein is as an artificial flavor or chemical preservative, they are misbranded under the FDCA and the food labeling laws of California and Florida.

116.    Certain Coca-Cola containers (2-liter bottles, 24-packs of 12 ounce cans, and 12-packs of 12 ounce cans) also contained the affirmative statement that Coca-Cola contains "**no artificial flavors. No preservatives added. since 1886**."

117.    This statement is false.

118. Defendants knowingly and intentionally failed to include statements on containers of Coca-Coca regarding the presence of artificial flavoring and chemical preservatives; despite the fact Coca-Cola contains artificial flavoring and chemical preservatives.

119. Defendants knowingly, intentionally, and falsely affirmatively stated Coca-Cola has "**no artificial flavors. no preservatives added. since 1886**," despite the fact Coca-Cola contains artificial flavoring and chemical preservatives.

120. Because these Coca-Cola containers falsely represent that they contain no artificial flavors or preservatives, they are misbranded under both the FDCA and the labeling laws of California and Florida.

121. Defendants are aware of these statutes and regulations, as evidenced by the labels of their other products.

122. For example, the ingredient list on the label of Minute Maid Pomegranate Blueberry Flavored Blend of 5 Juices, a product produced by The Coca-Cola Company, states that it contains citric acid and that the citric acid's technical function is that it "provides tartness."

123. This statement of citric acid's technical function was included on the label in an effort to comply with 21 C.F.R. § 101.22.

124. There is no other reason why this label would say that the citric acid's technical function is to "provide[] tartness."

125. Under both the FDCA and the food labeling laws of California and Florida, it is a strict liability crime to, *inter alia*, manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

126. By manufacturing and selling Coca-Cola, a misbranded product, Defendants have committed a predicate unlawful act, regardless of any misrepresentation or reliance thereon.

127. Plaintiffs and other consumers were injured when paying money for an illegal product.

**Purchasers Of Misbranded Products Have Been Injured**

128. Had Plaintiffs known Coca-Cola was misbranded, Plaintiffs would not have purchased Coca-Cola.

129.    Had Plaintiffs known Coca-Cola was an illegal product, Plaintiffs would not have purchased Coca-Cola.

130.    Had Plaintiffs known Coca-Cola violated federal or state laws and regulations, Plaintiffs would not have purchased Coca-Cola.

131.    Plaintiffs did not know phosphoric acid was a chemical preservative or an artificial flavoring.

132.    Had Plaintiffs known Coca-Cola contained artificial flavoring, Plaintiffs would not have purchased Coca-Cola.

133.    Had Plaintiffs known Coca-Cola contained chemical preservatives, Plaintiffs would not have purchased Coca-Cola.

134.    Because Coca-Cola is illegal and misbranded, it cannot be lawfully resold.

135.    Plaintiffs paid money for Coca-Cola products that were worth zero.

136.    Had Plaintiffs known Coca-Cola could not be lawfully sold, held or possessed, Plaintiffs would not have purchased Coca-Cola.

137.    Had Plaintiffs known Coca-Cola could not be lawfully resold, Plaintiffs would not have purchased Coca-Cola.

138.    Plaintiffs relied on the Coca-Cola labels, packaging and omissions to their detriment.

139.    Plaintiffs' reliance was reasonable.

140.    A reasonable consumer would have been misled by the Defendants' actions.

141.    As a result of Defendants' unlawful misrepresentations and omissions, Plaintiffs and millions of others in California, Florida, and throughout the United States purchased Coca-Cola.

142.    Plaintiffs and millions of others in California, Florida, and throughout the United States who purchased Coca-Cola were injured as a result of Defendants' actions.

## CLASS ACTION ALLEGATIONS

143.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b) (2) and 23(b) (3) on behalf of the following classes (the "Classes"):

1) All persons in California since August 27, 2009 who purchased Coca-Cola. ("California Class").

2) All persons in Florida since January 9, 2010  who purchased Coca-Cola. ("Florida Class").

144.     The following persons are expressly excluded from the Classes: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

145.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

146.     **Numerosity**: Based upon Defendants' publicly available sales data with respect to Coca-Cola, it is estimated that the number of class members is potentially in the millions, and that joinder of all class members is impracticable.

147.     **Common Questions Predominate**: This action involves common questions of law and fact applicable to each class member that predominate over questions that affect only individual class members. Thus, proof of a common set of facts will establish the right of each class member to recover. Questions of law and fact common to each class member include, for example:

a.     Whether Defendants engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Coca-Cola sold to consumers;

b.     Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law;

c.     Whether Defendants made unlawful and misleading claims regarding artificial flavoring and chemical preservatives in Coca-Cola;

d.     Whether Defendants unlawfully sold misbranded products in violation of the FDCA and the labeling laws of California and Florida;

e.     Whether Defendants violated California and Florida consumer protection statutes;

f.     Whether Defendants breached express or implied warranties;

g.     Whether Plaintiffs and the class are entitled to equitable and/or injunctive relief; and

1

2

      h.     Whether Defendants were unjustly enriched by their deceptive practices.

3

4

     150.   **Typicality**: Plaintiff's claims are typical of the claims of the class because

5

Plaintiffs bought Defendants' Purchased Products during the class periods. Defendants' unlawful,

6

unfair, and fraudulent actions concern the same business practices described herein irrespective of

7

where they occurred or were experienced. The injuries of each member of the class were caused

8

directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants'

9

misconduct is common to all class members and represents a common thread of misconduct

10

resulting in injury to all class members. Plaintiffs' claims arise from the same practices and

11

course of conduct that give rise to the claims of the class members and are based on the same

legal theories.

12

     151.   **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the class.

13

Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to

14

the interests of the class members. Plaintiffs have retained highly competent and experienced

15

class action attorneys to represent Plaintiffs' interests and those of the class members. Plaintiffs

16

and Plaintiffs' counsel have the necessary resources to adequately and vigorously litigate this

17

class action, and Plaintiffs and Plaintiffs' counsel are aware of their fiduciary responsibilities to

18

the class members and will diligently discharge those duties by vigorously seeking the maximum

19

possible recovery for the class.

20

     152.   **Superiority**: There is no plain, speedy, or adequate remedy other than by

21

maintenance of this class action. The prosecution of individual remedies by class members will

22

tend to establish inconsistent standards of conduct for Defendants and result in the impairment of

23

class members' rights and the disposition of their interests through actions to which they are not

24

parties. Class action treatment will permit a large number of similarly situated persons to

25

prosecute their common claims in a single forum simultaneously, efficiently, and without the

26

unnecessary duplication of effort and expense that numerous individual actions would create.

27

Further, as the damages suffered by individual class members may be relatively small, the

28

expense and burden of individual litigation would make it difficult or impossible for individual

class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

153.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive or equitable relief with respect to the class as a whole.

154.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

155.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

156.    Plaintiffs are members of the Classes Plaintiffs seek to represent. Plaintiffs' claims are typical of the class members' claims. Plaintiffs will fairly and adequately protect the interests of the Classes in that Plaintiffs' claims are typical and representative of the class.

157.    There are no unique defenses which may be asserted against Plaintiffs individually, as distinguished from the Classes. The claims of Plaintiffs are the same as those of the Classes.

158.    No conflicts of interest exist between Plaintiffs and the other class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation. Plaintiffs and Plaintiffs' counsel will fairly and adequately represent and protect the interests of the Classes.

159.    This class action is superior to any other method for the fair and efficient adjudication of this dispute.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 4:14-md-02555-JSW

# CLAIMS FOR RELIEF[3]

## FIRST CLAIM FOR RELIEF
### Business and Professions Code § 17200, *et seq.*
### Unlawful Business Acts and Practices

160.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

161.    Defendants' conduct constitutes unlawful business acts and practices.

162.    Defendants sold Coca-Cola in California and throughout the United States during the Class Period.

163.    Defendants are corporations and, therefore, are "persons" within the meaning of the Sherman Law.

164.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

165.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

166.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

167.    Plaintiffs and the California Class members were injured as a result of Defendants' unlawful acts and practices.

168.    Defendants sold to Plaintiffs and the California Class members products that were not capable of being sold legally, and which have no economic value.

---

[3] All named plaintiffs assert the seventh through eleventh claims for relief. Plaintiff Woods, alone, asserts the twelfth through fourteenth claims for relief. All other named plaintiffs, without Woods, assert the first through sixth claims for relief.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 4:14-md-02555-JSW                                                                    22

169.    Plaintiffs and the California Class members were injured when they paid good money for these illegal products.

170.    As a result of Defendants' unlawful business practices, Plaintiffs and the California Class members, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and profits and to restore to Plaintiffs and any California Class member any money paid for Coca-Cola.

**SECOND CLAIM FOR RELIEF**
**Business and Professions Code § 17200, *et seq.***
**Unfair Business Acts and Practices**

171.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

172.    Defendants' conduct as set forth herein constitutes unfair business acts and practices.

173.    Defendants engaged in deceptive marketing, advertising, packaging and labeling of Coca-Cola.

174.    Plaintiffs and the California Class members were injured as a result of Defendants' unfair acts and practices.

175.    Defendants sold to Plaintiffs and the California Class members products that were not capable of being legally sold and that have no economic value.

176.    Plaintiffs and the California Class members who purchased Coca-Cola had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided injury.

177.    A reasonable consumer would have relied on Defendants' representations.

1    178.    The consequences of Defendants' conduct outweigh any justification, motive or
2  reason therefor.

3    179.    As a result of Defendants' conduct, Plaintiffs and the California Class members,
4  pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such
5  future conduct by Defendants, and such other orders and judgments which may be necessary to
6  disgorge Defendants' ill-gotten gains and profits and restore any money paid for Coca-Cola by
7  Plaintiffs and the California Class members.

**THIRD CLAIM FOR RELIEF**
**Business and Professions Code § 17200,** *et seq.*
**Fraudulent Business Acts and Practices**

180.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth
herein.

181.    Defendants' conduct as set forth herein constitutes fraudulent business practices
under California Business and Professions Code § 17200, *et seq.*

182.    Defendants' misleading marketing, advertising, packaging and labeling of
Coca-Cola were likely to deceive reasonable consumers.

183.    Plaintiffs and members of the Class were deceived.

184.    Defendants have engaged in fraudulent business acts and practices.

185.    Plaintiffs and the Class were injured by Defendants' fraudulent acts and
practices.

186.    Defendants' fraud and deception caused Plaintiffs and the California Class
members to purchase Coca-Cola that they would otherwise not have purchased had they
known the true nature of these products.

187.    As a result of Defendants' conduct as set forth herein, Plaintiffs and the
California Class members, pursuant to Business and Professions Code § 17203, are entitled to
an order enjoining such future conduct by Defendants, and such other orders and judgments

1   which may be necessary to disgorge Defendants' ill-gotten gains and profits and restore any

2   money paid for Coca-Cola by Plaintiffs and the California Class members.

3                                **FOURTH CLAIM FOR RELIEF**
                        **Business and Professions Code § 17500,** *et seq.*
4                           **Misleading and Deceptive Advertising**

5        188.   Plaintiffs repeat and reallege each of the above allegations as if fully set forth

6   herein.

7        189.   Plaintiffs asserts this cause of action for violations of California Business and

8   Professions Code § 17500, *et seq.* for misleading and deceptive advertising against

9   Defendants.

10

11       190.   Defendants engaged in a scheme of offering Coca-Cola for sale to Plaintiffs and

12  members of the California Class by way of, *inter alia*, product packaging and labeling, and

13  other promotional materials.

14       191.   These materials misrepresented and/or omitted the true contents and nature of

15  Coca-Cola.

16

17       192.   Defendants' advertisements and inducements were made within California and

18  throughout the United States and come within the definition of advertising as contained in

19  Business and Professions Code §17500, *et seq.* in that such product packaging, labeling, and

20  promotional materials were intended as inducements to purchase Coca-Cola and are statements

21  disseminated by Defendants to Plaintiffs and the California Class members that were intended

22  to reach members of the California Class.

23       193.   Defendants knew, or in the exercise of reasonable care, should have known, that

24  these statements were misleading and deceptive as set forth herein.

25

26       194.   In furtherance of its plan and scheme, Defendants prepared and distributed

27  within California and nationwide via product packaging and labeling, and other promotional

28

materials, statements that misleadingly and deceptively represented the composition and nature of Coca-Cola.

195.    Plaintiffs and the California Class members were the intended targets of such representations.

196.    Plaintiffs and the California Class members reasonably relied on Defendants' representations.

197.    Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the California Class members was and is likely to deceive reasonable consumers by obscuring the true composition and nature of Coca-Cola in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

198.    Plaintiffs and the Class were injured as a result of Defendants' acts and practices.

199.    As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs and the California Class members.

200.    Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and profits and restore any money paid for Coca-Cola by Plaintiffs and the California Class members.

**FIFTH CLAIM FOR RELIEF**
**Business and Professions Code § 17500, *et seq.***
**Untrue Advertising**

201.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

202.    Plaintiffs assert this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

203.    Defendants engaged in a scheme of offering Coca-Cola for sale to Plaintiffs and the California Class members by way of product packaging and labeling, and other promotional materials.

204.    These materials misrepresented or omitted the true contents and nature of Coca-Cola.

205.    Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising contained in Business and Professions Code §17500, *et seq.* where the product packaging, labeling, and promotional materials were intended as inducements to purchase Coca-Cola, and are statements disseminated by Defendants to Plaintiffs and the Class.

206.    Defendants knew, or in the exercise of reasonable care, should have known, that these statements were untrue.

207.    In furtherance of its plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Coca-Cola, and falsely misrepresented the nature of Coca-Cola.

208.    Plaintiffs and the California Class members were the intended targets of such representations.

209.    Defendants' conduct in disseminating untrue advertising throughout the United States and California deceived Plaintiffs and members of the Class by obfuscating the contents, nature and quality of Coca-Cola in violation of the "untrue prong" of California Business and Professions Code § 17500.

210.   Plaintiffs and the California Class members reasonably relied on Defendants' representations.

211.   A reasonable consumer would have relied on Defendants' representations.

212.   Plaintiffs and the California Class members were injured as a result of Defendants' acts and practices.

213.   As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class.

214.   Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and profits and restore any money paid for Coca-Cola by Plaintiffs and the Class.

**SIXTH CLAIM FOR RELIEF**
**Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

215.   Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

216.   On September 17, 2013, Defendant was served with notice of Defendant's violations of the CLRA.  As authorized by Defendant's counsel, Defendant was served by certified mail, return receipt requested, and email.

217.   Defendant failed to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of the CLRA demand notice.

218.   The violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

219.   Consequently, Plaintiffs and the California Class members are entitled to actual and punitive damages against Defendants for its violations of the CLRA.

220.   In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the California Class members are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

221.   Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

222.   Defendants sold Coca-Cola in California and nationwide during the Class Period.

223.   Plaintiffs and members of the California Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

224.   Coca-Cola products are "goods" within the meaning of Cal. Civ. Code §1761(a).

225.   By engaging in the conduct set forth herein, Defendants violated and continues to violate Section 1770(a)(5), of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

226.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that it misrepresents the particular standard, quality or grade of the goods.

227.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair

1
2

methods of competition and unfair or fraudulent acts or practices in that it advertises goods with the intent not to sell the goods as advertised.

3

228.    By engaging in the conduct set forth herein, Defendants have violated and

4

continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes

5

6

unfair methods of competition and unfair or fraudulent acts or practices in that it represents

7

that a subject of a transaction has been supplied in accordance with a previous representation

8

when they have not.

9

229.    Plaintiffs and the California Class members were injured as a result of

10

Defendants' acts and practices.

11

230.    Plaintiffs request that the Court enjoin Defendants from continuing to employ

12

the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code §

13

1780(a)(2).

14

231.     If Defendants are not restrained from engaging in these practices in the future,

15

16

Plaintiffs and the California Class members will continue to suffer harm.

17

## SEVENTH CLAIM FOR RELIEF
### Negligent Misrepresentation

18

232.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth

19

herein.

20

233.    Defendants had a duty to disclose the presence of artificial flavoring and chemical

21

preservatives in Coca-Cola

22

234.    In making misrepresentations of fact and omissions of material fact to Plaintiffs

23

and the other members of the California Class and Florida Class about Coca-Cola, Defendants

24

failed to fulfill their duties to disclose the material facts alleged above. Among the direct and

25

proximate causes of said failure to disclose were the negligence and carelessness of Defendants.

26

235.    Plaintiffs and the other members of the California Class and Florida Class, as a

27

direct and proximate cause of Defendants' breaches of their duties, reasonably relied upon such

28

representations and omissions to their detriment.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 4:14-md-02555-JSW

30

236.   By reason of the foregoing, Plaintiffs and the other members of the California Class and Florida Class have suffered damages in an amount to be proved at trial, together with punitive damages.

### EIGHTH CLAIM FOR RELIEF
#### Negligence

237.   Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

238.   Defendants negligently made misrepresentations of fact and omissions of material fact to Plaintiffs and the other class members about their Coca-Cola products.

239.   Defendants failed to label or advertise their Coca-Cola products in a lawful manner and violated their duties to disclose the material facts alleged above.

240.   Plaintiffs and the other members of the California Class and Florida Class, as a direct and proximate cause of Defendants' breaches of their duties, reasonably relied upon such representations to their detriment.

241.   As described above, Defendants' actions violated a number of express statutory provisions designed to protect Plaintiffs and other members of the California Class and Florida Class.

242.   Defendants' illegal actions constitute negligence *per se*.

243.   Moreover, the statutory food labeling and misbranding provisions violated by Defendants are strict liability provisions.

244.   By reason of the foregoing, Plaintiffs and the other members of the California Class and Florida Class have suffered damages in an amount to be determined at trial, together with punitive damages.

### NINTH CLAIM FOR RELIEF
#### Unjust Enrichment

245.   Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

246.   As a result of Defendants unlawful and deceptive actions described above,

1    Defendants were enriched at the expense of Plaintiffs and the other members of the California

2    Class and Florida Class.

3           247.    Under the circumstances, it would be against equity and good conscience to permit

4    Defendants to retain the ill-gotten benefits that they received from the Plaintiffs and the other

5    members of the California Class and Florida Class. It would also be unjust and against public

6    policy for the Defendants to retain any benefits obtained by their unlawful and deceptive actions

7    including any sale proceeds, gross profits or net profits obtained by the Defendants as a result of

8    their sale of Coca-Cola.

9           248.    By reason of the foregoing, Plaintiffs and the class were damaged in an amount to

10   be proven at trial.

11          249.    By reason of the foregoing Defendants were unjustly enriched in an amount to be

12   proven at trial along with punitive damages.

13          250.    By reason of the foregoing, all amounts by which Defendants have been unjustly

14   enriched must be disgorged.

15          251.    Plaintiffs expressly seek restitution, restitutionary disgorgement and non-

16   restitutionary disgorgement to remedy any damage they have suffered as a result of Defendants'

17   unlawful and deceptive actions and to undo, eliminate, preclude and prevent any unjust

18   enrichment of the Defendants resulting from Defendants' unlawful and deceptive actions.

19                                  **TENTH CLAIM FOR RELIEF**
                                    **Money Had and Received**
20

21          252.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth

22   herein.

23          253.    The sale of a misbranded food product is an illegal act in California and Florida.

24   Such a sale is expressly prohibited by California and Florida law.

25          254.    The sale of a misbranded product violates the public policies of California and

26   Florida.

27          255.    The misbranded products purchased by Plaintiffs and the class were illegal.

28

256.    Plaintiffs and class members were unaware that the Coca-Cola products they purchased were misbranded and illegal.

257.    Defendants received the money from Plaintiffs and the class used to purchase Coca-Cola products.

258.    Defendants benefitted from receipt of this money.

259.    Under principles of equity and good conscience, Defendants should not be permitted to keep this money.

260.    Plaintiffs and the By reason of the foregoing, are thus entitled to recovery of the funds they expended to purchase the Defendants' misbranded Coca-Cola products, together with punitive damages.

## ELEVENTH CLAIM OF RELIEF
### Breach of Express Warranty

261.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

262.    Defendants engaged in a scheme of offering Coca-Cola for sale to Plaintiffs and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.

263.    In furtherance of its plan and scheme, Defendants prepared and distributed within Florida and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and nature of Coca-Cola.

264.    Plaintiffs and the Class were the intended targets of such representations.

265.    Plaintiffs and the Class reasonably relied on Defendants' representations.

266.    Defendants' affirmations of fact and/or promises relating to their Coca-Cola products created express written warranties that the products would conform to Defendants' affirmations of fact and/or promises.

267.    Alternatively, Defendants' descriptions of their Coca-Cola products became part of the bases of the bargains, creating express written warranties that the products purchased by

1  Plaintiff and the other Class members would conform to Defendants' descriptions and

2  specifications.

3       268.    In fact, the Coca-Cola products purchased by Plaintiffs did not so conform.

4       269.    Defendants expressly warrant on Coca-Cola products that they do not contain

5  artificial flavors or preservatives.

6       270.    Coca-Cola products do, in fact, contain artificial flavors and preservatives.

7       271.    Plaintiffs and members of the Class relied on the false representation that Coca-

8  Cola products do not contain artificial flavors or preservatives.

9       272.    Defendants have breached their express warranty.

10      273.    As a result of the foregoing, Plaintiffs and the other Class members have suffered

11  damages in that the value of the products they purchased was less than warranted by Defendants.

12      274.    Plaintiffs assert this cause of action for violations of the laws of Florida pertaining

13  to express warranties.

14      275.    Plaintiffs and the Class were injured as a result of Defendants' breach of their

15  express warranties about Coca-Cola.

16      276.    Coca-Cola that is misbranded due to the Defendants' disregard of food labeling

17  regulations enacted for the protection of public health is a thing of danger that, like all

18  misbranded food, poses a risk to public health.

19      277.    By reason of the foregoing, Plaintiffs and the Class were damaged in the amount

20  they paid for Coca-Cola products, together with punitive damages.

21                          **TWELFTH CLAIM OF RELIEF**

22  **Violation of Florida Consumer Protection Statutes § 501.201-§501.213, Florida Deceptive and Unfair Trade Practices Act**

23      278.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth

24  herein.

25      279.    Defendants' conduct constitutes unlawful business acts and practices. Deceptive

26  acts or practices in the conduct of any business, trade or commerce. Defendants' conduct was

27  "consumer-oriented" and this conduct had broad impact on consumers at large. Defendants

28  engaged in false, misleading and unlawful advertising, marketing and labeling of Coca-Cola.

1    Defendants' manufacturing, distribution and sale of Coca-Cola were similarly unlawful.

2          280.    Defendants unlawfully sold Coca-Cola in Florida during the past four years.

3          281.    By advertising, marketing, distributing and selling mislabeled and misbranded

4    Coca-Cola to Plaintiffs and other members of the Class who purchased Coca-Cola in Florida,

5    Defendants engaged in, and continue to engage in, unlawful and deceptive acts and practices.

6          282.    Defendants' misleading marketing, advertising, packaging and labeling of Coca-

7    Cola were likely to deceive reasonable consumers.

8          283.    Plaintiffs and other members of the Class who purchased Coca-Cola in Florida

9    were deceived.

10         284.    Defendants have engaged in unlawful and deceptive business acts and practices.

11         285.    Plaintiffs and other members of the Class who purchased Coca-Cola in Florida

12   were injured by Defendants' unlawful and deceptive acts and practices.

13         286.    Defendants' fraud and deception caused Plaintiffs and other members of the Class

14   to purchase Coca-Cola that they would otherwise not have purchased had they known the true

15   nature of these products.

16         287.    Plaintiffs and other members of the Florida Class who purchased Coca-Cola in

17   Florida were injured as a result of Defendants' unlawful and deceptive acts and practices.

18         288.    Plaintiffs and other members of the Florida Class who purchased Coca-Cola in

19   Florida further seek to enjoin such unlawful deceptive acts and practices as described above. Each

20   of the Florida Class members who purchased Coca-Cola in Florida will be irreparably harmed

21   unless the unlawful actions of the Defendants are enjoined in that Defendants will continue to

22   falsely, misleadingly, and unlawfully conceal the artificial flavors and chemical preservatives

23   contained in Coca-Cola and to illegally manufacture, distribute and sell this illegally labeled,

24   misbranded product in violation of the food and drug laws that prohibit such actions. Plaintiffs

25   and other members of the Florida Class who purchased Coca-Cola in Florida therefore seek to

26   enjoin the manufacture, distribution or sale of any mislabeled or misbranded Coca-Cola in Florida

27   and further request an order granting them injunctive relief, ordering appropriate corrective

28

1   advertising and appropriate disclosures on the labeling in advertising, marketing and promotion of

2   Coca-Cola in Florida.

3   289.    Absent such injunctive relief, Defendants will continue to illegally manufacture,

4   distribute and sell mislabeled and misbranded Coca-Cola to the detriment of consumers in the

5   state of Florida.

6   290.    In violation of the labeling laws of the state of Florida and FDUPTA § 501 *et seq.*,

7   Defendants sold to Plaintiffs and the members of the Florida Class who purchased Coca-Cola in

8   Florida, products that were not capable of being legally sold, held or possessed, and which had no

9   economic value.

10   291.    Defendant's violation of FDUTPA is ongoing.

11   292.    As a direct and proximate cause of Defendants' violation of FDUPTA § 501 *et.*

12   *seq.*, Plaintiffs and the members of the Florida Class who purchased Coca-Cola in Florida were

13   injured when they paid good money for these illegal products. Plaintiffs and the members of the

14   Florida Class who purchased Coca-Cola in Florida have been damaged in an amount to be

15   determined at trial.

16   293.    As a result of Defendants' unlawful business practices, Plaintiffs and the members

17   of the Class who purchased Coca-Cola in Florida, pursuant to FDUPTA § 501, are entitled to an

18   order enjoining such future conduct and such other orders and judgments which may be necessary

19   to disgorge Defendants' ill-gotten gains and to restore to Plaintiffs and the members of the Florida

20   Class who purchased Coca-Cola in Florida any money paid for Coca-Cola.

21   294.    Plaintiffs and the members of the Class are also entitled to attorneys' fees.

## THIRTEENTH CLAIM OF RELIEF
### Violation of Florida Food Safety Act

24   295.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth

25   herein.

26   296.    This cause of action is brought pursuant the Florida Food Safety Act §500 *et seq.*

27   (the "Act"). Coca-Cola products are goods within the meaning of the Act.

28

297.   Defendants violated and continue to violate the Act by engaging in the following practices proscribed by §500 *et seq*. (2013)

> (a) the dissemination of any false advertisement of [Coca-Cola products]…. [the] advertisement is alleged to be false because it is misleading, there shall be taken into account, among other things, not only representations made or suggested by statement, word, design, device, or sound, or in any combination thereof, but also the extent to which the labeling or advertisement fails to prominently and conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning ingredients in the food, which facts are of material interest to consumers.

> (b) the distribution in commerce of [Coca-Cola products with] labeling or advertis[ment that] is in violation of this part.

> (c) the manufacturing, repackaging, packaging, selling, delivery, holding, or offering for sale of [Coca-Cola products in]which the advertising or labeling is false or misleading.

> (d) the advertising of [Coca-Cola products] that is adulterated or misbranded.

> (e) the receiving in commerce of [Coca-Cola products] that is falsely advertised or labeled or the delivering or proffering for delivery of [Coca-Cola products]

298.   Defendants violated the Act by representing through their advertisement and labeling that their containers of Coca-Cola, and Coca-Cola products, were safe and effective as described above when they knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

Pursuant to Florida Statutes §500 *et seq*. (2013) Plaintiffs and the members of the Florida Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

**FOURTEENTH CLAIM OF RELIEF**
**Violation of Florida Misleading Advertising Statute § 817.41**

299.   Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

1   300. Defendants engaged in false misleading advertising concerning Coca-Cola and its

2 purported lack of artificial flavors or chemical preservatives and its purported original formula

3 formulation. Defendants' conduct was consumer-oriented and this conduct had a broad impact on

4 consumers at large.

5   301. Defendants engaged in false, misleading and unlawful advertising, marketing and

6 labeling of Coca-Cola. Defendants' actions were unlawful and under the circumstances in which

7 Defendant ought to have known of the falsity thereof.

8   302. Florida Statue §817.41, prohibits "any person to make or disseminate or cause to

9 be made or disseminated before the general public of the state, or any portion thereof, any

10 misleading advertisement. Such making or dissemination of misleading advertising shall

11 constitute and is hereby declared to be fraudulent and unlawful, designed and intended for

12 obtaining money or property under false pretenses."

13   303. Defendants unlawfully, misleadingly advertised Coca-Cola in Florida and

14 throughout the United States during the past four years.

15   304. As fully alleged above, by advertising, marketing, distributing and selling

16 mislabeled and misbranded Coca-Cola to Plaintiffs and other members of the Florida Class who

17 purchased Coca-Cola in Florida, Defendants engaged in, and continue to engage in, misleading

18 advertising in violation of Fla. Stat. § 817.41.

19   305. Defendants' misleading marketing, advertising, packaging and labeling of Coca-

20 Cola were likely to deceive reasonable consumers.

21   306. Plaintiffs and other members of the Florida Class who purchased Coca-Cola in

22 Florida were deceived.

23   307. Defendants have engaged in such unlawful and deceptive practices alleged above.

24   308. Defendants' fraud and deception caused Plaintiffs and other members of the

25 Florida Class who purchased Coca-Cola in Florida to purchase Coca-Cola that they would

26 otherwise not have purchased had they known the true nature of these products.

27   309. Plaintiffs and other members of the Florida Class who purchased Coca-Cola in

28 Florida were injured as a result of Defendants' unlawful and deceptive acts and practices.

310.     Plaintiffs and other members of the Florida Class who purchased Coca-Cola in Florida further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the Florida Class members who purchased Coca-Cola in Florida will be irreparably harmed unless the unlawful actions of the Defendants are enjoined in that Defendants will continue to falsely and misleadingly and unlawfully advertise their Coca-Cola products in ways that conceal the artificial flavors and chemical preservatives contained in Coca-Cola.

311.     Defendants will continue to advertise these illegally labeled, misbranded products.

312.     Plaintiffs and other members of the Florida Class who purchased Coca-Cola in Florida seek to enjoin the false advertising of any mislabeled or misbranded Coca-Cola in Florida and further request an order granting them injunctive relief, ordering appropriate corrective advertising and appropriate disclosures on the labeling in advertising, marketing and promotion of Coca-Cola in Florida.

313.     Absent such injunctive relief, Defendants will continue to illegally advertise mislabeled and misbranded Coca-Cola to the detriment of consumers in the state of Florida.

314.     In violation of the labeling laws of the state of Florida and Fla. Stat. § 817.44, Defendants advertised to Plaintiffs and the members of the Florida Class who purchased Coca-Cola in Florida.

315.     Such products were not capable of being advertised legally.

316.     Defendants' violation of Fla. Stat. § 817.41 is ongoing.

317.     As a direct and proximate cause of Defendants violation of Fla. Stat. § 817.41, Plaintiffs and the members of the Florida Class who purchased Coca-Cola in Florida were injured when they paid good money for these illegal products.

318.     Plaintiffs and the members of the Florida Class who purchased Coca-Cola in Florida have been damaged in an amount to be determined at trial.

319.     As a result of Defendants' unlawful and deceptive business practices, Plaintiffs and the members of the Florida Class who purchased Coca-Cola in Florida, pursuant to Fla. Stat. § 817.44, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to

1    Plaintiffs and the members of the Class who purchased Coca-Cola in Florida any money paid for

2    Coca-Cola.

3        320.    Plaintiffs and the members of the Class are also entitled to attorneys' fees.

4                                    **JURY DEMAND**

5        Plaintiffs hereby demand a trial by jury of their claims.

6                                  **PRAYER FOR RELIEF**

7        WHEREFORE, Plaintiffs, individually, and on behalf of all other similarly situated

8    persons, pray for judgment against Defendants as follows:

9        A.    For an order certifying these consolidated actions as a class action;

10       B.    For an order awarding, as appropriate, damages, restitution, restitutionary

11   disgorgement, and non-restitutionary disgorgement to Plaintiffs and the Classes;

12       C.    For an order requiring Defendants to immediately cease and desist from selling

13   Coca-Cola in violation of law; enjoining Defendants from continuing to market, advertise,

14   distribute, and sell Coca-Cola in the unlawful manner described herein; and ordering Defendants

15   to engage in corrective action;

16       D.    For all monetary and equitable remedies available pursuant to Cal. Civ. Code §

17   1780;

18       E.    For an order awarding the statutory penalties provided for violation of FDUPTA §

19   501 *et seq.*; as well as the trebling and other damage augmentation provisions of FDUPTA § 501

20   *et seq.*;

21       F.    For an order awarding all equitable remedies available pursuant to FDUPTA §

22   501, *et seq.*, and as a result of the fact that the sale of a misbranded product is an illegal contract

23   that is void under Florida law;

24       G.    For an order awarding attorneys' fees and costs;

25       H.    For an order awarding punitive damages;

26       I.    For an order awarding pre-judgment and post-judgment interest;

27       J.    In the alternative only, the Court should award Plaintiffs and the Classes nominal

28   damages; and

1      K.     For an order providing such further relief as this Court deems just and proper.

2    Dated August 11, 2015.

3                              Respectfully submitted,

/s/  *Keith M. Fleischman*

Keith M. Fleischman
Bradley F. Silverman
Joshua D. Glatter
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, NY 10017
Tel: (212) 880-9571
Fax: (917) 591-5245
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com
jglatter@fleischmanlawfirm.com

*Lead Counsel for Plaintiffs and counsel to George Engurasoff and Joshua Ogden*

/s/  *Don Barrett*

Don Barrett
Brian K. Herrington
BARRETT LAW GROUP, P.A.
404 Court Square North
Lexington, MS 39095
Tel: (662) 834-2488
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com

*Lead Counsel for Plaintiffs*

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

*Counsel for George Engurasoff and Joshua Ogden*

Mark L. Knutson
Jeffrey R. Krinsk
William R. Restis
FINKELSTEIN & KRINSK, LLP
501 West Broadway, Suite 1250
San Diego, CA 92101

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 4:14-md-02555-JSW

Tel: (619) 238-1333
Fax: (619) 238-5425
mlk@classactionlaw.com
jrk@classactionlaw.com
wrr@classactionlaw.com

*Counsel for Paul Merritt*

Sydney J. Hall
LAW OFFICES OF SYDNEY J. HALL
1308 Bayshore Highway, Suite 220
Burlingame, CA 94010
Tel: (650) 342-1830
Fax: (650) 342-6344
sydneyhalllawoffice@yahoo.com

*Counsel for Ayanna Nobles*

Timothy Howard
HOWARD & ASSOCIATES, P.A.
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Tel: (850) 298-4455
tim@howardjustice.com

*Counsel for Thomas C. Woods*

### CERTIFICATE OF SERVICE

I, Don Barrett, hereby certify that a true and complete copy of the foregoing was served to all counsel of record via the ECF filing system on August 11, 2015.


/s/  *Don Barrett*
Don Barrett