UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COCA-COLA PRODUCTS MARKETING AND SALES PRACTICES LITIGATION (NO. II) | Case No. 14-md-02555-JSW   (MEJ)<br>**DISCOVERY ORDER**<br>Re: Dkt. No. 85 |

## INTRODUCTION

Pending before the Court is the parties' Joint Discovery Letter in which Defendants[1] request to compel the production of discovery from named Plaintiffs relating to their "food purchasing habits" to test their reliance on Defendants' alleged misrepresentations. Dkt. No. 85. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

This Multi-District Litigation consists of several class actions in which Plaintiffs allege Defendants failed to disclose that phosphoric acid is used in Coca-Cola ("Coke") as an artificial flavor and chemical preservative. Jt. Ltr. at 1. Plaintiffs also allege that certain containers affirmatively misrepresented that Coke has "*no artificial flavors. no preservatives added. since 1886.*" *Id.* Plaintiffs allege they relied on Coke labels and containers in making their purchasing decisions, and they would not have purchased Coke had they known it contains artificial flavoring and chemical preservatives. *Id.*

---

[1] Defendants are The Coca-Cola Company, Coca-Cola Refreshments USA, Inc., BCI Coca-Cola Bottling Company of Los Angeles, and Coca-Cola Bottling Company of Sonora, California Inc. Consolidated Compl. at 2 & ¶¶ 41-46.

The presiding judge, the Honorable Jeffrey S. White, has ordered that discovery proceed in phases: Phase 1 is limited to the issue of Plaintiffs' alleged reliance and is to be completed by September 18, 2015. Dkt. No. 69.

On July 14, 2015, Defendants served discovery requests ("Requests") on Plaintiffs. Jt. Ltr. at 1. The Requests seek, among other things, information regarding: "Plaintiffs' past food and beverage purchases over the past five years; interrogatories to identify foods and beverages in Plaintiffs' possession, as well as all foods and beverages purchased in the past two weeks; interrogatories to identify stores and restaurants from which Plaintiffs have purchased food or beverages; and requests to inspect and photograph the foods and beverages in Plaintiffs' homes." Dkt. No. 76 at 2 (footnotes omitted). Plaintiffs raised various concerns about the requests, after which Defendants agreed to (1) narrow the scope of the requests to processed foods; (2) limit the time period for Request 18; and (3) allow Plaintiffs to produce photographs of foods and beverages in their homes in lieu of inspections. *Id.* at 1-2. Plaintiffs advised Defendants that these changes did not fully remedy their concern. *Id.* Defendants then sought to compel their responses. *Id.*

On August 11, 2015, the Court denied without prejudice Defendants' request to compel discovery responses, finding the issue was premature given that Plaintiffs had not yet provided their responses. Dkt. No. 81. On August 13, 2015, Plaintiffs provided their written responses and objections ("Responses"). Jt. Ltr. at 1.

Defendants now seek an Order compelling the following responses:

- Interrogatory ("Rog") No. 2 ("concerning food in Plaintiffs' possession as of July 14, 2015; Plaintiffs answered only with regard to soft drinks") and Nos. 3 & 4 ("concerning food and beverages purchased within a two-week period; Plaintiffs other than Merritt (who objected in full) answered only with regard to either soft drinks or Coca-Cola");

- Request for Information ("RFI") No. 1 ("requesting inspection of Plaintiffs' property for the purpose of documenting the foods and beverages in their possession, or photographs in lieu of an inspection, which all Plaintiffs refused"); and

- Request for Production ("RFP") Nos. 5 & 10 ("documents relating to phosphoric acid"), 6 & 11 ("documents relating to artificial flavoring"), 7 & 12 ("documents relating to chemical

<mark>preservatives"), 18 ("receipts from the past 5 years that include charges for foods or beverages, which all Plaintiffs have agreed to produce only relating to Coca-Cola products and other soft drinks"), and 20 & 21 ("documents relating to reward or club memberships with retailers that sell foods or beverages").</mark>

<mark>*Id.* at 2.</mark>

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## DISCUSSION

Defendants argue "Plaintiffs have put their food purchasing habits at issue by alleging that '[h]ad [they] known Coca-Cola contained artificial flavoring' or 'chemical preservatives,' they 'would not have purchased Coca-Cola.'" Jt. Ltr. at 2 (citing Engurasoff Am. Compl., Case No. 4:13-CV-03990-JSW, Dkt. No. 15, ¶¶ 108-09). They assert they are "entitled to test the veracity

3

and credibility of these allegations[,]" and contend Plaintiffs' Responses fall short of what Defendants requested as they are limited to information about their soft drink or Coke purchases and consumption. *Id.* & n.5. They further contend that "information about where Plaintiffs shop, including any loyalty cards or club memberships they hold, is needed for possible third-party discovery of these as-yet unknown retailers." *Id.* at 3.

In response, Plaintiffs argue Defendants' Requests go beyond the scope of Phase I discovery, which is limited to their reliance on Coke's representations—not their general food purchasing habits. *Id.* at 4. To the extent the sought-after information is relevant, they contend the Requests are not in line with Rule 26(b)(2)(C)(iii)'s proportionality principle, as Defendants' Requests are unduly burdensome, saddling Plaintiffs "with the tasks of preserving, sorting, and inventorying *all* food packaging, containers, and garbage in their possession—essentially Plaintiffs' kitchen trash—even for unrelated products." *Id.* at 4-5 (emphasis in original). They also contend that Defendants "encumber Plaintiffs with the task of identifying *all* stores and restaurants they may have bought or consumed foods with phosphoric acid [], chemical preservatives, or artificial flavors, or *any* food and drink." *Id.* at 4 (emphasis in original). Plaintiffs maintain these Requests are particularly overly burdensome where "[q]uestions concerning the Plaintiffs' general purchasing practices can be adequately covered at a deposition." *Id.* at 4-5.

Both sides read into Judge White's Minute Order following the Initial Case Management Conference, which states "Deadline to conduct Phase I Discovery (named Plaintiffs' reliance): September 18, 2015." Dkt. No. 69. In reviewing the record, it appears Judge White adopted the Defendants' proposed discovery plan as to this first phase. *See* Jt. Case Mgmnt. Stmt. at 10, Dkt. No. 54. In Defendants' proposed discovery plan, they stated: "During Phase 1, Defendants would take the depositions of the named Plaintiffs and propound written discovery and document requests in order to ascertain whether the named Plaintiffs relied specifically on Coca-Cola's representations regarding phosphoric acid when they decided to purchase Coke, such that they have viable claims." *Id.* But Defendants now phrase the issue as follows: "the issue is whether Plaintiffs actually relied on the absence of artificial flavoring and chemical preservatives *when*

4

*they made their purchasing decisions*." Jt. Ltr. at 3 n.8 (emphasis added). This statement appears to be much broader than the actual inquiry. As Plaintiffs argue, the issue in Phase I discovery is whether Plaintiffs actually relied on the absence of artificial flavoring and chemical preservatives when they made their purchasing decisions *of Coke*—not Plaintiffs' purchasing decisions in general. *Id.* at 4. The aim of Judge White's Minute Order is to facilitate streamlined discovery on this issue, not expand it.

Defendants have not shown how Plaintiffs' potential purchases and consumption of *other* foods or beverages with artificial flavors or chemical preservatives are relevant to the determination about whether Plaintiffs relied on Coke's alleged misrepresentations. They rely on two primary cases in asserting they are entitled to this discovery. First, they cite *Red v. Kraft Foods, Inc.*, No. 10-cv-1028-GW, 2012 WL 8019257, at *12 n.17 (C.D. Cal. Apr. 12, 2012), for the proposition that "plaintiffs' purchases of other products are 'relevant as to the issue of individual reliance[.]'" Jt. Ltr. at 3. The footnote cited by Defendants states in full:

> Kraft also argues that Plaintiffs are not typical of the class and cannot adequately represent the class because they purchase and consume other foods with the same ingredients they allege to be unhealthy in this suit. *See* Docket No. 176 at 42 (arguing Plaintiffs lack typicality because they purchase other foods that contain the ingredients they allege in the SAC to be unhealthy). This argument is wholly irrelevant; the claims here turn on whether *Kraft's particular statements as to particular products* were false or fraudulent such that Plaintiffs were injured; whether Plaintiffs purchased other products that may or may not have involved any representations at all about healthfulness does not bear on any of the elements of the purported class claims. Plaintiff's other purchasing decisions will only be relevant as to the issue of individual reliance which, as discussed above, will not need to be proven at all, because it is not an element for the UCL and FAL claims, and the class will need to be decertified as to the CLRA claims if there is a finding that the misrepresentations were not material and thus that individual reliance must be proven.

*Kraft*, 2012 WL 8019257, at *12 n.17 (emphasis in original). Given Judge White's limitation on Phase I discovery, it is unclear how this statement supports Defendants' argument that they are entitled to the information about Plaintiffs' use of unrelated products. Additionally, while Defendants are correct that the *Kraft* court noted "Plaintiff's other purchasing decisions will only be relevant as to the issue of individual reliance," Defendants have not explained how they intend

to use the information about Plaintiffs' general "food purchasing habits" to test their reliance on Coke's representations or consequently that the *Kraft* court contemplated the use of such information in the way Defendants seek to use it here. Put another way, while the Court understands the importance of testing Plaintiffs' allegations about their reliance on *Coke*'s representations, the Court cannot see why Plaintiffs' use of other products has any bearing on that inquiry during this initial stage of discovery.

Defendants also cite a Minute Order from *In re ConAgra*, Case No. 11-CV-5379-MMM (C.D. Cal. 2014), which involved allegations that Wesson cooking oil labels falsely represented the product was "natural." Jt. Ltr. at 3. But that Minute Order is of little assistance here. According to Defendants, in *ConAgra*, "defendant sought discovery into the plaintiffs' purchases beyond Wesson oil, including other oil products and other foods labeled as 'natural'" and "[t]he court compelled discovery regarding 'other cooking oils' and all 'food labels that contain the word 'natural.'" *In re ConAgra.*, Dkt. No. 209. However, having reviewed the Minute Order, the Court notes there was little dispute regarding the requested discovery, with plaintiffs' counsel stating "we're perfectly happy to ask them to photograph any labels in their house relating to 'all natural' or anything like that and send them over to us for production." *Id.*, Dkt. No. 218 at 97. The parties further agreed to a stipulation that made it unnecessary for the court to decide whether the defendant could obtain "all food labels that reference genetic modification, genetic engineering, GMOs, bioengineering, or equivalent terms." *Id.* at 97-99; *see also id.*, Dkt. No. 209 (reflecting the stipulation). Otherwise, the *ConAgra* court denied the motion to compel with respect to the other requests. *Id.*, Dkt. No. 209 (denying without prejudice defendants' motion to compel).[2]

---

[2] These document requests included:
- All documents relating to "natural" foods, "natural" advertising claims, genetic engineering, bioengineering, GMOs or food safety.
- All documents relating to or reflecting reading, research, investigation or communications regarding: "natural" foods or food ingredients, foods derived from genetically modified or bioengineered plants, genetic modification or bioengineering of plants used for foods, and/or ingredients in Wesson Oils or other foods derived from genetically modified or bioengineered plants.
- All receipts for past food purchases made at grocery stores, including such purchases made prior to or during the pendency of this case. (Receipts for purchases made prior to

Consequently, while the *ConAgra* Minute Order appears to support Defendants' argument, the *ConAgra* court does not appear to have dealt with the same issues present here or the same adversity on these issues between the parties. This case does not clarify the analysis.

Plaintiffs cite a district court case that considered whether the named plaintiffs were typical of the proposed class, *Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013). Jt. Ltr. at 5 n.13. In *Kashi*, the court noted, "the fact that Plaintiffs may also purchase unhealthy or otherwise artificial foods says nothing about whether they purchased Kashi products specifically because they were supposedly healthy and natural." *Kashi*, 291 F.R.D. at 503. Based on this, Plaintiffs argue *Kashi* "recognized that the fact that the named plaintiffs might buy other unhealthy or artificial foods did not bear on their purchase of Kashi's products that specifically claimed to be 'healthy and natural.'" Jt. Ltr. at 5 n.13. They contend "[t]he same analysis holds true for individual reliance. A named plaintiff's reliance on other products' disclosures regarding artificial flavors or chemical preservatives does not bear upon their reliance regarding *Coke*." *Id.* (emphasis in original). They further note, "Defendants do not even limit the Requests to soft drinks, let alone colas." *Id.* Defendants' only attempt to distinguish *Kashi*'s finding is that the court considered Rule 23's typicality inquiry, not the issue of the plaintiffs' reliance. While Defendants are correct that *Kashi* considered typicality issues, it is not clear how that distinction matters to this inquiry.

Nonetheless, the Court need not conclusively resolve the relevance issue here. Rather, given Rule 26(b)(2)(C)(iii)'s proportionality principle, the Court finds the burden of much of Defendants' proposed discovery outweighs its likely benefit at this preliminary stage. Fed. R. Civ. P. 26(b)(2)(C). First, Plaintiffs have articulated a basis for why Defendants' Requests seeking information relating to their general food purchasing habits is beyond the scope of the Phase I discovery, and Defendants have not articulated why they need this information at this point.

---

    November 28, 2010, or made while you were traveling overnight away from home, may be excluded. References to nonfood items may be redacted from the receipts to protect legitimate privacy concerns.)
- All documents relating to or reflecting communications with ConAgra or other food producers or with food retailers.

*In re ConAgra*, Case No. 11-CV-5379-MMM, Dkt. No. 205.

7

Second, to the extent such information is relevant to this matter, the less burdensome means of discovering the same basic information is to question Plaintiffs about these issues at their depositions, and the Court has already ordered Plaintiffs to provide their scheduling availability. Dkt. No. 81.

Finally, Plaintiffs argue several Requests do not bear on the named Plaintiffs' reliance at all. Jt. Ltr. at 3 n.12 (citing Rog No. 1 (family members); RFP Nos. 9-12 (consumer complaints) 14-15 (expert witnesses or any documents that may be used in this lawsuit at any time); 16 (documents concerning "premium pricing for Coke); 22-23 (documents concerning named plaintiffs or any class member's damages)). Defendants respond that "[t]hese requests are not at issue in this motion," *id.* at 4 n.9, but this is not entirely correct. Defendants seek responses to RFP Nos. 10-12, which are in fact included in Defendants' motion. *See* Jt. Ltr. at 2. These RFPs seek: "All Documents relating to any consumer complaint concerning phosphoric acid" (RFP No. 10); "All Documents relating to any consumer complaint concerning Artificial Flavoring" (RFP No. 11); and "All Documents relating to any consumer complaint concerning Chemical Preservatives" (RFP No. 12). Dkt. No. 85-1. Defendants have not articulated how these requests bear on the issue of the named Plaintiffs' reliance, and as such appear to be beyond the scope of Phase I discovery.

**CONCLUSION**

In light of the foregoing, the Court issues the following Order:

- Request to Compel responses to Interrogatory Nos. 2-4 is **GRANTED** but **LIMITED** to "soft drinks";
- Request to Compel responses to RFI No. 1 is **DENIED**;
- Request to Compel responses to RFP Nos. 5 & 10 (documents relating to phosphoric acid), 6 & 11 (documents relating to artificial flavoring), 7 & 12 (documents relating to chemical preservatives) is **DENIED**;
- Request to Compel responses to RFP 18 (receipts from the past 5 years that include charges for foods or beverages, which all Plaintiffs have agreed to produce only relating to Coca-Cola products and other soft drinks), and 20 & 21 (documents

8

relating to reward or club memberships with retailers that sell foods or beverages) is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 26, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

9