**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE COCA-COLA PRODUCTS MARKETING AND SALES PRACTICES LITIGATION (II)<br><br>**This document relates to all actions** | Case No.  14-md-02555-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Docket No. 100 |

Now before the Court for consideration is the motion for partial summary judgment filed by defendants The Coca-Cola Company, Coca-Cola Refreshments USA, Inc., BCI Coca-Cola Bottling Company of Los Angeles, and Coca-Cola Bottling Company of Sonora, California (collectively "Coca-Cola").  The Court has considered the parties' papers, relevant legal authority, the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, Coca-Cola's motion.[1]

**BACKGROUND**

**A.      Factual Background.**

This is a multi-district litigation in which Plaintiffs, George Engurasoff ("Mr. Engurasoff"), Paul Merritt ("Mr. Merritt"), Joshua Ogden ("Mr. Ogden"), Ronald Sowizrol ("Mr. Sowizrol"), Michelle Marino ("Ms. Marino"), Yocheved Lazaroff ("Ms. Lazaroff"), Rachel Dube ("Ms. Dube"), and Thomas Woods ("Mr. Woods") (collectively "Plaintiffs"), assert a variety of

---

[1]      Coca-Cola submitted a request for judicial notice in support of its motion. (Docket No. 100-1.)  Because the Court did not rely on any of the documents attached to that request, the Court denies it as moot.

1

claims against Coca-Cola, each of which are based on the allegation that Coca-Cola has represented, affirmatively and by material omissions, that Coke is "and always has been, free of artificial flavors and chemical preservatives, when in reality, it contains" phosphoric acid. (Docket No. 103, Opp. Br. at 24:1-2; *see also* Docket No. 79, Consolidated Complaint ("Consol. Compl."), ¶ 1 (Coca-Cola deceived consumers "into thinking that [Coke][2] was natural and healthy when in fact it contained artificial flavoring and chemical preservatives.").[3] Plaintiffs allege that phosphoric acid is an artificial flavoring and a chemical preservative and is used as such in Coke products. (*See, e.g.,* Consol. Compl. ¶¶ 10, 15, 20-25, 33, 62-107; Docket No. 26, Amended Class Action Complaint ("Marino AC") ¶¶ 10, 15, 20-25, 36, 57-108; *Sowizrol v. CocaCola Company*, 14-CV-3774, Docket No. 53, First Amended Complaint ("Sowizrol FAC") ¶¶ 10, 15, 20-25, 33, 51-99; *Lazaroff v. CocaCola Company*, 14-cv-3886-JSW, Docket No. 27, Amended Complaint ("Lazaroff AC") ¶¶ 10, 15, 20-25, 33, 55-103.)

Plaintiffs challenge three aspects of Coca-Cola's labels. First, Plaintiffs allege that although phosphoric acid is included on the ingredients list, Coca-Cola failed to disclose the fact that it is, and is used as, an artificial flavoring and chemical preservative. (*See, e.g.,* Consol. Compl. ¶¶ 62-107, 111-113; Marino AC ¶¶ 56-108, 114-116; Sowizrol FAC ¶¶ 51-99, 103-105; Lazaroff AC ¶¶ 54-103, 107-109.)[4]

Plaintiffs also allege that the phrase "no artificial flavors. no preservatives added. since 1886.," which appears on certain Coke products, is an affirmative misrepresentation, because Coke contains phosphoric acid, which Coca-Cola uses as an artificial flavoring and a chemical preservative.[5] (*See, e.g.,* Consol. Compl. ¶¶ 14-15, 25; Sowizrol FAC ¶¶ 14-15, 48-49; Marino AC ¶¶ 14-15, 25, 54-56; Lazaroff AC ¶¶ 14-15, 52-54.)

Finally, Plaintiffs allege that the phrase "original formula," is false, because "the

---

[2] The Court refers to Defendants as "Coca-Cola" and refers to the product as "Coke."

[3] Unless otherwise noted, all docket references are to the docket in 14-md-2555.

[4] The Court shall refer to this as the "ingredients list claim."

[5] The Court shall refer to this as the "Pemberton claim."

2

1  composition of Coca-Cola has repeatedly changed over time," and the changes include "the
2  addition of artificial ingredients like phosphoric acid." (Consol. Compl. ¶ 16; *see also* Marino AC
3  ¶ 16, 55, 135; Sowizrol FAC ¶ 16, 49, 123; Lazaroff AC ¶ 16, 53, 127.)

4  The Court shall address additional facts as necessary in its analysis.

**B.  Procedural History Regarding this Motion.**

On June 12, 2015, the parties filed a joint case management conference statement. (Docket No. 54, Joint Case Management Conference Statement ("Joint Stmt.").) In that statement, Coca-Cola proposed a trifurcated discovery plan, with the initial phase being limited to discovery on the issue of reliance. (Joint Stmt. at 10:21-11:8.) The Court adopted Coca-Cola's proposal and ordered that the first phase of discovery would close on September 18, 2015. The Court further directed that the "[l]ast day to file motion for summary judgment regarding named Plaintiffs' reliance" would be October 2, 2015. (Docket No. 69, Minute Order.)

**ANALYSIS**

**A.  Legal Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; see also Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which

1  either negates an essential element of the non-moving party's claims or that party must show that
2  the non-moving party does not have enough evidence of an essential element to carry its ultimate
3  burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102
4  (9th Cir. 2000).

5  Once the moving party meets its initial burden, the non-moving party must "identify with
6  reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91
7  F.3d 1275, 1279 (9th Cir. 1996); *see also* Fed. R. Civ. 56(e).  In addition, the party seeking to
8  establish a genuine issue of material fact must take care adequately to point a court to the evidence
9  precluding summary judgment because a court is "'not required to comb the record to find some
10 reason to deny a motion for summary judgment.'"  *Carmen v. San Francisco Unified School Dist.*,
11 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*,
12 840 F.2d 1409, 1418 (9th Cir. 1988)).  If the non-moving party fails to point to evidence
13 precluding summary judgment, the moving party is entitled to judgment as a matter of law.
14 *Celotex*, 477 U.S. at 323.

15 **B.     The Scope of this Order.**

16 As set forth above, the Court adopted Coca-Cola's proposal to trifurcate discovery and to
17 resolve an early motion for summary judgment on Plaintiffs' reliance.  As to at least some of the
18 claims, Coca-Cola seeks summary judgment on the basis that Plaintiffs cannot establish injury or
19 causation.  Plaintiffs argue that Coca-Cola has exceeded the scope of the Court's case
20 management order and that resolution of those issues is premature.  Coca-Cola concedes that
21 actual reliance is not an element of some of the claims, but it argues that, given the nature of this
22 case, the only way to prove injury on the claims at issue is to show detrimental reliance.  It is not
23 clear that this argument holds true for each of the claims at issue.  *See, e.g., Solo v. Bed Bath &*
24 *Beyond, Inc.*, No. 06-cv-1908 (SRC), 2007 WL 1237825, at *4 n.1 (D.N.J. April 26, 2007) ("The
25 New Jersey courts have distinguished … 'causal connection' from [the] element of traditional
26 reliance required in fraud cases.").

27 Coca-Cola could have asked the Court for an early summary judgment on standing, either
28 Article III or statutory, which would have encompassed issues of causation and injury.  It also

4

could have sought summary adjudication of the issues of causation or injury or on the merits of a given claim. It did not. Accordingly, the Court shall limit its evaluation of Coca-Cola's motion to whether Plaintiffs are required to prove actual reliance on a given claim. If the answer to that question is yes, the Court will evaluate whether Plaintiffs have met their burden to overcome Coca-Cola's motion. Coca-Cola may renew its arguments regarding causation and injury at a later date.[6]

### C. The California Plaintiffs' Claims.

Coca-Cola moves for partial summary judgment on Mr. Engurasoff's, Mr. Merritt's, and Mr. Ogden's claims for alleged violations of: (1) California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.* (the "UCL Claims"); California's False Advertising Law, Business and Professions Code sections 17500, *et seq.* (the "FAL Claims"); (3) California's Consumer Legal Remedies Act, Civil Code sections 1750, *et seq.* (the "CLRA Claim"), and their claims for negligent misrepresentation.[7] (*Id.* ¶¶ 160-236.)

Each of these claims for relief requires a showing of actual reliance on the alleged misrepresentation. *See Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 326-27 (2011) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)) (FAL and UCL); *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 413 (1992) (negligent misrepresentation); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366-67 (2010) (CLRA). In addition, courts have held that a plaintiff must establish reliance under the unlawful and unfair prongs where, as here, the gravamen of the claim is based on alleged misrepresentation. *See, e.g., Figy v. Frito-Lay North America, Inc.*, 67 F. Supp. 3d 1075, 1088 (N.D. Cal. 2014); *Odgen v. Bumble Bee Foods, LLC*, No. 12-cv-01828-LHK, 2014

---

[6] The Court expresses no opinion in any party's favor on those issues. The Court's ruling is limited strictly to whether Plaintiffs have met their burden to overcome Coca-Cola's motion regarding reliance.

[7] Coca-Cola argues that the Court should treat the negligent misrepresentation claims as abandoned, because the California Plaintiffs failed to specifically address those claims in their opposition brief. In opposing the motion on the UCL claims, the California Plaintiffs address the issue of whether they relied on the statements or omissions at issue. Because the negligent misrepresentation claims are based on the same facts, the Court declines to treat them as abandoned. However, if *any* Plaintiff does not intend to pursue a negligent misrepresentation claim going forward, that Plaintiff should file a notice of dismissal of the claim.

WL 27527, at *7 (N.D. Cal. Jan. 2, 2014) (citing, *inter alia*, *Kwikset*, 51 Cal. 4th at 326 & n.9 and *Durell*, 183 Cal. App. 4th at 1355).

In order to show actual reliance, whether based on an affirmative misrepresentation or a material omission, the California Plaintiffs must demonstrate that the misrepresentation or omission was an "immediate cause of the injury-causing conduct." *In re Tobacco II*, 46 Cal. 4th at 328; *accord Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). The California Plaintiffs need not prove the misrepresentation or omission was the "only", "sole," "predominant," or "decisive" cause of the injury-causing conduct. Rather, they may show that the misrepresentation or omission was a substantial factor in their decision making process. *Daniel*, 806 F.3d at 1225; *In re Tobacco II*, 46 Cal. 4th at 328. If an omission is material, the fact that one would have behaved differently "can be presumed, or at least inferred." *Daniel*, 806 F.3d at 1225. However, a plaintiff cannot use that presumption, "if the evidence establishes an actual lack of reliance." *Lanovaz v. Twinings North America, Inc.*, No. 12-cv-02646-RMW, 2014 WL 46822, at *3 (N.D. Cal. Jan. 6, 2014) (citing, *inter alia, In re Tobacco II*, 46 Cal. 4th at 327); *cf. In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1020 (N.D. Cal. 2013) (presumption cannot be applied to misrepresentations plaintiffs never saw).

The California Plaintiffs argue that they need not prove reliance on a specific misrepresentation and contend that the Court must evaluate their reliance based on the Coke label as a whole. In support, they rely heavily on *In re Tobacco II*, in which the court held that a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where … those misrepresentations and false statements were part of an extensive and long-term advertising campaign." 46 Cal. 4th at 328. The California Plaintiffs have not relied on such a theory in this case, and the Court does not find their argument persuasive.

Plaintiffs also rely on *Miller v. Ghiradelli Chocolate Co.*, to support the argument that the Court must evaluate the Coke label as a whole. 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012). However, in the *Miller* case, the court was not called upon to address whether the plaintiffs relied on particular portions of the label. *Id.* Rather, the court addressed whether the label would

6

deceive a reasonable consumer. That issue is not yet before this Court.

With respect to the ingredients list claim, the California Plaintiffs argue that because the omission is material, it should not impact the Court's analysis if they did not read the ingredients list before purchasing Coke. The Court disagrees. In the *Daniel* case, the Ninth Circuit stated that there are two "sub-elements" a plaintiff must prove to show that an omission was a substantial factor in a purchasing decision: awareness and a change in behavior. *Daniel*, 806 F.3d at 1225-26. The latter sub-element may be presumed if the omitted information is material.[8] *Id.* at 1225. However, a plaintiff must still be able to show he or she would have been aware of the information if it had been disclosed. *Id.* at 1226.

In *Daniel*, the court found that the plaintiffs had created a genuine issue of material fact about whether they would have been aware of the omitted information. There, the plaintiffs presented evidence that the defendant had disclosed that information to its dealerships, and plaintiffs testified that they had "interacted with and received information from sales representatives" at the dealerships before making their purchases. *Id.* "Since Plaintiffs have sufficient evidence to establish a plausible method of disclosure and to establish that they would have been aware of information disclosed *using that method*, there is a genuine issue of material fact as to whether they in fact relied on" defendant's omissions. *Id.* at 1227 (emphasis added). Here, including the alleged omissions on the ingredients list would have been a plausible method to disclose that information. Therefore, it is relevant to the Court's analysis whether a Plaintiff would have been "aware of the disclosure using that method." *Id.*

Accordingly, the Court evaluates whether the California Plaintiffs relied on each alleged misrepresentation or omission as set forth in the Consolidated Complaint. *See, e.g., Khasin v. Hershey Company*, No. 12-cv-01862-EJD, 2014 WL 17799805, at *4 (N.D. Cal. May 5, 2014) (granting partial summary judgment where plaintiff's testimony revealed "that he did not, in fact, rely on most of [the] representations outlined in the pleadings").

---

[8] Coca-Cola did not seek early summary judgment on the issue of whether the alleged omission is material, and the record is not sufficiently developed for the Court to make that determination.

7

### 1. Mr. Engurasoff's Claims.

Mr. Engurasoff testified that he noticed the Pemberton claim on Coke's label in approximately 2012. He testified that he first noticed the statement at his home, after he purchased a two-liter bottle of Coke. (Docket No. 104, Declaration of Joshua Glatter ("Glatter Decl."), Ex. C (Deposition of George Engurasoff at 17:9-18, 19:3-7, 27:1-9).)[9] Mr. Engurasoff initially testified he has not purchased Coke since May 2012. However, he also testified that before he learned that the Pemberton claim was "not true," he purchased six to twelve more containers of Coke. (*Id.* at 31:-3-7, 37:6-9, 62:20, 63:1-11, 64:18-18.) Specifically, Mr. Engurasoff testified that "I did notice that it did have the statement on the bottle in regards to it being – having no artificial flavors, no preservatives, so … that helped me, I guess, justify buying the product I liked to drink[.] (*Id.* at 67:4-11.)[10] Taking the facts in the light most favorable to Mr. Engurasoff, the Court finds that he has put forth sufficient evidence to show there is a genuine issue of disputed fact as to whether the Pemberton claim was a substantial factor in his decision to purchase Coke.

Mr. Engurasoff does not dispute that he did not read the ingredients list before purchasing Coke, and he did testify that he had no quarrel with the manner in which phosphoric acid was listed in the ingredients list. (*Id.* at 54:1-4.) With the exception of the question about whether Mr. Engurasoff reviewed the ingredients list before purchasing a specific Coke product, Coca-Cola's questions were directed at Mr. Engurasoff's practices about reading labels in general. Mr. Engurasoff testified that he does not currently have a practice of reading labels to determine whether a product contains phosphoric acid, but that he does have a practice of reading labels when he shops for his kids to look at sugar content. (*Id.* at 25:1-26:25). He also testified that he

---

[9] Coca-Cola has attached relevant excerpts from the plaintiffs' depositions to the Declaration of Michelle W. Cohen. (*See* Docket Nos. 105-5 through 105-13.) Plaintiffs have attached the complete transcripts of their depositions to the Glatter Declaration. Unless it is necessary to refer to Coca-Cola's excerpts for purposes of evaluating whether it has met its burden of proof as the moving party, all further citations to a Plaintiff's deposition shall be to the exhibits attached to the Glatter Declaration.

[10] Coca-Cola's objection to this testimony is overruled.

8

"occasionally" reads labels to determine whether a product contained added preservatives. (*Id.* at 57:12-21.) The Court concludes that Mr. Engurasoff has presented sufficient evidence to overcome Coca-Cola's motion for summary judgment. Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

However, with respect to the phrase "original formula," Mr. Engurasoff previously acknowledged that Coke's formula has changed many times since 1886 and stated that there were no claims based on that phrase. (*Engurasoff v. Coca-Cola Company*, 13-cv-3990-JSW, Docket No. 33, Opposition to Motion to Dismiss at 5, n.9.) Therefore, on August 21, 2014, the Court granted, in part Coca-Cola's motion to dismiss claims premised on that statement. (*Engurasoff v. Coca-Cola*, Docket No. 73, Order at 8:18-22.) To the extent Mr. Engurasoff seeks to proceed on a theory that this phrase, standing alone, supports these claims the Court shall not consider that argument in light of its prior ruling. Accordingly, the Court GRANTS, IN PART, Coca-Cola's motion.[11]

### 2. Mr. Odgen's Claims.

Coca-Cola concedes that Mr. Ogden relied on the Pemberton claim, and it only moves for partial summary judgment on the ingredients list claim. Mr. Odgen testified that, "[f]or the most part," he reads the ingredients list before purchasing food or beverages. (Glatter Decl., Ex. H (Ogden Deposition at 21:15-24.) Mr. Ogden also testified that if he read an ingredients list and saw that the product contained phosphoric acid, he "would not get it on principle." (*Id.* at 41:3-42:1, 42:5-14.) Mr. Odgen testified that, apart from the Pemberton claim, he did not have any other concerns with Coke's label. (*Id.* at 29:4-7.) However, the rest of his testimony supports his theory that had he known Coke contained phosphoric acid, he would not have purchased it. The Court concludes Mr. Odgen has presented sufficient evidence to overcome Coca-Cola's motion for summary judgment. *Daniel*, 806 F.3d at 1227. Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

---

[11] The Court expresses no opinion on whether the phrase "original formula" would render either the Pemberton claim or the ingredients list claim deceptive or misleading and, thus, it shall not preclude any Plaintiff from raising this argument as the litigation proceeds.

1    To the extent these claims are based on the phrase "original formula," for the reasons set
2    forth above with respect to Mr. Engurasoff, the Court GRANTS, IN PART, Coca-Cola's motion.

### 3. Mr. Merritt's Claims.

Mr. Merritt testified that although he does not normally drink Coke, he purchased a Coke in 2012, and that the reason he purchased it was because it had the Pemberton claim on the label. (Glatter Decl., Ex. D (Deposition of Paul Merritt at 33:12-22; *see also id.* at 19:11-13 ("I specifically was induced by the labeling of the product that implied and specifically stated all natural products or ingredients."), 34:20-35:8, 38:19-25, 39:9-13.) Although Mr. Merritt also testified that he purchased the Coke because it was on sale, the Court concludes there is sufficient evidence for a reasonable jury to find that the Pemberton claim was a substantial factor in his decision to purchase Coke. Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

With respect to the ingredients list claim, Mr. Merritt testified that he did not look at the list of ingredients when he purchased Coke. (*Id.* at 40:10-19.) However, he also testified, in response to Coca-Cola's questions about whether he reads labels, that he tries to read them and testified that he tries to avoid products that have phosphoric acid on the label. (*Id.* at 50:10-12, 87:13-19.) The Court concludes Mr. Merritt has presented sufficient evidence to overcome Coca-Cola's motion for summary judgment. *Daniel*, 806 F.3d at 1227. Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

With respect to the "original formula" claim, Mr. Merritt testified that he never noticed that phrase until it was pointed out to him at is deposition. (Merritt Depo. at 37:19-38:15.) The Court concludes that Mr. Merritt has not put forth sufficient facts to show the phrase "original formula" was a substantial factor in his decision to purchase Coke. Accordingly, the Court GRANTS, IN PART, Coca-Cola's motion.

### D. Mr. Woods' Claims.

Coca-Cola moves for partial summary judgment on Mr. Woods' claims for alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), negligent misrepresentation and breach of express warranty. There are three elements of a claim under the FDUTPA: (1) an unfair practice or a deceptive act; (2) causation; and (3) actual damages. *See*

10

1   *Hennegan Company v. Arriola*, 885 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012) (citing *City First*

2   *Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008)). With respect to the first

3   element, "deception occurs if there is a representation, omission, or practice that is likely to

4   mislead the consumer acting reasonably in the circumstances, to the consumer's detriment," and it

5   "requires a showing of probable, not possible, deception that is likely to cause injury to a

6   reasonable relying consumer." *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th

7   Cir. 2007) (internal quotations and citations omitted). "[A] demonstration of reliance by an

8   individual consumer is not necessary in the context of" the FDUTPA. *Turner Greenberg Assoc's*

9   *v. Pathman*, 885 So. 2d 1004, 1009 (Fla. Dist. Ct. App. 2004); *see also Rosen v. J.M. Auto*, 270

10  F.R.D. 675, 687-88 (S.D. Fla. 2009). Accordingly, the Court DENIES, IN PART, Coca-Cola's

11  motion.

12  In contrast to the FDUTPA claim, Mr. Woods must show he actually relied on the alleged

13  misrepresentations, or omissions, to prevail on his claims for negligent misrepresentation and

14  breach of express warranty. *See Romo v. Amedex Ins. Co.*, 920 So. 2d 643, 650-51 (Fla. Dist. Ct.

15  App. 2006) (negligent misrepresentation); *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250

16  (Fla. Dist. Ct. App. 1984) (breach of express warranty). Mr. Woods testified that he was exposed

17  to the Pemberton claim and testified that, after he noticed it, his purchasing habits did not change

18  until he spoke with his attorneys. (Glatter Decl., Ex. E (Deposition of Thomas C. Woods at 15:12-

19  16:15, 42:21-43:1, 45:15-46:3.) At that point, Mr. Woods stopped purchasing Coke for his

20  personal consumption. (*Id.* at 46:4-9.) Mr. Woods also made clear that "during the summer 2013,

21  I considered [Coke] to be healthier. Based on that labeling, I considered it to be healthier than the

22  alternatives." (*Id.* at 49:7-12, 71:11-22; *see id.* at 65:4-19 ("I had the belief that I was purchasing

23  one thing and I got another"), 71:15-73:2.) The Court concludes that, taking the facts in the light

24  most favorable to Mr. Woods, a reasonable juror could conclude that he relied on the Pemberton

25  claim when making a decision to purchase Coke. Accordingly, the Court DENIES, IN PART,

26  Coca-Cola's motion.

27  Mr. Woods testified that he did not have any concerns with the ingredients list itself or

28  how its contents are displayed. (*Id.* at 41:7-42:14.) Mr. Woods also testified that, when he shops,

11

he "occasionally" looks at the food labels but continues to eat foods that contain artificial flavors, chemicals and preservatives, including foods with phosphoric acid. (*Id.* at 60:7-24, 61:12-16, 71:16-18.) However, Mr. Woods was clear in his deposition that he believed it was deceptive to state on the label that Coke did not contain artificial flavors and preservatives, when it was his understanding that it, in fact, did. Plaintiffs are proceeding on a theory that the ingredients list is deceptive because of a material omission. The Court concludes that Mr. Woods has met his burden overcome Coca-Cola's motion on the ingredients list claim. Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

With respect to the phrase "original formula," Mr. Woods testified that he did not have any concerns about that phrase. (*Id.* at 42:10-14.) The Court concludes that Mr. Woods has not met his burden to show a disputed issue of fact as to whether he relied on the phrase "original formula," for purposes of his claims for negligent misrepresentation and breach of express warranty. Accordingly, the Court GRANTS, IN PART, Coca-Cola's motion.

**E.     Mr. Sowrizol's Claims.**

Coca-Cola moves for partial summary judgment on Mr. Sowizrol's claims for alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (the "IFCA Claim") and negligent misrepresentation. To prevail on an IFCA Claim, a plaintiff must prove "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse v. Bayer*, 235 Ill. 2d 544, 922 N.E.2d 309, 313 (2009). The Illinois Supreme Court has held that "reliance is not an element of statutory consumer fraud." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 675 N.E.2d 584, 593 (1996); *accord Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 576 (7th Cir. 2001). Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

In contrast to the IFCA claim, actual reliance is an element of a claim for negligent misrepresentation. *See Quinn v. McGraw-Hill Companies, INC.*, 168 F.3d 331, 335 (7th Cir. 1999) (citing *Rosenstein v. Standard & Poors Corp.*, 264 Ill. App. 3d 818, 636 N.E.2d 665, 667

1  (1993)).  Mr. Sowizrol testified that he took a hard look at Coke's label after a conversation with
2  his brother at some point in early 2014.  (Glatter Decl., Ex. G (Deposition of Ronald Sowizrol at
3  14:24-15:11, 16:22-17:1, 22:21-23:23, 74:9-12.)  He also testified that after the conversation he
4  "probably" bought some Coke but stopped once he hired his attorney in this case.  (*Id.* at 35:2-22.)
5  Mr. Sowizrol testified that he did not make any purchases of Coke after he saw a reference to "no
6  preservatives" on Coke's label.  He could not, however, remember if he saw the language before
7  or after he made that last purchase.  (*Id.* at 35:23-37:2, 74:9-11.)  The Court concludes that Mr.
8  Sowizrol has presented sufficient evidence to show there are disputed issues of fact as to whether
9  he relied on the Pemberton claim.  Accordingly, the Court DENIES, IN PART, Coca-Cola's
10 motion.
11      As to the ingredients list claim, Mr. Sowizrol testified that "I really don't read labels to be
12 honest with you."  (*Id.* at 50:23-24.)  Mr. Sowizrol also testified that, apart from the Pemberton
13 claim, he did not consider anything else about Coke's label to be inaccurate.  (*Id.* at 23:1-5, 55:5-
14 22.)  However, Mr. Sowizrol also testified that he purchased Coke, in part, because it "held itself
15 out as being a preservative-free product."  (*Id.* at 66:12-17; *see also id.* at 70:13-21, 76:-22-77:18.)
16 In light of the fact that Plaintiffs are proceeding on a theory that the ingredients list was
17 misleading, because it omitted the fact that phosphoric acid was both an artificial flavor and a
18 chemical preservative, the Court concludes that Mr. Sowizrol has met his burden to show that
19 there are disputed facts on the issue of reliance with respect to the ingredients list.  Accordingly,
20 the Court DENIES, IN PART, Coca-Cola's motion.
21      With respect to the phrase "original formula," Mr. Sowizrol testified that he had no
22 concerns about that phrase.  (Sowizrol Depo. at 55:17-21.)  The Court concludes that Mr. Sowizrol
23 has not met his burden to show a disputed issue of fact as to whether he relied on the phrase
24 "original formula," for purposes of his claim for negligent misrepresentation.  Accordingly, the
25 Court GRANTS, IN PART, Coca-Cola's motion.
26 **F.    Ms. Marino's Claims.**
27      Coca-Cola moves for partial summary judgment on Ms. Marino's claims for alleged
28 violations of Massachusetts General Laws Chapter 93A (the "Chapter 93A Claim") and negligent

misrepresentation. In order to prove a Section 93A Claim, a plaintiff must establish that he or she "1) suffered an economic injury 2) caused by 3) an unfair or deceptive act or practice." *In re Celexa and Lexapro Marketing and Sales Practices Litig.*, MDL No. 09-2067-NMG, 2015 WL 3751422, at *8 (D. Mass. June 15, 2015) (citing *Tyler v. Michael's Stores, Inc.*, 464 Mass. 492, 501-02, 984 N.E.2d 737 (2013)). "Actual reliance" is not an element of a Chapter 93A Claim. *In re Pharmaceutical Average Wholesale Price Litig.*, 582 F.3d 156, 185 (1st Cir. 2009) (quoting *International Fid. Ins. Co. v. Wilson*, 387 Mass. 481, 443 N.E.2d 1308, 1314 (1983)); *accord In re M3 Power Razor System Marketing & Sale Practices Litig.*, 270 F.R.D. 45, 60 (D. Mass. 2010) (noting that the protections afforded by Chapter 93A are "arguably more consumer friendly than" California's UCL). Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

In contrast, in order to prove her claim for negligent misrepresentation, Ms. Marino must show she actually and justifiably relied on the alleged misrepresentation. *See DeWolfe v. Hingham Center Ltd.*, 465 Mass. 795, 800, 985 N.E.2d 1187 (2013). During her deposition, Ms. Marino acknowledged that "Coke isn't like your optimal thing to drink, but if I was going to have something and looking for other items to drink other than my usual seltzer water, this would've been a product that I chose because of the fact that it said what was listed on the label," *i.e.* the Pemberton claim. (Glatter Decl., Ex. F, (Deposition of Michelle Marino at 22:1-6; *see also id.* at 26:3-9, 46:9-12).) Ms. Marino also testified that she first noticed the Pemberton claim in 2011 or 2012. (*Id.* at 53:7-20.) She also testified that she chose to purchase Coke over other products based on the Pemberton claim. (*Id.* at 54:5-22, 55:4-19, 56:17-7, 63:18-23, 134:2-6.) The Court concludes that Ms. Marino has met her burden to overcome Coca-Cola's motion for summary judgment as to the Pemberton claim. Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

As to the ingredients list, Ms. Marino testified that between 2010 and 2014, the ingredients list did not factor into her decision about whether to buy Coke. (*Id.* at 40:1-21.) However, she also testified that "I feel that they should write there's a chemical on the bottle. It should be labeled, instead of having the complete opposite." (*Id.* at 46:16-19.) In light of the fact that Plaintiffs are proceeding on a theory that the ingredients list was misleading, because it omitted

14

the fact that phosphoric acid was both an artificial flavor and a chemical preservative, the Court concludes that Ms. Marino has met her burden to show that there are disputed facts on the issue of reliance with respect to the ingredients list. Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

With respect to the phrase "original formula," Ms. Marino testified that she had heard the statement and it did not bother her. (Marino Depo. at 61:15-62:2.) The Court concludes that Ms. Marino has not met her burden to show a disputed issue of fact as to whether she relied on the phrase "original formula," for purposes of her claim for negligent misrepresentation. Accordingly, the Court GRANTS, IN PART, Coca-Cola's motion.

G.  Ms. Lazaroff's Claims.

Coca-Cola moves for partial summary judgment on Ms. Lazaroff's claims for alleged violations of New York General Business Law sections 349 and 350 (the "Section 349 Claim" and the "Section 350 Claim") and her claim for beach of express warranty. In order to prove a violation of either Section 349 or Section 350, a plaintiff must show that "'a defendant has engaged in (1) consumer oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2nd Cir. 2015) (quoting *Koch v. Acker, Merall & Condit Co.*, 18 N.Y.3d 940, 944, 967 N.E.2d 635 (2012)). A claim under Section 349 or Section 350 does not require proof of reliance. *See New World Solutions, Inc. v. NameMedia, Inc.*, -- F. Supp. 3d --, 2015 WL8958390, at *25 & n.26 (S.D.N.Y. Dec. 15, 2015) (citing *Koch*, 18 N.Y.3d at 941-42 )); *Koch*, 18 N.Y.3d at 941-42 ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim."). Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

However, reliance is an element of a claim for breach of express warranty under New York law. *See Friedman v. Medtronic, Inc.*, 42 A.D.2d 185, 190, 345 N.Y.S.2d 637 (1973); *accord DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012). Ms. Lazaroff testified that she began to become more health conscious after having children and chose Coke, because she

15

1  saw "no artificial flavors and no preservatives" on the bottle.  According to Ms. Lazaroff, that
2  statement made her feel that Coke was a healthy product and made her feel comfortable enough to
3  buy it for her child.  She also testified that she first noticed the Pemberton claim in about 2010.
4  (Glatter Decl., Ex. A (Deposition of Yocheved Lazaroff at 13:15-14:9, 14:11-15:6, 15:18-16:8,
5  24:12-23, 29:3-19, 48:16-19, 49:24-50:3, 75:14-18.)

6  Ms. Lazaroff testified that prior to 2014, she only scanned the ingredients list but trusted
7  Coke's label.  (*Id.* at 28:8-11, 29:20-24; *see also id.* at 34:16-35:7, 37:20-38:8 (stating that she
8  scans ingredients lists on food products to look for, *inter alia*, artificial flavors and preservatives,
9  including phosphoric acid).)  As Ms. Lazaroff testified, "I looked through [the ingredients list], but
10 I don't know what everything means.  So it is like you are trusting the label.  So it's not that it is
11 not important."  (*Id.* at 30:20-23.)  She also testified that, in her view, the ingredients list should
12 label what is and is not artificial.  (*Id.* at 126:2-128:12.)  The Court concludes that Ms. Lazaroff
13 has met her burden to overcome Coca-Cola's motion for summary judgment as to the Pemberton
14 claim and the ingredients list.  Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

15 With respect to the phrase "original formula," Ms. Lazaroff testified that she noticed the
16 statement at about the same time she noticed the Pemberton claim and that it influenced her
17 decision to purchase Coke.  (Lazaroff Depo. at 129:21-130:14, 132:12-21.)  The Court concludes
18 that Ms. Lazaroff has met her burden to show a disputed issue of fact as to whether she relied on
19 the phrase "original formula," for purposes of her claim for breach of express warranty.
20 Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

21 **H.    Ms. Dube's Claims.**

22 Finally, Coca-Cola moves for partial summary judgment on Ms. Dube's Section 349 and
23 Section 350 Claims, her claim for alleged violations of the New Jersey Consumer Fraud Act, New
24 Jersey Statutes Annotated sections 56:8-1, *et seq.* (the "New Jersey CFA Claim"), and her claim
25 for breach of express warranty.  In order to prove a New Jersey CFA claim, a plaintiff must show:
26 "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the
27 defendant's unlawful conduct and the plaintiff's ascertainable loss."  *Int'l Union of Operating*
28 *Engineers Local No. 68 Welfare Fund v. Merck*, 192 N.J. 372, 389, 929 A.2d 1076 (2007).  Under

1   the New Jersey CFA, the element of reliance is replaced "with the requirement that plaintiff prove

2   ascertainable loss." *Id.*; *see also Hoffman v. Liquid Health, Inc.*, No. 14-cv-01838 (SRC), 2014

3   WL 2999280, at *8 (D.N.J. July 2, 2014). Because reliance is not an element of a New Jersey

4   CFA claim, the Court DENIES, IN PART, Coca-Cola's motion. As set forth above, Ms. Dube is

5   not required to prove actual reliance to establish her claims under Section 349 or Section 350.

6   Accordingly, the Court DENIES, IN PART, Coca-Cola's motion.

7   Coca-Cola also argues that Ms. Dube is required to establish reliance to prove her breach

8   of express warranty claim under New Jersey law, and it relies on *Smith v. Merial Ltd.*, No. 10-cv-

9   439, 2011 WL 2119100, at *7 (D.N.J. May 26, 2011). In *Smith*, however, the court stated that

10  "[t]o establish a breach of an express warranty … the plaintiff need not prove privity *or traditional*

11  *reliance.* While some states require such elements, New Jersey's basis of the bargain requirement

12  is much broader. Plaintiffs must only show that the alleged express warranties were of a kind

13  which naturally would induce the purchase." *Id.* (emphasis added, internal quotations and

14  citations omitted); *accord Majdipour v. Jaguar Land RoverNorth America, LLC*, No. 2:12-cv-

15  07849 (WHW), 2013 WL 5574626, at *11 (D.N.J. Oct. 9, 2013) (citing *Elias v. Ungar's Food*

16  *Prods., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008)). Accordingly, the Court DENIES, IN PART,

17  Coca-Cola's motion.

18  **CONCLUSION**

19  For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART,

20  Coca-Cola's motion. Pursuant to the Court's minute order following the case management

21  conference, the parties may now begin Phase II fact discovery. The Court modifies that schedule

22  and sets the following specific dates and deadlines:

23  The deadline to complete fact discovery on class certification shall be September 23, 2016.

24  The last day to disclose experts on class certification shall be October 7, 2016.

25  The deadline to disclose rebuttal experts on class certification shall be October 21, 2016.

26  The deadline to complete expert discovery on class certification shall be November 23,

27  2016.

28  The deadline for Plaintiffs to file a motion for class certification shall be December 9,

17

2016.

The original case number in this litigation, the *Engurasoff* case, bears terminal digit "0." Accordingly, Plaintiffs shall notice that motion for an open and available date on this Court's calendar for terminal digit 0, rather than terminal digit 5. This rule applies for all motions filed in this case.

IT IS SO ORDERED.

Dated: May 19, 2016

_____
JEFFREY S. WHITE
United States District Judge