UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: COCA-COLA PRODUCTS MARKETING AND SALES PRACTICES LITIGATION (NO. II)

Case No. 14-md-02555-JSW (MEJ)

**DISCOVERY ORDER**

Re: Dkt. Nos. 134-36

# INTRODUCTION

The parties filed three Joint Discovery Letters. Dkt. Nos. 134-36. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court issues the following order.

# BACKGROUND[1]

This Multi-District Litigation consists of several class actions in which Plaintiffs allege Defendants The Coca-Cola Company, Coca-Cola Refreshments USA, Inc., BCI Coco-Cola Bottling Company of Los Angeles, and Coca-Cola Bottling Company of Sonora, California (collectively, "Defendants"): (1) failed to identify phosphoric acid, a labeled ingredient in Coca-Cola (or "Coke"), as an artificial flavor and a chemical preservative; and (2) issued packages and labels containing allegedly misleading statements and omissions, including: (a) Coke's ingredient list not identifying phosphoric acid as an artificial flavor or chemical preservative; (b) a Coke label statement: "no artificial flavors. no preservatives added. since 1886" (the "Pemberton Claim"[2]);

---

[1] A complete factual background is set forth in the presiding judge's Order re: Motion for Partial Summary Judgment. *See* Summ. J. Order at 1-3, Dkt. No. 116. This background is largely taken from the parties' letters.

[2] The Pemberton Claim is named after John Pemberton, the inventor of Coca-Cola. Plaintiffs allege the Pemberton Claim is part of a "campaign [] designed to mislead [the public] into falsely

1  and (c) a Coke label statement: "original formula" (the "OF Claim").

2  On July 10, 2015, the Court ordered discovery proceed in phases, limiting Phase II to class certification issues.  Case Management Conference Minutes, Dkt. No. 69.  On June 10, 2016, Plaintiffs served upon Coca-Cola Phase II discovery requests comprised of (a) Interrogatories; (b) Requests for Admission; (c) Requests for the Production of Documents and Other Things ("RFPs"); and (d) a Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6).  The parties' disputes relate to this discovery.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  Discovery need not be admissible in evidence to be discoverable.  *Id.*  However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."  Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.  Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts."  *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing 2015 advisory committee's note for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case"); *see also* Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

---

believing that Coca-Cola was not artificially flavored or chemically preserved."  Consolidated Compl. ¶¶ 12, 14, Dkt. No. 79.

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

## DISCUSSION

As an initial matter, the Court notes Defendants repeat the same two arguments in all three discovery letters: (1) Plaintiffs' requests to compel are untimely because they seek compliance after the discovery cut-off date; and (2) Plaintiffs' requests go to merits discovery, not class certification discovery and therefore fall outside the scope of Phase II discovery.

With regard to the first argument, the Court does not find much merit. While the Phase II discovery cut-off date was September 23, 2016, the parties expressly stipulated to extend the deadline to file an application to compel this discovery until October 14, 2016, and the presiding judge entered their stipulation into an Order on September 16, 2016. *See* Stip. at 3, Dkt. No. 130; Order Adopting Stip., Dkt. No. 131; *compare* Civ. L.R. 37-3 (motions to compel should not be filed more than seven days after the discovery cut-off date). Defendants argue Plaintiffs have been on notice of their objections to the discovery since July 2016, that the stipulation to extend the motion to compel deadline was "an accommodation to Plaintiffs' counsel[,]" and that they "expressly reserved [the] right to argue that Plaintiffs' arguments were untimely." Dkt. No. 134 at 3 and 3 n.12. Defendants cite no authority for the proposition that Plaintiffs were required to move to compel Defendants' discovery responses by an earlier deadline. The fact that Defendants "expended significant effort to design and carry out a discovery plan targeted to the categories of documents that it agreed to produce" (FDA Compliance Letter at 4) does not stop Plaintiffs from seeking discovery and filing a discovery letter to compel evidence on the schedule the parties agreed on and the Court ordered. Requiring parties to move to compel earlier than the deadline for doing so might have the unintended consequence of discouraging efforts to negotiate a mutually

agreeable resolution, lest a party be accused of delaying its way into waiving its right to compel further responses.

As to the second argument, the line between merits and class certification discovery is not always bright. California district courts have recognized that "'discovery can certainly be relevant both to class certification issues and to the merits.'" *Yingling v. ebay, Inc.*, 2010 WL 373868, at *4 (N.D. Cal. Jan. 29, 2010) (quoting *Ho v. Ernst & Young, LLP*, 2007 WL 1394007, at *1 (N.D. Cal. May 9, 2007)). This is because discovery going to the merits of a plaintiff's claim also often has "significant bearing on issues such as predominance and commonality under Rule 23." *Lindell v. Synthes USA*, 2013 WL 3146806, at *6 (E.D. Cal. June 18, 2013) ("Discovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation." (quoting *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D. Cal. 1990)). In *Lindell*, the Court noted that as the United States Supreme Court has "require[ed] that putative plaintiffs 'affirmatively demonstrate [] compliance' with Rule 23. . . . Courts must liberally apply discovery rules during a bifurcated class discovery phase to permit plaintiff to meet that burden." *Id.* at *4 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *see also Martinelli v. Johnson & Johnson*, 2016 WL 4055040, at *3 (E.D. Cal. July 28, 2016) (on a motion to compel, acknowledging that "[w]hether the requested evidence will suffice to prevail on the question of class certification is simply not the question. Rather the issue presented is one of discoverability."). Accordingly, the Court considers the parties' merits versus class certification arguments on a dispute-by-dispute basis below.

The Court now turns to the parties' letters.[3]

**A.     Letter at Dkt. No. 134 ("FDA Compliance Letter")**

Plaintiffs move to compel Defendants to produce (1) "all communications" with the U.S. Food and Drug Administration ("FDA") and other governmental entities concerning the lawfulness of Coke's labeling and the classification of phosphoric acid under federal or state laws

---

[3] In reviewing these letters, the Court found Plaintiffs overused footnotes. This practice buries critical arguments, citations, and other meaningful aspects of the parties' disputes and obfuscates the arguments contained in those footnotes.

4

and regulations, and (2) "all documents" concerning whether the disputed aspects of Coke's labeling complied with federal or state laws and regulations. FDA Compliance Ltr. at 1, 3, Dkt. No. 134. Defendants object to Plaintiffs' request, arguing Plaintiffs seek discovery that goes to the merits not class certification. *Id.* at 4.

Plaintiffs argue this information relates to commonality and predominance considerations under Rules 23(a)(2) and 23(b)(3), contending the information "will likely show class wide materiality of the claim and that the claims treatment by the governmental authorities would be common for all class members." *Id.* at 1-2. Defendants respond that "[m]ateriality . . . turns on *consumers'* decision-making" and thus documents about communications with the FDA and internally are not relevant. *Id.* at 4 (emphasis in original).

The Court finds this information is properly discoverable at the class certification discovery phase. If Coke possesses communications with the FDA or other governmental entities warning Coke its representations were misleading, this evidence may be useful common proof to determine what consumers were likely to understand. *See Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *3, 5 (N.D. Cal. Apr. 15, 2016) (finding meaning of message conveyed by defendant's packaging and advertising significant to issue of commonality and predominance); *see also Ivie v. Kraft Foods Glob., Inc.*, 2013 WL 685372, at *12 (N.D. Cal. Feb. 25, 2013) ("The FDA's 2009 industry guidance statement is relevant to the issue of whether these labels could be deceptive or misleading to a reasonable consumer[.]"); *Rojas v. Gen. Mills, Inc.*, 2013 WL 5568389, at *4 (N.D. Cal. Oct. 9, 2013) ("Of course, the FDA's views are 'relevant to the issue of whether these labels could be deceptive or misleading to a reasonable consumer'" (quoting *Ivie*, 2013 WL 685372, at *12)). For example, Plaintiffs seek "[a]ll communications with FDA or other governmental entities regarding the removal of the Pemberton Claim from containers of Coca-Cola[,]" which could reveal whether Defendants had reason to believe the inclusion or exclusion of that claim would affect a reasonable consumer. *Martinelli*, 2016 WL 4055040, at *4 (allowing discovery of documents that "could speak to the effect of the alleged misrepresentation on a reasonable consumer.").

Similarly, nonprivileged documents concerning whether Defendants' advertising and

labeling on their products complied with state and federal laws and regulations could be persuasive evidence supporting commonality and predominance. *See Onstar Contract Litig. v. Gen. Motors Corp.*, 2009 WL 3424196, at *2 (E.D. Mich. Oct. 20, 2009) *denying reconsideration sub nom Morris v. Gen. Motors Corp.*, 2010 WL 956026, at *5-7 (E.D. Mich. Mar. 12, 2010) (internal communications regarding proposed FCC rule change relevant to class certification; such discussions could demonstrate the defendant's beliefs as to the common impact of the rule change and whether defendant believed disclosure was necessary). For instance, Plaintiffs request "[a]ll communications with the FDA or other governmental entities regarding whether phosphoric acid is a preservative" (RFP No. 22, Dkt. No. 134-2), which could reveal evidence that Coke had reason to believe its products were misbranded and should have provided different labeling. That said, RFP Nos. 1(g) and 1(s) are somewhat overbroad, requesting: (g) "All documents relating to whether aspects of Project Pemberton complied with federal or state laws or regulations"; and (s) "All documents relating to whether the Pemberton Claim on containers of Coca-Cola complied with federal or state laws or regulations." *Id.* No. 1. These requests appear to go beyond the allegations in the Complaint, which relate to the alleged violations of specific laws and regulations.

In sum, the Court finds the information sought above discoverable, except for RFP Nos. 1(g) and 1(s). The parties shall meet and confer **by November 4, 2016** and agree on a production responsive to 1(g) and 1(s) that is tailored to the laws and regulations at issue in Plaintiffs' Complaint. Defendants shall produce all requested discovery **by December 2, 2016**.

**B.     Letter at Dkt. No. 135 ("Communications Letter")**

Plaintiffs seek (1) communications with marketing, advertising, or promoting consultants, agencies, experts, or professionals retained by Coca-Cola regarding (a) the Pemberton and OF Claims, (b) the disclosure or non-disclosure of any artificial flavoring's or preservatives' presence in Coke, and (c) consumers' perception of Coke's healthiness; and (2) documents concerning consumer views' of Coke's healthiness and ingredients and the impact of the various claims and omissions at issue on consumers, which would include any internal and external communications and any internal or third-party reports, memoranda, or other documents regarding those topics.

6

Communications Ltr. at 1, Dkt. No. 135.

Again, the dispute comes down to the scope of class certification discovery. According to Defendants, Coca Cola searched its centralized consumer research repository and produced the one study in its possession concerning the impact of the Pemberton Claim on consumers and also produced research concerning consumers' attitudes toward preservatives, artificial flavoring, and Coca-Cola's general healthiness. *Id.* at 4-5. Coca-Cola represents it also produced all documents associated with these studies that were saved in the repository, including, where available, the study design, the contract to conduct the research, and documents outlining the study's objective. *Id.* at 5. Defendants object to producing "all *communications* about the studies already produced[,]" arguing such communications have no relevance to class certification, which they contend turn on whether consumers "hold consistent views and share common understandings of Coke's label claims[,]" not what Defendants' employees said about those claims. *Id.* (emphasis in original). They also object to Plaintiffs' request to produce information about Coke's private internal communications about its marketing strategies and why they removed the Pemberton and OF Claims from the label. *Id.* at 4.

Plaintiffs broadly argue that "[i]f Defendants documented or discussed specific reasons underscoring their labeling decisions and ingredient list disclosures, those materials are relevant to commonality, predominance, typicality, and class-wide materiality[,]" and "[i]f Defendants understood or believed that there would not be differing definitions or perceptions concerning Coke's representation of 'no artificial flavors. no preservatives added', those discovery responses inform commonality, predominance, and typicality." *Id.* at 2. They contend "[t]he same reasoning holds true for Defendants' internal or external communications regarding Project Pemberton and consumers' view of that campaign, Coke's labeling and packaging, and/or Coke's alleged healthiness and ingredients[.]" *Id.* at 2-3.

Both parties rely on *Martinelli v. Johnson & Johnson*, in which the discovery magistrate held that "marketing research and data that the defendants may possess which bears on whether consumer choice of product to purchase is affected by the product claim in question is relevant and discoverable." 2016 WL 4055040, at *4. Defendants agree; indeed, they have produced much of

7

that very information. *See id.* at 4. The question is whether Defendants' internal and external communications about these studies and marketing strategies should be discoverable at this stage.

The Court agrees with Defendants that many of those requests are broad and would impose a burden not "proportional to the needs of the case." Communications Letter at 4 (citing Fed. R. Civ. P. 26). For instance, Plaintiffs' request for "[a]ll communications with marketing, advertising, or promoting consultants, agencies, experts, or professionals retained by Defendants regarding Project Pemberton" (RFP No. 1(d)) goes beyond what could be needed to support class certification; documents responsive to that request could include irrelevant communications like bids between advertising agencies, bills, etc. Similarly, Plaintiffs also request documents such as "[a]ll internal reports, memoranda, studies, surveys, research, or analysis regarding the removal of the Pemberton Claim from containers of Coca-Cola." RFP No. 1(aa). This broad request could also include information completely unrelated to Plaintiffs' claims, such as memoranda about how to manufacture Coke products after removing the Pemberton Claim or a description about how Coke products will look now without the Pemberton Claim—none of which is seemingly relevant to commonality or predominance.

But rather than that information, Plaintiffs appear to seek discovery about how Defendants perceived their own representations, how they intended consumers to perceive those representations, and how they understood customers to perceive those representations. Such inquiries are relevant because Plaintiffs could use such evidence as common proof that Defendants chose to advertise in a certain way to impact its consumers' choice. If Defendants believed their representations would cause consumers to react in a certain way, and developed the representations to achieve that result, that evidence could be probative common proof of whether Defendants expected a reasonable person to rely upon the representations in deciding to purchase the product. *See Martinelli*, 2016 WL 4055040, at *3-4 (rejecting argument that "internal documents and communications regarding what they may have intended to communicate to consumers on the product labels is simply not probative of what a reasonable consumer actually understood" and finding "internal marketing materials" relevant to class certification as "[w]hatever information, marketing data, research and analysis defendants possess that shows

whether consumers favorably respond to sales strategies centered on such a claim is relevant to whether that reasonable person standard is satisfied.").[4] As *Martinelli* indicates, discoverable information includes Defendants' communications describing their analysis and strategies—not only their final "consumer research." *See* Communications Letter at 1-2 n.5-6; *see also Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1940178, at *2 (N.D. Cal. May 14, 2014) (finding as relevant discovery for "information about defendant's marketing and labeling decisions" including its "intent, motive, and knowledge").

The Court once again finds that much of the information Plaintiffs seek could be relevant and is properly discoverable; however, as noted, the Court is concerned that some of the requests could result in retrieval of information Plaintiffs do not need and likely do not want, wasting Defendants' time and resources as well. Accordingly, using the Court's analysis above, the parties shall further meet and confer on the requests in this letter **by November 4, 2016** and agree on a production tailoring and narrowing the production, due by **December 2, 2016**. In doing so, the parties are not limited to only those materials arising out of the class period. *See* Communications Letter at 3 n.14 (indicating Defendant withheld some pre-class certification discovery). Indeed, Pre-class period discovery is often relevant, particularly in misleading advertising cases. *See, e.g.*, *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 627-28 (N.D. Cal. 2013) (permitting pre-class

---

[4] The cases cited by Defendants are unhelpful. In *Harris v. comScore, Inc.*, the discovery judge found that "comScore's internal communications *are less relevant* to that issue than how the software actually impacted the putative class" and ultimately did not order that discovery because "[p]laintiffs have access to the source code, which, in conjunction with the discovery responses mandated in this order, should demonstrate how the software impacted the members of the putative class." 2012 WL 686709, at *7 (N.D. Ill. Mar. 2, 2012) (emphasis added). The court did not find internal communications completely irrelevant but, rather, given the discovery it had otherwise ordered, found the discovery of those communications essentially unproportional to the needs in that case. *See also id.* at *7 n.4 (the court, however, exempted "communications between comScore and its employees" as source code was "not responsive" to that request, thus indicating internal communications could be relevant); *see also* Fed. R. Civ. P. 26(c)(i) (court must limit discovery that can be obtained from some more convenient, less-burdensome source).

As to *Kastroll v. Wynn Resorts, Ltd.*, 2011 WL 4916623, at *5 (D. Nev. Oct. 17, 2011), while the court there held the "internal communications . . . [did] not pertain to the class certification or in any way aid the plaintiff in determining the members of the class," it did not explain why it reached that conclusion. Context of course matters to a relevance determination; there is no indication *Kastroll* was a false advertising case such as this one or that these cases share similar elements of their claims.

9

period discovery regarding defendant's marketing and labeling decisions, but finding "information such as sales numbers, advertising expenditures, profits, costs, or other information not tied to the marketing decisions is not relevant beyond the limitations period"); *Ang*, 2014 WL 1940178, at *2 (agreeing with *Ogden* that information about defendant's pre-class period marketing and labeling decisions in food misbranding case would relevant); *see also In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *5 (C.D. Cal. March 12, 2012) ("It is also beyond dispute that discovery is not limited to the class period."). Accordingly, as the parties tailor Defendants' required production, they are not limited to only the class period.

Finally, Defendants' production need not include discovery that is not in their possession, custody, or control. *See* Fed. R. Civ. P. 34(a)(1). While Plaintiffs argue Defendants did not request responsive information from Coke's numerous franchise bottlers (Communications Letter at 3 n.14), it is not clear who those franchise bottlers are, or whether Coke exercises possession, custody, or control over the information held by those entities (*id.* at 5 (indicating these nonparties are not subsidiaries of Coke)). Nor is it clear those franchise bottlers are likely to have useful information at this stage. While Defendants are of course required to comply with their Rule 34 obligations, Plaintiffs have not established any basis at this stage to require Defendants to seek and produce information from the bottler franchisees. This dispute is thus premature.

**C.    Letter at Dkt. No. 136 ("Marketing and Sales Data Letter")**

The third letter involves a dispute over Plaintiffs' discovery requests for internal reports, memoranda, studies, surveys, research and analysis of the claims and the effects of the labels and marketing on sales, revenues, profits, market share and prices. Marketing & Sales Data Ltr. at 1-2, Dkt. No. 136. Plaintiffs concede Defendants agreed to produce certain sales, revenues, and profits data in response to several of their requests but note Defendants refused to produce any data regarding market share. *Id.* at 2 n.5. They also explain that Defendants have refused to produce anything but "non-privileged final versions of any study or analysis" or "non-privileged consumer research undertaken." *Id.* at 2. Finally, Plaintiffs challenge Defendants' representation that they undertook a reasonable search for responsive documents. *Id.* at 3. Plaintiffs again note Defendants admit that they have not searched for or collected documents from Coca-Cola's

10

"numerous franchisee bottlers, asserting that they have no obligation to do so." *Id.*

First, as to market share data, Coke contends that "market share is not relevant to any theory of damages under which Plaintiffs could recover." *Id.* at 5. They assert that "[t]his is not a case in which a competitor alleges that Coca-Cola's conduct caused it to lose market share[,]" but rather it "is a putative *consumer* class action in which Plaintiffs allege that, if Coke had been labeled differently, they would not have bought the product or would have paid less." *Id.* They contend market share is not relevant to that determination. *Id.* Plaintiffs respond that "market share is relevant to the benefit Defendants may have received from the labeling practices, with either the maintenance, relative maintenance or growth of market share via the labeling practices improperly benefitting Defendants." *Id.* at 2. Additionally, they contend "market share is an additional data point that can be juxtaposed with other information to assess, objectively, the class-wide materiality of the label statements." *Id.*

Plaintiffs have not articulated how this information is relevant to any issue at class certification. Nor have they provided any legal authority supporting their position that this information should be discoverable. Assuming arguendo Defendants' market share changed as a result of the labeling at issue, Plaintiffs do not show how the change would relate to the commonality or predominance analysis. Given Defendants' challenge to the market share inquiry and Plaintiffs' inability to explain why this evidence is relevant to their claims or to class certification, the Court finds that any potential relevance the information might have would not justify its production under proportionality principles at this time. The Court accordingly does not find it discoverable during this phase of discovery.[5]

Second, as to the effects of the disputed labeling claims on Coke's sales, revenues, profits, and prices, Defendants argue that they have already searched for "studies and analyses that examined those issues" and could find none. *Id.* at 4. Plaintiffs contend Coke in fact refused to produce anything but "non-privileged final versions of any study or analysis" or "non-privileged

---

[5] Potentially, Plaintiffs could be seeking this information to help them assess damages, but in that case, especially given the other information available to Plaintiffs, market share does not strike the Court as particularly useful to that analysis at the class certification stage.

11

consumer research undertaken." *Id.* at 2.  They seek Coke's internal communications that discuss the impact of the various challenged claims and omissions on Coke sales, revenues, profits, and prices.  *Id.*  Finally, they note that Defendants' refusal to fully respond to these discovery requests improperly inhibits Plaintiffs' ability to obtain [] evidence to calculate the form of monetary relief pertinent to [Rule] 23(b)(3) class certification."  *Id.* at 3.

Having reviewed Plaintiffs' requests, with the exception of the market share data, the Court generally finds this information discoverable at this stage.  *See Brown v. Hain Celestial Grp., Inc.*, 2013 WL 5800566, at *5 (N.D. Cal. Oct. 28, 2013) (finding pricing information relevant in false advertising case and reiterating findings made in prior Order, *Brown v. Hain Celestial Grp., Inc.*, 2012 WL 3283289, at *2 (N.D. Cal. Aug. 10, 2012)); *Lanovaz v. Twinings N. Am., Inc.*, 2015 WL 3627015, at *5 (N.D. Cal. June 10, 2015) ("damages plaintiff now seeks—profits from the mislabeling—are damages available under the consumer protection statutes"); *see also Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *10 (N.D. Cal. July 15, 2016) (at class certification, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability" (quoting *Leyva v. Medline Indus.*, Inc., 716 F.3d 510, 514 (9th Cir. 2013)); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2410 (2016) (while "differences in damage calculations do not defeat class certification" acknowledging that a model for determining class-wide damages must measure damages resulting from the class's asserted theory of injury).  The effects of the disputed labeling claims on sales, revenues, profits, and pricing information is relevant to the class certification damages inquiry.

Accordingly, Defendants' non-final studies, analyses, and/or communications about the effects of the disputed labeling claims on their sales, revenues, profits, and prices are generally discoverable, although realistically not all such non-final materials will be relevant; while some non-final materials may contain important information about the effects of the disputed labeling claims, others may not.  Thus again, the Court orders the parties to meet and confer to exclude any irrelevant and unhelpful materials and lessen Defendants' burden.  Defendants' responsive

production is due **by December 2, 2016**.[6]

## CONCLUSION

Based on the foregoing analysis, the Court thus **GRANTS IN PART** and **DENIES IN PART** the parties' discovery requests. The parties shall comply with the specific requirements outlined above with regard to each discovery letter; all meet and confer sessions must take place **by November 4, 2016**, and all discovery must be produced **by December 2, 2016** as indicated above. While the Court does not require the parties to meet and confer in person, they shall at minimum meet and confer by video telephonic or web-based means.

Finally, during their meet and confer, the parties should keep in mind the following two Federal Rules of Civil Procedure: (1) an important factor in weighing discovery requests is "the parties' relative access to relevant information" (Fed. R. Civ. P. 26(b)(1)), and (2) the parties must construe the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding" (Fed. R. Civ. P. 1). It is incumbent on Defendants, the parties from whom discovery is requested, to work with Plaintiffs to narrow the information sought, which in turn will reduce the burden of production for Defendants.

**IT IS SO ORDERED.**

Dated: October 26, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

---

[6] Plaintiffs again raise the issue of obtaining discovery from the franchisee bottlers, but they provide no information about the bottlers' role in relationship with Defendants or why they believe information from those entities would be relevant to their claims. Defendants, on the other hand, expressly state that the bottlers' are "independent entities" from Coca Cola, rather than subsidiaries, and indicate there is no reason to believe they have information relevant to these requests that Defendants do not. Marketing & Sales Data Ltr. at 4.