Keith M. Fleischman (admitted *pro hac vice*)
Joshua D. Glatter (admitted *pro hac vice*)
June Park (admitted *pro hac vice*)
FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax: (917) 591-5245
keith@fleischmanlawfirm.com
jglatter@fleischmanlawfirm.com
jpark@Ffleischmalawfirm.com


John W. ("Don") Barrett (admitted *pro hac vice*)
Richard Barrett (admitted *pro hac vice*)
BARRETT LAW GROUP, P.A.
P.O. Box 927
Lexington, MS 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
Dbarrett@barrettlawgroup.com
rrb@rrblawfirm.net

*Lead Counsel for Plaintiffs*

Redacted Motion to Certify Classes

Pages Redacted: 4-5, 12, 19-21, 23, 25-26

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE COCA-COLA PRODUCTS MARKETING AND SALES PRACTICES LITIGATION (No. II)<br><br>This filing relates to all actions | Case No. 4:14-md-02555-JSW<br><br>**MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL WITH SUPPORTING MEMORANDUM.**<br><br>Hearing Date: August 18, 2017<br>Time: 9:00 a.m.<br>Place: Courtroom 5, 2nd Floor<br>Judge: Hon. Jeffrey S. White |

### NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 18, 2017 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5, 2nd Floor of the above-entitled Court, located in Oakland, California, Plaintiffs will, and hereby do, move for an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying this action as a class action, appointing each of them as class representatives, and appointing their counsel as class counsel.

Specifically, Plaintiffs move this Court for the following:

A.  To certify the following class within each of the States of California, Illinois, New York, New Jersey, Massachusetts and Florida:   All persons who purchased Coca-Cola's Coke product that: (1) lists phosphoric acid on the ingredients list but does not state that the product contains artificial flavoring and/or chemical preservatives; (2) includes the label statement "no artificial flavors. no preservatives added. since 1886."; and/or (3) includes the label statement "original formula".

The following persons are expressly excluded from the classes:

    1.    Defendants and its subsidiaries and affiliates;

    2.    all persons who make a timely election to be excluded from the proposed Class;

    3.    governmental entities, and

    4.    the Court to which the cases is assigned and its staff.

B.    To appoint Plaintiffs George Engurasoff, Joshua Ogden, Paul Merritt, Thomas Woods, Michelle Marino, Ronald Sowizrol, Yocheved Lazaroff, and Rachel Dube as class representatives;

C.    To appoint the firms of Barrett Law Group, P.A. and Fleischman Law Firm, PLLC and as class counsel for all MDL purposes; and Pratt and Associates as local class counsel for all MDL purposes.

D.    To order the parties to meet and confer and present to this Court, within thirty (30) days of an order granting certification, proposed notice to the certified class.

1

2       This motion is based upon this Notice of Motion, Motion and Memorandum of Points and

3 Authorities, the accompanying Declarations of Don Barrett, Keith Fleischman, Pierce Gore, and

4 Richard Barrett (Attached at Ex. R) as well as the pleadings and papers on file in this action.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iv

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ ix

INTRODUCTION ...................................................................................................................... 1

FACTS COMMON TO THE CLASS ........................................................................................ 3

ARGUMENT ............................................................................................................................. 5

     I.     Legal Standards for Class Certification .................................................. 5

     II.    The Proposed Class Meets All Requirements of Rule 23(a).................................. 6

          A.     The Proposed Classes Are Sufficiently Numerous ...................................... 6

          B.     This Litigation Concerns Common Questions of Law and Fact.................. 7

          C.     Plaintiffs' Claims Are Typical of Class Members' Claims. ....................... 9

          D.     The Proposed Class Representatives Will Fairly and Adequately Protect Class Interests .......................................................................................... 10

               1.    The Representative Plaintiffs Have No Conflicts of Interest With Other Class Members ................................................................. 10

               2.    The Representative Plaintiffs Will Vigorously Prosecute This Action 10

               3.    Plaintiffs' Counsel Will Continue to Vigorously Represent the Class 11

     III.   This Case Satisfies Rule 23(b)(2)'s Requirements .................................................. 11

          E.     Reliance ................................................................................................ 15

          F.     Materiality ............................................................................................ 18

     IV.   Coca-Cola's Expert Hal Poret Offers Unreliable Opinions That Do Not Defeat Class Certification.......................................................................................................... 21

CONCLUSION ......................................................................................................................... 28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Ackerman v. Coca-Cola Co.*,
4
  No. cv-09-0395-JC-RML, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................ 19

5
*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ...................................................................................................... 15

6
*American Foot Wear Corp. v. General Footwear Co.*,
7
  609 F.2d 655 (2d Cir. 1979) ....................................................................................... 25

8
*Anderson v. Seaword Parks and Entertainment, Inc.*,
  No. 15-cv-02172-JSW, 2016 WL 4076097 (Aug. 1, 2016) ......................................... 14

9
*Armstrong v. Davis*,
10
  275 F.3d 849 (9th Cir. 2001) ...................................................................................... 10

11
*Aspinall v. Philip Morris Cos.*,
  20 Mass. L. Rep. 303 (2005) ...................................................................................... 20

12
*Ballard v. Equifax Check Servs., Inc.*,
13
  186 F.R.D. 589 (E.D. Cal. 1999) ............................................................................ 6, 16

14
*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...................................................................................... 6

15
*Bruton v. Gerber Prods. Co.*,
16
  No. 15-15174, 2017 WL 1396221 (9th Cir. Apr. 19, 2017)........................................ 17

17
*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999 .................................................................................................. 9

18
*Chavez v. Blue Sky Natural Beverage Co.*,
19
  268 F.R.D. 365 (N.D. Cal. 2010) ................................................................................. 9

20
*Click Billiards, Inc. v. Sixhooters Inc.*,
  251 F.3d 1252 (9th Cir. 2001). ................................................................................... 25

21
*Coe v. Gen. Mills, Inc.*,
22
  No. 15-cv-05112-THE, 2017 WL 476407 (N.D. Cal. Feb. 6, 2017 ........................... 14

23
*Commonwealth v. AmCan Enters.*,
  712 N.E. 2d 1205 (Mass. App. Ct. 1999) .................................................................. 21

24
*Cox v. Sears Roebuck & Co.*,
25
  138 N.J. 2 (1994) ....................................................................................................... 21

26
*Duncavage v. Allen*,
  147 Ill. App. 3d 88 (Ill. 1st Dist. 1986) ..................................................................... 21

27
*Duran v. Hampton Creek*,
28
  No. 3:15-cv-05497-LB,  2016 WL 1191685 (N.D. Cal. Mar. 28, 2016).................... 13

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .......................................................................................................... 6

*Farmers Ins. Exch. v. Super. Ct.*,
   2 Cal. 4th 377 (1992) ...................................................................................................... 16

*Forcellati v Hylands, Inc.*,
   CV 12-1983-GHK (MRWx), 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ...................... 17, 20

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ........................................................................................ 25

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
   528 U. S. 167 (2000)......................................................................................................... 15

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ........................................................................................................ 26

*General Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)..................................................................................................... 10, 11

*Gennari v. Weichert Co. Realtors*,
   288 N.J. Super. 504 (N.J. App. Div. 1996) ..................................................................... 21

*Greenwood v. Compucredit Corp.*,
   No. C 08-04878 CW, 2010 WL 291842 (N.D. Cal. Jan. 19, 2010) ................................. 17

*Haley v. Medtronic, Inc.*,
   169 F.R.D. 643 (C.D. Cal. 1996) ...................................................................................... 6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................. 7, 9, 13

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ....................................................................................... 9, 11

*Haynes v. Planet Automall, Inc.*,
   276 F.R.D. 65 (E.D.N.Y. 2011) ...................................................................................... 20

*Henderson v. Gruma Corp.*,
   CV 10-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ................... 13

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ........................................................................................ 21

*In re Agent Orange Prod. Liab. Litig.*,
   611 F. Supp. 1267 (E.D.N.Y. 1985) ............................................................................... 27

*In re Coca-Cola Prods. Marketing & Sales Prac. Litig. (II)*,
   No. 14-md-02555-JSW, 2016 WL 2930964 (N.D. Cal. May 19, 2016) ............................ 3

*In re ConAgra Foods*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015 ........................................................................ passim

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006 ............................. 9, 25

*In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word
   Indices*,
   715 F.Supp.2d 1265 (S.D. Fla. 2010) ........................................................................ 20

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..................................................................... 13, 17, 19

*In re: Autozone, Inc.*,
   No.: 3:10-md-02159-CRB, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016) ............................. 25

*Jones v. ConAgra Foods, Inc.*,
   No. C 12-01633 CRB, 2014 WL  2702726 (N.D. Cal. June 13, 2014) .................................... 13

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982) ...................................................................... 7, 10

*Kasky v. Nike Inc.*,
   27 Cal. 4th 939 (2002) .......................................................................................... 9

*Keilholtz v. Lennox Hearth Products Inc.*,
   268 F.R.D. 330 (N.D. Cal. 2010) ...................................................................... 17

*Koehler v. Litehouse, Inc.*,
   No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ........................................ 13

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
   735 F.3d 735 (7th Cir. 2013) ........................................................................ 26

*Kwikset Corp. v. The Superior Court of Orange County*,
   246 P.3d 877 (Cal. 2011) ....................................................................... 2, 20, 21

*Leardi v. Brown*,
   394 Mass. 151 (1985) ............................................................................. 20, 21

*Lily v. Jamba Juice Co.*,
   No. 13-cv-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015).................................... 13

*Lingar v. Live-In Companions, Inc.*,
   300 N.J. Super. 22 (N.J. App. Div. 1997)................................................................. 22

*Littledove v. JBC & Assocs.*,
   NO. CIV. S-00-0586 WBS GGH, 2001 WL 42199 (E.D. Cal. Jan. 10, 2001) .......................... 6

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ....................................................................... 16

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004)....................................................................... 11

*Mollicone v. Universal Handicraft, Inc.*,
   No. 2:16-cv-07322-CAS(MRWx) 2017 WL 440257 (C.D. Cal. Jan. 30, 2017)...................... 13

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ........................................................................ 5

*Moore v. Hughes Helicopters, Inc.*,
   708 F.2d 475 (9th Cir. 1983) ........................................................................ 6

*Office of Att. Gen. v. Wyndham Int'l, Inc.*,
   869 So.2d 592 (Fla. App. 2004) ................................................................. 18

*Ohayon v. Hertz Corp.*,
   No. 5:11-cv-01662 EJD, 2012 WL 4936058 (N.D. Cal. Oct. 16, 2012) .................................... 7

*Ortega v. Natural Balance*,
   No. CV 13-5942, 2014 WL 2782329 (C.D. Cal., June 19, 2014) ............................................ 19

*Procter & Gamble Pharm., Inc. v. Hoffmann-LaRoche Inc.*,
   06 Civ. 0034 (PAC), 2006 WL 2588002 (S.D.N.Y. Sept. 6, 2006) ...................................... 26

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)................................................................... 8, 17

*Schwarm v. Craighead*,
   233 F.R.D. 655 (E.D. Cal. 2006) ................................................................... 6

*Scott Fetzer Co. v. House of Vacuums Inc.*,
   381 F.3d 477 (5th Cir. 2004) ..................................................................... 25

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)........................................................................... 5

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................... 7

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) .................................................................... 17

*Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010 ..................................................................... 17

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   14-CV-3826 (MKB), 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ...................................... 22

*U.S. v. W. T. Grant Co.*,
   345 U.S. 629 (1953)........................................................................... 12

*Varacello v. Mass. Mut. Life Ins. Co.*,
   752 A.2d 807 (N.J. Sup. 2000) .................................................................. 19

*Vasquez v. Superior Court*,
   484 P.2d 964 (Cal. 1971 ....................................................................... 16

*Ventura v. New York City Health & Hosps. Corp.*,
   125 F.R.D. 595 (S.D.N.Y. 1989) .................................................................. 7

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)......................................................................... 8, 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010................................................................... 10

*Zakaria v. Gerber Products Co.,*
    No. LA CV15-00200 JAK (Ex), 2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) ...................... 16

*Zeisel v. Diamond Foods, Inc.,*
    No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. 2011)......................................................... 7

**Other Authorities**

3 Alba Conte & Newberg, Newberg on Class Actions §7.20 (4th ed. 2002) ................................. 6

Rest. 2d Torts, Section 538, subd. (2)(b) ................................................................................... 20

**Rules**

Fed. R. Civ. P. 23(a).............................................................................................................. 6, 7

Fed. R. Civ. P. 23(g) ............................................................................................................... 11

Fed. R. Evid. 702 .................................................................................................................... 25

**Regulations**

21 C.F.R. 1.21 ........................................................................................................................ 21

## **STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the proposed classes should be certified under Rule 23(b)(2)?

2. Whether plaintiffs should be appointed as representatives for the proposed classes?

3. Whether plaintiffs' counsel should be appointed as counsel for the proposed classes?

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs George Engurasoff, Joshua Ogden, Paul Merritt, Thomas Woods, Michelle Marino, Ronald Sowizrol, Yocheved Lazaroff, and Rachel Dube (collectively "Plaintiffs") respectfully submit this memorandum in support of their motion to certify classes in this multi-district litigation pursuant to Fed. R. Civ. P. 23(b)(2), for their appointment as Class representatives, and appointing Plaintiffs' counsel as class counsel. This lawsuit is deal for Rule 23(b)(2) class certification.

To appeal to consumers with respect to its flagship product Coke,[1] Defendant The Coca-Cola Company[2] engaged in a comprehensive marketing campaign, known as the "Pemberton Campaign" after Coke's inventor, John Pemberton. The Pemberton Campaign was designed to convince consumers that Coke was natural and healthy, and contained neither artificial flavors or preservatives.  That campaign included several components that violated federal and state labeling and consumer protection laws. Specially, Coca-Cola: (1) affirmatively misrepresented on certain Coke products that the product had "**no artificial flavors. no preservatives added. since 1886.**" (the "Pemberton Claim")[3]; (2) failed to disclose on Coke's ingredient list (the "Ingredient List Claim" claim) that phosphoric acid is used in Coke as an artificial flavoring and a chemical preservative[4]; and (3) for certain Coke products labeling and packages, stated that Coke was made from the "Original Formula," thereby reinforcing Defendants' misrepresentation that Coke never

---

[1]    "Coke" means the specific soft drink that is commonly sold by Coca-Cola in red cans or bottles containing red labels, and that is sometimes referred to by Coca-Cola as the "original formula." "Coke" is not meant to include any distinct soft drinks, such as Diet Coke, Cherry Coke, Coke Zero or Caffeine Free Coca-Cola, which may have similar names.
[2]    All Defendants in these cases are referred to herein as "Coca-Cola" or "Defendants"
[3]    *See* Consolidated Amended Class Action Complaint ("ACC", ECF No. 79) at ¶¶ 14-15, 25; Sowizrol First Amended Complaint ("Sowizrol FAC"),  ¶¶ 14-15, 48-49; Marino Amended Complaint ("Marino FAC") at ¶¶14-15, 25 54-56; Lazaroff Amended Complaint ("Lazaroff FAC"), ¶¶14-15, 52-54.
[4]    ACC at ¶¶15, 62-107 and 111-113; Marino AC, ¶ 56-108; Sowizrol FAC Paragraphs 51-99, 103-105; Lazaroff FAC Paragraphs 54-1-3, 107-109).

contained artificial flavorings or chemical preservatives. [5]

To quote the California Supreme Court, "[l]abels matter." *Kwikset Corp. v. The Superior Court of Orange County*, 246 P.3d 877, 888 (Cal. 2011). Where a company omits or misrepresents material facts, *e.g.*, whether Coke contains artificial ingredients or preservatives, consumers cannot gauge the company's honesty, and are misled and injured when they purchase Coke. Coca-Cola systematically and uniformly misbranded Coke. Defendants never disclosed phosphoric acid's role in Coke. It included the Pemberton Claim and Original Formula claim to all the Classes members, and these label statements were material to those consumers as well as Coca-Cola. Similarly, Coca-Cola's listing phosphoric acid on Coke's Ingredient List, yet not disclosing that Coke contained artificial flavoring and preservatives, was and remains a material omission. Further, Coca-Cola's internal consumer studies and analysis of purchasing behavior, discussed *infra*, confirms that Defendant knew this information was material to consumers and Coca-Cola's business practices. Both the Plaintiffs and Class members were injured as a result of Coca-Cola's conduct, and they face the risk of future injury in an identical manner if Coca-Cola is not compelled to accurately label its product, and provide all material information.

In sum, this lawsuit exemplifies why Rule 23(b)(2) exists; Plaintiffs and the Class seek declaratory relief that Defendant's labeling practices are illegal and deceitful, and an injunction barring Coca-Cola from continuing to engage in such practices. Plaintiffs and their counsel have diligently prosecuted this action and will adequately represent all Class members' interests. Coca-Cola cannot present any valid arguments in opposition. It has offered a statistician's putative expert report replete with material methodological flaws that, minimally, pose no barrier to certification Accordingly Plaintiffs should be appointed as class representatives, their counsel should be appointed as Class counsel for this Multi-District Litigation, and this lawsuit should proceed to its merits phase.

---

[5]   *See, e.g.*, ACC at ¶16; Marino FAC, ¶¶16, 55, 135; Sowizrol FAC at ¶¶16, 49, 123; Lazaroff FAC, ¶¶16, 53, 127).

1

**FACTS COMMON TO THE CLASS**

2

The proposed classes constitute:

3

> [a]ll persons who purchased Coca-Cola's Coke product within the States of
> California, Illinois, New York, New Jersey, Massachusetts and Florida that:
> (1) lists phosphoric acid on the ingredients list but does not state that the
> product contains artificial flavoring and chemical preservatives; (2)
> includes the label statement "no artificial flavors. no preservatives added.
> since 1886."; and/or (3) includes the label statement "original formula".[6]

4

5

6

At Defendants' request the Court adopted Coca-Cola's trifurcated discovery in this action.

7

Plaintiffs served requests for admissions regarding class issues upon Coca-Cola.  In response,

8

Defendants have admitted or stated that they will not contest, *inter alia*, the following common

9

class issues:

10

> 1.     In each of the five states at issue, Defendants sold Coke products to more than 1000
> persons in each state that contained the Pemberton Claim, the Ingredient List claim, and/or
> the Original Formula claim. *See* Ex. A, Def. Resp. to Pls.' First Set of Requests for
> Admissions (RFA), Nos. 1-8.

11

12

13

> 2.     All subject Coke products sold during the Class Period contained phosphoric acid,
> and that Defendant will not oppose class certification on the basis that the phosphoric acid
> used was specified identically. *Id.*, RFA Responses Nos. 16-18, 21, 32.

14

15

> 3.     That the purposed for the Pemberton claim to tell all purchasers that it had no
> artificial flavors and no preservatives whatsoever did not change throughout the class
> period. See, Ex. B, Def. Supp. Resp. to Plaintiffs First RFAs, Supp. Resp. No. 46.

16

17

Coca-Cola has the world's largest beverage distribution system. More than 1.8 million

18

servings of its products are consumed daily. ACC, ¶42.  At all relevant times Coke contained

19

20

phosphoric acid. Phosphoric acid is not derived from any of those items listed in 21 C.F.R. §101.22

---

21

[6]     With respect to the "Original Formula" claim in its May 16, 2016 Order granting in part
and denying in part Coca-Cola's motion for partial summary judgment, reported as *In re Coca-Cola
Prods. Marketing & Sales Prac. Litig. (II)*, No. 14-md-02555-JSW, 2016 WL 2930964 (N.D. Cal.
May 19, 2016) (the "May 19 Order") concerning whether the named Plaintiffs had relied on the
identified misstatements and omissions, the Court granted Defendants' motion with respect to the
Original Formula claim for all named Plaintiffs save Ms. Lazaroff and Ms. Dube.  However, the
Court explained that its ruling only applied with respect to a theory that the "original formula"
phrase "…standing alone, supports these claims…". May 19 Order at *5. The Court further stated
that it expressed "…no opinion on whether the phrase "original formula" would render either the
Pemberton claim or the ingredients list claim deceptive or misleading and, thus, it shall not preclude
any Plaintiff from raising this argument as the litigation proceeds."  *Id.* at n.11. The Original
Formula claim reinforced both the Pemberton Claim and the Ingredient List claim, and therefore
appropriately remains within the Classes' definition.

22

23

24

25

26

27

28

1   (a)(1). It is neither a natural flavor as defined by §101.22 (a)(3), nor is it a common salt, sugar,

2   vinegar, spice, or oil extracted from spices[.] (ACC, ¶ 96).  Phosphoric acid, rather, is a chemical

3   preservative as defined in §101.22 (a)(5), and Coca-Cola used it in this fashion. Coca-Cola has

4   detailed on its website that phosphoric acid has a preservative effect, and helps to provide flavoring

5   including a tart taste that helps to balance the sweetness of Coke (*Id.*, ¶¶98 - 99).

6          Plaintiffs allege that through the Ingredients List claim, Pemberton Claim, and Original

7   Formula, Coca-Cola deceitfully and/or unlawfully concealed that, as used in Coke, phosphoric acid

8   is an artificial flavor and a chemical preservative. (Id., ¶2).  Coke's Ingredient List did not and still

9   does not disclose phosphoric acid, as an artificial flavor and chemical preservative.  The Pemberton

10  Claim prominently - falsely - touted that Coke contains "**No artificial flavors. No preservatives**

11  **added. Since 1886**."  The Original Formula Claim reinforced these material representations and

12  omissions, given that it suggested that Coke maintained John Pemberton's "original" 1886 formula

13  purportedly free of artificial flavors and preservatives.

14          This triad of false statements and material omissions were material to Coca-Cola's

15  strategy of advertising Coke as free from unhealthy additives. Internal studies commissioned by

16  Coca-Cola,



███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ Unsurprisingly, the named Plaintiffs relied on these label claims just as Coca-Cola intended, as documented in the Court's May 19 Order.  That Order the Court rejected Coca-Cola's request to dismiss the Plaintiffs' Ingredient List claim and Pemberton Claim, concluding that each named Plaintiff had submitted sufficient evidence demonstrating their reliance, to the extent such reliance was even necessary. *See* May 19 Order *passim*.

## **ARGUMENT**

### I.  **Legal Standards for Class Certification**

District courts possess direction to certify classes under Rule 23. *See Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003).  Under Rule 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) and it also must fit into one of the three categories described in subdivision (b)."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 394 (2010).   Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The Ninth Circuit interprets Rule 23 (a) based on a "plain meaning" toward applying the "purpose and context of the statute." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125-26 (9th Cir. 2017) (holding that courts are not free to "amend a rule outside the process Congress ordered"). "Administrative feasibility" is not a Rule 23 (a) requirement as a prerequisite to class certification, and the Ninth Circuit has, in accordance with nearly all other Circuits, rejected any "ascertainability requirement." *Briseno*, 844 F.3d at 1125, n.4, and 1133.

"Class action certifications to enforce compliance with consumer protection laws are

desirable and should be encouraged.' *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999).  Rule 23(b)(2) injunctive classes have been recognized as effective tools "to enforce compliance with consumer protection" [and] are 'desirable and should be encouraged.'" *Littledove v. JBC & Assocs.*, NO. CIV. S-00-0586 WBS GGH, 2001 WL 42199, at *15-17 (E.D. Cal. Jan. 10, 2001) (quoting *Ballard*, 186 F.R.D. at 600); *see also, Schwarm v. Craighead*, 233 F.R.D. 655, 663 (E.D. Cal. 2006) (citing both *Ballard* and *Littledove* in granting class certification under Rule 23(b)(2)).

Although the plaintiff bears the burden of satisfying the elements of Rule 23 (*Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996)), Rule 23 "should be liberally construed." 3 Alba Conte & Newberg, Newberg on Class Actions §7.20 (4th ed. 2002).  "[I]t is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)). The Supreme Court recently affirmed this position, stating:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) (internal quotes and citations omitted).

## II.     The Proposed Class Meets All Requirements of Rule 23(a)

### A.     The Proposed Classes Are Sufficiently Numerous

Rule 23(a)(1) requires that the classes be so numerous that joinder of all class members is "impracticable." "Impracticability" is not impossibility; only an apparent difficulty or inconvenience from joining all members of the class will prohibit certification. *Ohayon v. Hertz Corp.*, No. 5:11-cv-01662 EJD, 2012 WL 4936058, at *2 (N.D. Cal. Oct. 16, 2012); *see also Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *7 (N.D. Cal. 2011) (inferring "there are thousands of potential class members" from number of labels at issue). Defendants' document production and their RFA responses (cited above) establish that the Classes here number

in at least the thousands, and more likely the millions. Numerosity is satisfied.

### B.    This Litigation Concerns Common Questions of Law and Fact

Like all Rule 23(a)'s requirements, Rule 23(a)(2)'s  commonality requirement is construed permissively. *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Commonality requires "questions of law or fact common to the class." *Id.* However, not all questions of fact and law need be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998). The commonality requirement is satisfied by demonstrating the existence of some common legal and factual issues. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir. 1982); *see also Ventura v. New York City Health & Hosps. Corp.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989) ("Rule 23(a)(2) requires only that the class movant show that a common question of law or fact exists; the movant need not show, at this stage, that the common question overwhelms the individual questions of law or fact which may be present within the class").

Here, a common core of immutable facts binds each of the Classes.  Class members purchased Coke products with labels featuring the same misleading and misbranded aspect(s) of the labels.  Plaintiffs allege and Defendants admit that each member of the putative class was exposed to the same label statements of the ingredient list claim, Pemberton Claim and Original Formula claim.[7]  These claims pose the common question being "whether Coca-Cola's ingredient

---

[7]      Any argument by Coca-Cola that during discrete periods within the Class Period, the Pemberton Claim or Original Formula claim was not on Coke's label, for example during certain promotional tie-ins (*see* Ex. E Defs' Resp. to Pls. Phase II Interog, No. 3), should be rejected.  As noted above, in *Briseno*, the Ninth Circuit rejected ascertainability or administrative feasibility requirements. Moreover, the fact that certain label claims may have been briefly removed from Coke and thereafter returned to Coke containers and packaging when a limited promotional campaign ended does not change the fact that the Pemberton and Original Formula Claims were on the label for the Class Period's overwhelming majority. Finally, and most significantly, at *no* time did the Ingredient List *ever* disclose that phosphoric acid was an artificial flavor or preservative, and that illegal omission persists *today*.

1  list claim, Pemberton claim and/or original formula claim were false, unfair, deceptive, misleading
2  and/or failed to reveal material facts."

3      The commonality requirement can be satisfied if the prospective Class's claims contain
4  even a single, significant common issue.  In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359
5  (2011), Justice Scalia emphasized that Rule 23(a)(2)'s commonality requirement remains distinct
6  from Rule 23(b)(3)'s predominance analysis (discussed below), and that "for purposes of Rule
7  23(a)(2), even a single common question will do." *Id.* at 360 (internal quotation and alterations
8  omitted).

9      There are numerous common questions the answers to which will resolve the Classes'
10  members' claims in one stroke. If Coke was misbranded, it was misbranded nationwide and in their
11  entirety. For example, if either the Ingredient List claim, Pemberton Claim and/or Original Formula
12  claim was false, unfair, deceptive, misleading and/or omitted to reveal a material fact for one of the
13  products, it was so for all the Class products.  Courts have routinely held these questions sufficiently
14  satisfy the commonality requirement. *See In re ConAgra Foods*, 90 F. Supp. 3d 919, 973-75 (C.D.
15  Cal. 2015); *see also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012)
16  ("[H]ere, variation among class members in their motivation for purchasing the product, the factual
17  circumstances behind their purchase, or the price that they paid does not defeat the relatively
18  "minimal" showing required to establish commonality"); *Chavez v. Blue Sky Natural Beverage Co.*,
19  268 F.R.D. 365, 377 (N.D. Cal. 2010) (commonality requirement satisfied by allegations that the
20  defendant beverage supplier's "packaging and marketing materials [were] unlawful, unfair,
21  deceptive or misleading to a reasonable consumer") (emphasis added).

22      The key common question on Plaintiffs' statutory consumer fraud claims is whether the
23  labels at issue are unlawful, unfair, deceptive, or misleading to reasonable consumers. *See, e.g.,*
24  *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (UCL prohibits
25  conduct that is unfair or deceptive, even if it is not unlawful). The question of "unlawfulness" is a
26  common question in and of itself. If Coke was and remains "misbranded" under the states' laws
27  adopting the FDCA, it could not lawfully be sold. The common language on Coke's labels is the
28

glue connecting Plaintiffs' legal theories.

Deceptiveness is also a common Class question, as it asks whether "members of the public are likely to be deceived." *Kasky v. Nike Inc.*, 27 Cal. 4th 939, 951 (2002). Here, the Court's May 19 Order already found that <u>all</u> the named Plaintiff relied upon the Pemberton Claim and the Ingredient List, and while the Court found that only Ms. Lazaroff and Ms. Dube relied on the Original Formula, as n. 7 above observes, that label claim remains relevant to evaluate the overall deceptiveness of Coke's labels.

### C.    Plaintiffs' Claims Are Typical of Class Members' Claims.

Rule 23(a)(3)'s typicality requirement ensures that the named representative's interests "align" with the Class's. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical. Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Hanlon*, 150 F.3d at 1020. Rather, typicality results if the representative plaintiffs' claims "arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (citations omitted).  It suffices that the class representatives are "part of the class and possess the same interest and suffer the same injury as the class members." *General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982) (quotation marks omitted).

Any factual variations do not defeat typicality where the underlying claims rely on the same legal or remedial theory. *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Instead, the typicality requirement is satisfied even if there are factual distinctions between a named plaintiff's claim versus other class members' claims. *Armstrong v. Davis,* 275 F.3d 849, 869 (9th Cir. 2001)  Typicality is satisfied so long as the named plaintiff's claims stem from the same event, practice, or course of conduct that forms the base of the class claims and [is] based upon the same legal remedial theory. *See Jordan*, 669 F.2d at 1321. In practice, "[t]he commonality

and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157-58 n. 13; *Dukes*, 564 U.S. 131 S. Ct. at 349 n. 5 ("We have previously stated in this context that '[t]he commonality and typicality requirements of Rule 23(a) tend to merge. [ . . . ] with the adequacy-of-representation requirement.'" *citing Falcon*, 457 U.S. at 158 n. 13).

Here, the named Plaintiffs' claims are typical of the putative Classes.  The claims are centered on identical language on Coke containers and packaging.  See *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 523 (C.D. Cal. 2011) (rejecting decertification of food misbranding class where common question centered upon whether claim was false and/or whether it would have deceived reasonable persons).

### D.    The Proposed Class Representatives Will Fairly and Adequately Protect Class Interests

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." The Ninth Circuit has established a two-prong test for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. Each named Plaintiff demonstrably satisfies this test.

#### 1.    The Representative Plaintiffs Have No Conflicts of Interest With Other Class Members

The test for typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon*, 976 F.2d at 508 (citation omitted). Because adequacy is closely related to typicality, where, as here, Class members' and Class representatives' claims are reasonably co-extensive, there is no conflict. *See Falcon*, 457 U.S. at 157-8, n.13. Here, the proposed Classes' representatives have no interests conflicting with Class members' interests.

#### 2.    The Representative Plaintiffs Will Vigorously Prosecute This Action

"It is not necessary that a class representative be intimately familiar with every factual and legal issue in the case; rather, it is enough that the representative understand the gravamen of the

1   claim." *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) (citations and internal

2   quotes omitted). To date, the eight named putative Class representatives' participation in this

3   litigation has been exemplary. Each reviewed drafts of pleadings, provided responses to Coca-

4   Cola's document requests and interrogatories (which, inter alia, required them to photograph the

5   contents of their refrigerators and food pantries) stayed up-to-date with the proceedings,

6   communicated with counsel throughout this litigation. Each also appeared for a deposition by

7   defense counsel, in which they testified about, inter alia, deeply personal matters regarding their

8   and their family's food and beverage purchasing and consumption habits, details fittingly reflected

9   passim in the May 19 Order.

### 3.      Plaintiffs' Counsel Will Continue to Vigorously Represent the Class

11      When a court certifies a class, the court must also appoint class counsel unless a specific

12   statute provides otherwise. Fed. R. Civ. P. 23(g)(1)(A). Class counsel must fairly and adequately

13   represent the class's interests. *See* Fed. R. Civ. P. 23(g)(1)(B). In appointing class counsel, the court

14   considers "the work counsel has done in identifying or investigating potential claims in the action,

15   counsel's experience in handling class actions, other complex litigation, and claims of the type

16   asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will

17   commit to representing the class…." Fed. R. Civ. P. 23(g)(1)(c)(i).

18      Plaintiffs' lead counsel is well qualified for appointment as MDL class counsel. Plaintiffs'

19   counsel possesses considerable experience in complex litigation, including consumer class actions

20   and have no conflicts that would prevent them from adequately representing the interests of the

21   Class. (See declarations of counsel  attached hereto as Exs. F- H). Moreover, Plaintiffs' counsel has

22   spent considerable time, effort and funds litigating this matter to date and will continue committing

23   significant resources to this lawsuit's on-going prosecution. *Id*.

### III.      This Case Satisfies Rule 23(b)(2)'s Requirements

25      Class certification requires that Plaintiffs show that the requirements of Rule 23(a) and one

26   of the three subsections of Rule 23(b) are met.  Plaintiffs seek certification of their claim for

27   injunctive relief under Rule 23(b)(2). Certifying a Rule 23(b)(2) injunctive class does *not* require

demonstrating that common questions of law or fact predominate over individualized ones. Rule 23(b)(2) instead requires that Plaintiffs show that Coca-Cola "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Plaintiffs satisfy this requirement.  Coke's labels were uniform across the Classes and they are unlawful, false, misleading and deceitful in the same ways.  Declaring the label to be unlawful, false, misleading and deceitful on one product would be to declare that all labels on those products are unlawful, false, misleading and deceitful. If labels matter, then deceptive and unlawful labels matter as well. Here, the need for declaratory and injunctive relief is especially acute because: (a) Coke's label, including its Ingredient List, still fails to disclose that phosphoric acid is used in Coke as an artificial flavor and chemical preservative; and (b) at any time Coca-Cola can, once again, issue the Pemberton Claim or Original Formula claims, or materially similar misleading statements, given its representation in its Interrogatory Responses that it removed the Pemberton Claim purely for aesthetic reasons. *See U.S. v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) ("Voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot" because "[t]he defendant is free to return to his old ways."). ████████████████████████████████████████████████████, hence, heightening the concern that Coca-Cola would misbrand its product to gain competitive advantage and demand, causing immediate risk to Plaintiffs that they would again be harmed in the identical manner.

Plaintiffs' state law claims and unjust enrichment claims are ripe for Rule 23(b)(2) certification. Variation among Class members in their motivation for purchasing Coke the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively "minimal" showing required to establish commonality. *Hanlon*, 150 F.3d at 1020. Moreover, it is immaterial for purposes of plaintiffs' state law claims: injunctive relief "is available without individualized proof of deception, reliance, and injury." *Ries*, 287 F.R.D. at 537 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)).

Here, Plaintiffs seek an injunction to stop Coca-Cola from continuing to sell its unlawful, falsely labeled and deceitful product. Coca-Cola has chosen to mislabel Coke in the same manner, affecting all Class members the same way. Furthermore, "[a]pplying Article III's requirements, …a plaintiff does not lack standing simply because 'he has learned that a label is misleading and therefore will not be fooled by it again.' Rather, a plaintiff lacks standing if he has not "express[ed] an intent to purchase the products in the future."' *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL  2702726, at *12 (N.D. Cal. June 13, 2014).[8]  As Judge Tigar explained in *Lily v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *4-5 (N.D. Cal. Mar. 18, 2015):

> It is correct that now that she is aware of the misrepresentation, she knows that the product she bought was not as advertised. But the manufacturer may change or reconstitute its product in the future to conform to the representations on the label. In fact, the manufacturer has every reason to do this, since the market apparently values the very attribute the label promises. In that event, the product would actually become the product that our hypothetical consumer values most highly, and it would be labeled as such. <u>But unless the manufacturer or seller has been enjoined from making the same misrepresentation, our hypothetical consumer won't know whether the label is accurate.</u> And she won't know whether it makes sense to spend her money on the product, since she will suspect a continuing misrepresentation. In fact, knowing about the previous misrepresentation, she probably *won't* buy it – *even though it is now precisely the product she wants above all others*. So, while other consumers may purchase the (now correctly labeled) product, our consumer – the person most likely to suffer future injury from this misrepresentation – will be deprived of it. <u>A rule that prevents this consumer from seeking an injunction doesn't comport with traditional notions of standing; it prevents the person most likely to be injured in the future from seeking redress.</u>

(italics supplied in original, underlining added footnote omitted).  Similarly, in *Coe v. Gen. Mills, Inc.*, Case No. 15-cv-05112-THE, 2017 WL 476407, at *4 (N.D. Cal. Feb. 6, 2017), the Court found

---

[8]    *See also Henderson v. Gruma Corp.*, CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) (rejecting argument that a plaintiff who had been injured is therefore precluded from enjoining false advertising under consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury); *Duran v. Hampton Creek*, No. 3:15-cv-05497-LB,  2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016) ("One can discern the plausibility of repeated harm to a consumer who relies on labels to make choices and who might buy a product if it conformed to the representations on the label. Without injunctive relief, that consumer is harmed, probably because she won't buy it because she will suspect a continuing misrepresentation (even if the manufacturer conforms the product to the label.") (citation omitted); *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) (same); *Mollicone v. Universal Handicraft, Inc.*, No. 2:16-cv-07322-CAS(MRWx), 2017 WL 440257, at *8 (C.D. Cal. Jan. 30, 2017) ( collecting cases agreeing with *Henderson*).

that standing was satisfied where the defendant might "change the product's actual composition to render it more appealing to plaintiffs. *Coe r*elied on this Court's holding in *Anderson v. Seaword Parks and Entertainment, Inc.*, No. 15-cv-02172-JSW, 2016 WL 4076097, at *2 (Aug. 1, 2016) that knowledge of injury does not per se eliminate a named plaintiff's standing. *Id.* Here, Coca-Cola might cease using phosphoric acid in Coke, but absent injunctive or declaratory relief, no named Plaintiff can be confident that Defendants are telling the truth about its ingredients. Further, none of the named Plaintiffs have expressed an intent to never again purchase Coke. Indeed, those named Plaintiffs that Defendants' counsel examined on the subject stated that they *would* purchase Coke products again if the product were properly labeled, and others explained that had they known the truth, they would continue buying it, but far less frequently. [9] Plaintiffs deserve to know whether the Coke they will purchase contains what it professes to contain, and does not contain what Coca-Cola claims it does not contain.

If Coca-Cola continues its improper conduct, Plaintiffs and Class members face a continuing, immediate and actual risk of future harm, being misled and deceived by Coca-Cola's statements and omissions of its product's contents. Injunctive and declaratory relief is also needed to prevent Coca-Cola from re-applying the same or similar misrepresentations any improper language on products in which it may have changed due to this lawsuit and after this suit was filed. "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case

---

[9]   Mr. Engurasoff testified he had not ceased drinking Coke (Ex. I - Engurasoff Tr. at 32:10-23), and was not questioned regarding his future intentions. Nor was the question raised in Mr. Ogden's Ms. Merritt's, or Ms. Lazaroff's depositions.  Ms. Marino testified aid that if a product contained preservatives, and lacked any affirmative representation that the product did not contain preservatives, she "wouldn't buy them as often," (Ex. J - Marino Tr. at 76:25-77:4).  Ms. Marino further testified that she *would* consider purchasing Coke in the future *if* Coca-Cola began labeling correctly. (135:6-11) Mr. Woods was not directly questioned by defense counsel on this subject, although he did testify that he still purchases Coke for parties or for other members of his family, even though not for his own consumption (Ex. K - Woods Tr. at 45:22-46:6, 67:8-10). Mr. Sowizorol testified that he still likes the taste of Coke, and only avoids purchasing it now because Coke falsely held itself out as a more natural product. (Ex. L - Sowizorol Tr, 77:14-19). Defense counsel avoided asking him whether, if Coca-Cola disclosed the truth, if he would reconsider his decision, and how. Finally, Ms. Dube testified that had she known Coke contained artificial flavors or preservatives she might have continued to buy Coke at a reduced level, and provided the same testimony when questioned about chemical preservatives. (Ex. M - Dube Tr. at 114:2-116:24).

declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 190 (2000)).

## E.   RELIANCE

To the extent reliance is an issue for certification of a Rule 23 (b)(2) class, Plaintiffs' claims present no individual reliance issues for any of the states at issue. Plaintiffs relied on the label statements at issue, and, to the extent needed under the various state laws applicable, such reliance is imputed to the Classes.[10] Coca-Cola's label statements at issue are material (to Coca-Cola, to the legislatures of the six states, under the FDCA and to consumers) and the claims sought to be certified can be established class-wide.

**CALIFORNIA –**   No individual issues of reliance with respect to Californian named Plaintiffs Engurasoff's, Merritt's and Ogden's claims under the UCL, FAL and CLRA defeat class certification.

**Californian UCL Claim -** A practice is "unlawful" if it violates a law other than the UCL. The UCL "borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL]." *Farmers Ins. Exch. v. Super. Ct*., 2 Cal. 4th 377, 383 (1992). Unlawful claims have been predicated on laws and

---

[10]    For efficiency's sake Plaintiffs' analysis centers on the statutory claims. However, Plaintiffs' common law claims are also susceptible to common proof.  *See Zakaria v. Gerber Products Co.*, LA CV15-00200 JAK (Ex), 2016 WL 6662723, at *13 (C.D. Cal. Mar. 23, 2016), *reconsideration denied*, 2016 WL 6871277 (C.D. Cal. July 1, 2016) (observing that "[b]ecause the first three elements of a claim for intentional misrepresentation, and the first element of a claim for negligent misrepresentation, refer only to Defendant's conduct, they are susceptible to common proof" and further noting that with respect to reliance, where "material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class" (citing *Vasquez v. Superior Court*, 484 P.2d 964, 973 (Cal. 1971).")).  Further, as the Second Circuit has noted, "proof of reliance by circumstantial evidence may be sufficient under certain conditions", and can be established through common evidence through "legitimate inferences based on the nature of the alleged misrepresentations at issue." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 224–25 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008)). (citations omitted). Given the uniformity of the label omissions and misstatements, the existence of internal Coke studies documenting the likely impact of the label claims on consumers, and other evidence to be developed in the merits phase of this case, even common law claims requiring proof of reliance can be certified.

---

regulations both federal and state. *See, e.g.*, *Ballard*, 158 F. Supp. 2d at 1176. Here, Plaintiffs predicate their claims on Coca-Cola's unlawful labeling of Coke which both omits and affirmatively misrepresents material information. Coca-Cola's unlawful conduct entitles Plaintiffs to this relief under the UCL. California law is clear that reliance by Plaintiffs or the class members is not a necessary element for a UCL plaintiff to prevail.[11] Class-wide reliance is not required for UCL unlawful prong claims. *See, e.g., Greenwood v. Compucredit Corp*., No. C 08-04878 CW, 2010 WL 291842 (N.D. Cal. Jan. 19, 2010); *In re Tobacco II Cases*, 46 Cal. 4th at 326-27. Here, Plaintiffs' claim under the UCL's "unlawful" prong focuses directly on Coca-Cola's misbranding Coke products.  Both the conduct giving rise to Plaintiffs' claims, and the relevant laws are all identical and apply class-wide.

**Plaintiffs' Other California Consumer Protection Claims -** No individual reliance issues are presented with respect to Plaintiffs' other California Consumer Protection claims. Courts generally consider claims under California's UCL, FAL and CLRA together when considering a motion for class certification. *See In re: Conagra Foods, Inc.*, 90 F. Supp. at 981 (citing *Forcellati v Hylands, Inc.*, CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) ("For purposes of class certification, the UCL, FAL and CLRA are materially indistinguishable")). Each of these statutes allows materiality and reliance to be established by showing that a reasonable person would have considered the defendant's representation material. *Id*; *see also Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156 (2010); *In re Tobacco II Cases*, 46 Cal. 4th at 327; *Keilholtz v. Lennox Hearth Products Inc*., 268 F.R.D. 330, 343 (N.D. Cal. 2010). The Court's May 19 Order concluded that the named California Plaintiffs presented sufficient evidence

---

[11]     *See Bruton v. Gerber Prods. Co*., No. 15-15174, 2017 WL 1396221, at *3 (9th Cir. Apr. 19, 2017) (reversing grant of summary judgment and holding that reasonable consumer test not applicable under UCL "unlawful" prong). *See also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) *abrogated on other grounds by Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). ( UCL claims focuses on "defendant's conduct," rather than any reliance by plaintiff or individualized proof of deception or injury); s*ee also Ries*, 287 F.R.D. at 537-38 ( injunctive relief is available under the unlawful prong "without individualized proof of deception, reliance, and injury.").

demonstrating their reliance on the Pemberton Claim and Ingredients List Claim. May 19 Order at *5-6. Class certification is therefore proper.

**FLORIDA** – No individual issues of reliance arise in connection with Coca-Cola's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") violations.  FDUTPA claims are governed by the reasonable consumer standard, obviating the need for proof of individual reliance by putative class members. *In re: ConAgra Foods, Inc.*, 90 F. Supp. 3d at 991, *citing Office of Att. Gen. v. Wyndham Int'l, Inc.*, 869 So.2d 592, 598 (Fla. App. 2004). An individual consumer need not prove reliance when prosecuting an FDUTPA claim May 19 Order at *6 (citations omitted). The Court has denied Coca-Cola's motion to dismiss that claim, *id.* at *6-7, and the claim may be certified.

**ILLINOIS** – Reliance issues yield no individual issues for Coca-Cola's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA", 815 ILCS 505/1, et seq.) "[R]eliance is not an element of statutory consumer fraud" in Illinois.  May 19 Order at *7 (citations omitted. Consequently, this Court denied Coca-Cola's motion to dismiss Sowrizol's claim under the act.  May 19 Order at *7-8. Plaintiff Sowrizol's claim is proper for certification.

**MASSACHUSETTS** -  Coca-Cola's violations of Massachusetts General Laws Chapter 93A (the "Chapter 93A Claim") do not give rise to individual reliance issues.  "Actual reliance" is not an element of a Chapter 93A Claim. May 19 Order at *8 (citations omitted).  The Court thus correctly denied Coca-Cola's motion to dismiss Marino's claim. May 19 Order at *8-9. Plaintiff Marino's claim can be certified.

**NEW YORK** – Reliance issues do not give rise to individual issues with respect to Coca-Cola's violations of the New York Gen. Bus. L. §§ 349 and 350 claims (NY Consumer Statute Claims"), because neither claim requires proving reliance.  May 19 Order at *9 (citations omitted). Claims under these statutes merely require that "a reasonable consumer could have been misled by defendants' conduct." *Ackerman v. Coca-Cola Co.*, No. cv-09-0395-JC-RML, 2010 WL 2925955, (E.D.N.Y. July 21, 2010). The has Court denied Coca-Cola's motion to dismiss Lazaroff's claims under these statutes, May 19 Order at *9, and the claims may be certified.

**NEW JERSEY** – No individual reliance issues for Coca-Cola's violations of the New

Jersey Consumer Fraud Act, Annotated Sections 56:8-1 (the "NJ CFA Claim").   Causation is susceptible from classwide proof and individual inquiries do not preclude certification if plaintiffs provide sufficient evidence that the claims at issue were material. *Varacello v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 817 (N.J. Sup. 2000). Plaintiff Dube could not have known that Coca-Cola's Coke in fact contained artificial flavoring or chemical preservatives, and that Coca-Cola's statements were false.   Given no individual reliance is necessary for a NJ CFA Claim (or, for that matter, New Jersey express warranty claims), the Court denied Coca-Cola's motion to dismiss these claims, May 19 Order at *10, and these claims may be certified.

### F.   MATERIALITY

Plaintiffs are not required to prove materiality at the class certification stage. *In re Conagra Foods, Inc.*, 90 F. Supp. 3d at 1019; *McCrary v. Elations Co., LLC*, EDCV 13-00242 JGB (OPx), 2014 U.S. Dist. LEXIS 8443, *42-44 (C.D. Cal., Jan. 13, 2014). Materiality is a jury question "unless the 'fact misrepresented [or omitted] is so obviously unimportant that the jury could not reasonably find that a reasonable man could have been influenced by it." *Ortega v. Natural Balance*, No. CV 13-5942, 2014 WL 2782329, at *5 (C.D. Cal., June 19, 2014) (*citing In re Tobacco II Cases*, 46 Cal. 4th at 327 ).   The *Ortega* court explained that it "strains credulity to think that a merchant would select exclusively immaterial statements to print on its product's packaging," hence, the class was certifiable and "materiality can be adjudicated on a classwide basis." *Id*.   Here, Defendants' own studies constitute sufficient proof of the label statements and omissions materiality.

Materiality is based on a reasonable person standard based on objective criteria.[12]   Here, Plaintiffs present sufficient evidence to demonstrate the materiality of its claims such as to allow

---

[12] *See Forcellati*,  2014 WL 1410264 , at *9  (determining whether a California Consumer Statute label claim is misleading or material is judged on an objective standard). *See also In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F.Supp.2d 1265, 1282-83 (S.D. Fla. 2010) (materiality of FDUTPA claim is determined on whether it "would deceive an objective reasonable consumer"); *Cirone Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997) (ICFA materiality is judged on an objective standard); *Haynes v. Planet Automall, Inc.*, 276 F.R.D. 65, 78-79 (E.D.N.Y. 2011) (whether acts are material or deceptive is determined using an "objective test", with representations or omissions

certification for ultimate common adjudication. *First*, the challenged label statements were material to Coca-Cola. ████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████ Courts recognize that materiality can be demonstrated by demonstrating the importance of the label claim [or omission] to the defendant. *See Kwikset Corp*, 51 Cal. 4th at 333 (*citing* Rest. 2d Torts, Section 538, subd. (2)(b), providing a statement or omission may be material if "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man may not so regard it."). ████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████ It also harmonizes with Defendants' admissions that Coca-Cola employs labels to provide information to consumers it wishes to transmit. *See* Ex. B, Response to RFA No. 46. In fact, as noted supra, Coca-Cola claims in its Interrogatory Responses that it included the Pemberton Claim to assure consumers that Coke had no artificial flavors and preservatives, and it presently continues to refuse disclosing those additives presence on its Ingredient List. In sum, all of the challenged label claims were and remain material to Coca-Cola, and constitute sufficient proof for certification.

---

"deceptive when they are likely to mislead a reasonable consumer acting reasonably under the circumstances");  *Aspinall v. Philip Morris Cos.,* 20 Mass. L. Rep. 303 (2005) (*citing Leardi v. Brown*, 394 Mass 151, 156 (1985) (determining materiality of Chapter 93A claim involves objective analysis of whether advertisement "might reasonably be expected to have upon the public" of misleading them to act differently than they otherwise would have).

*Second,* the label statements are axiomatically material, because violate the laws of the six states at issue, because they transmit  false information to consumers. Coca-Cola's Coke labels falsely convey that the product contains "no artificial flavoring or chemical preservatives." Courts in the states at issue have found label violations to make the statements material per se, and have found such false statements to make the materiality of the statements [or omissions] self-evident.[13] These holdings are accord with 21 C.F.R. 1.21, which provides that labels failing to reveal material facts are, as a matter of law, misleading. Courts have also routinely held false statements to be material.[14] ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████ The statements also violated applicable consumer statutes, rendering them per se materially misleading. No more is required at this time for class certification.

Additionally, these statements were material to the Plaintiffs here, and to the class. Plaintiffs did, and it is typical that they should, rely on the statements made by food manufacturers to be accurate. Plaintiffs did, and should, expect food manufacturers to be truthful, and fully disclose those material facts. The label statements here were made by Coca-Cola for Plaintiffs and other consumers to read and rely on them. Plaintiffs and other consumers did just that, and relied on these false, material statements.

---

[13]    *See , e.g., Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) citing *Kwikset*, 51 Cal. 4th at 333 (where the Legislature has proscribed a labeling practice by statute, it is material *per se*); *Duncavage v. Allen*, 147 Ill. App. 3d 88, 101-02 (Ill. 1st Dist. 1986) (violations of 815 ILCS 510/2, which includes representing a product has "qualities, characteristics, ingredients," renders the claim a "deceptive trade practice" per se); *see also Commonwealth v. AmCan Enters.*, 712 N.E. 2d 1205, 1210 (Mass. App. Ct. 1999) (affirming trial court's finding that Ch. 93A violations rendered claim *per se* deceptive and material e) *citing Leardi v. Brown*, 394 Mass. 151, 156-57 (1985); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18-20 (1994) (holding violation of the regulations promulgated under the NJCFA are violations of the NJCFA without any additional required showing).

[14]    *See Kwikset*, 51 Cal. 4th at 333 (holding false claims of "Made in the USA" material); *see also Gennari v. Weichert Co. Realtors*, 288 N.J. Super. 504, 535 (N.J. App. Div. 1996) (stating a misrepresentation of a transaction found to be false is material); *Lingar v. Live-In Companions, Inc.*, 300 N.J. Super. 22, 28 (N.J. App. Div. 1997) (providing affirmative misstatements actionable without any deceit or intent required); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 14-CV-3826 (MKB), 2015 WL 5579872, at *21 (E.D.N.Y. Sept. 22, 2015) (N.Y GBL §349 claims do not require proof of intent to mislead or justifiable reliance.)

1

## IV.   COCA-COLA'S EXPERT HAL PORET OFFERS UNRELIABLE OPINIONS THAT DO NOT DEFEAT CLASS CERTIFICATION

2       Coca-Cola has offered opinions by a statistician, Hal Poret ("Poret") in its efforts to defeat class

3   certification. In summary, Poret opines that Coke purchasers' likelihood of purchasing Coke and

4   the amount they were willing to pay for Coke was not materially impacted by either the disclosure

5   or omission of (1) the Pemberton Claim or the Original Formula claim[15], or (2) ingredient

6   information identifying phosphoric acid as a chemical preservative and stating the presence of

7   artificial flavors.[16]  Poret asserts that the named Plaintiffs are atypical Coke purchasers to extent

8   they were impacted by these claims and/or omissions.[17]  He also concludes that Coke purchasers'

9   decisions are not driven by the alleged absence or presence of artificial flavors or chemical

10  preservatives or the perception of Coke as healthy or natural.[18]

11      To reach his conclusions, ███████████████████████████████ Poret designed

12  and conducted a study involving a total of 2,400 respondents split between two on-line internet

13  surveys:

14          •   Poret's "Ingredient Panel Survey" comprised individuals who purchased Coke in
        any container (bottles or cans of any size) who were asked to volunteer their reasons for

15      purchasing Coke. They thereafter reviewed images of a Coke ingredients panel and
        answered a series of closed end questions regarding whether, following their review of the

16      label, the list had any impact on whether they would purchase Coke. Only those respondents

17      answering "yes" to this question proceeded to answer whether reviewing the panel made
        them more, equally, or less likely to purchase Coke, or how much they would pay for it.

18      Respondents were also permitted to respond "don't know/no opinion."

19

20          •   Poret's "Full Label Survey" comprised individuals who purchased regular Coke
        specifically in a 2-liter bottle and were also asked to volunteer their reasons for purchasing

21      Coke in that container. They thereafter reviewed images of a 2-liter Coke bottle's label and
        then answered the same series of questions as Ingredient List Survey respondents. Poret Rep.

22      at 9-37, 41-54.

23      Poret subdivided both survey groups into "Test" and "Control" groups. The Ingredient Panel

24  Survey "Test" group reviewed Coke's current ingredient panel that did not disclose that phosphoric

25  _____

26      [15]    Poret Rep. (Ex. N) at 59-60, 66-67.
        [16]    *Id.* at 39-40, 59-60, 66-67.
27      [17]    *Id.* at 60-61, 67-68.
        [18]    *Id.* at 38-40
28

acid was an artificial flavor or a preservative. "Control" group participants reviewed an ingredient list that included such disclosures. Full Label Survey "Test" participants reviewed a 2-liter bottle of Coke that included the Pemberton Claim, the Original Formula claim, and an ingredient list that did not identify phosphoric acid as an artificial flavor or preservative. "Control" group participants reviewed a label lacking either of the two statements, and with an ingredient list disclosing phosphoric acid as a preservative.  Thus, the two groups had no opportunity to review the different labels side-by-side.

Importantly, Poret's Full Label Survey specifically directed respondents to focus *only* upon Coke sold in a 2-liter bottle, rather than any other sort of packaging. Poret Rep. p.14.  But Poret knew that one of the challenged forms of packaging was Coke sold in 12 or 24 packages of cans. Yet other than boasting "I'm a survey designer who writes thousands of instructions and questions, [and] feels confident that I wrote a proper, understandable instruction" (Poret Dep Tr. 264:6-9)(*See*, Ex. O, Poret Dep. Tr.) he implemented no measures that might ensure that respondents understood that their responses were relevant to Coke purchases in 2 liter bottles *only*.  This is significant, because Poret conducted no analysis of whether the responses would have been the same for 12 and 24 packs of Coke cans.  When confronted with this problem, Poret only emptily responded "I don't see any reason why - - why it would be different when the same language is on a package." *Id.* at 272:-3-5.  Poret's opinions therefore have no application to vast categories of challenged packaging he never specifically tested. Having expressly instructed respondents "*we are asking* ***specifically*** *about your purchases of regular Coca-Cola in 2 liter bottles with a red label,* ***not cans*** ***or any other size bottle***, *and not Diet Coke or Caffeine-Free Coca-Cola or any other Coca-Cola products*" (Poret Rep. at 14 (emphasis added)), the survey's respondents' answers must be cabined to that circumscribed universe. Similarly, Poret's altered ingredient list labels only stated that phosphoric acid was a preservative. Poret did not examine whether a disclosure that phosphoric acid was an artificial flavor yielded similar results. His results cannot be extrapolated and generally applied to the Classes members generally.  Even if Poret's opinions were methodologically sound – and they aren't – the opinions are only marginally relevant.

Poret's opinions fail to defeat class certification. Plaintiffs have submitted sufficient evidence of materiality, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Poret's survey's glaring methodological flaws aside, its results are easily susceptible to differing interpretations, and are, at best, matters for a jury's later consideration.[19] In reality, Poret's opinions are so rife with gross methodological flaws that they fail *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny's standards for expert testimony. Expert testimony must: be based on sufficient facts or data; stem from reliable principles and methods; and reliably apply those methods to the facts. Fed. R. Evid. 702. When evaluating survey evidence the Court must determine whether the survey "is relevant and conducted according to accepted principles [.]" *Click Billiards, Inc. v. Sixhooters Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001).[20] (citations omitted). Material flaws in a survey render reliance on that survey unreasonable. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004); *see also American Foot Wear Corp. v. General Footwear Co.*, 609 F.2d 655, 660 n.4 (2d Cir. 1979) (excluding survey that contained self-serving questions and which failed to duplicate actual marketing conditions). Neither *Daubert* nor the Federal Rules of Evidence requires a Court to admit opinion evidence unconnected to existing data only by the expert's *ipse dixit*. To the contrary, the court may conclude "…there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The "content and execution of a survey must be scrutinized." *Procter & Gamble Pharm., Inc. v.*

---

[19]    *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *9 (At class certification court "…must avoid engaging in a battle of expert testimony."). By way of example, respondents' answers as to why they purchased Coke are not necessarily co-extensive with the reasons why they drink the product.  A jury could conclude that the responses Poret obtained are more germane to the latter than the former. Poret also unilaterally categorized responses into different categories, *i.e.* "health related answers." Some respondents stated that Coke "helps me burp". Whether that response is germane to health, versus a respondent providing a sarcastic answer, is subjective.  *See In re: Autozone, Inc.*, No.: 3:10-md-02159-CRB, 2016 WL 4208200, at *19 (N.D. Cal. Aug. 10, 2016), *reconsideration denied sub nom. In re: AutoZone, Inc.*, 2016 WL 6834138 (N.D. Cal. Nov. 21, 2016), *leave to appeal denied sub nom. JIMMY ELLISON, ET AL v. AUTOZONE INC (Dec. 6, 2016)* (excluding survey that was imprecise and failed to provide clear questions to respondents.)

[20]    *See also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (in order to admit survey evidence the Court must determine if it has been "conducted according to accepted principles and [is] relevant.'")

*Hoffmann-LaRoche Inc.*, 06 Civ. 0034 (PAC), 2006 WL 2588002, at *21 (S.D.N.Y. Sept. 6, 2006), and surveys suffering from a "fatal combination of flaws" are inadmissible. *Id.*

Plaintiffs' rebuttal expert, Christina Schroeter, Ph.D, has demonstrated precisely why Poret's methodology and conclusions are unreliable. The contrast between Dr. Schroeter and Mr. Poret is striking. Poret holds a law degree, previously worked as an intellectual property lawyer, and a bachelor and master degrees in economics. In a decision casting doubt on his analysis's soundness in a trademark dispute, Judge Richard Posner characterized Poret as "basically a professional expert." [21] Dr. Schroeter has been an Associate Professor in the Agribusiness Department at California Polytechnic State University, San Luis Obispo since September 2013. Her research focuses on the field of consumer marketing and health economics, and she investigates nutrition labeling, consumer demand, and behavioral economics. As her Report and CV establish, she has won numerous awards for her research in this field. Her research extensively employs consumer surveys. *See*, Ex. P, Rebuttal Report of Christiana Schroeter, Ph.D.

When he designed his study, Poret failed to assess or review any prior research concerning the issues he was addressing. As Dr. Schroeter notes, "[t]ypically, the introduction of a research report is based on a thorough literature review." Schroeter Rep. at ¶30. [22] Poret's failure is

---

[21]   *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc*., 735 F.3d 735, 742 (7th Cir. 2013). Judge Posner further observed that "caution is required in the screening of proposed experts on consumer surveys" and identified a host of concerns regarding Poret's methodology including the fact that "it's very difficult to compare people's reactions to *photographs shown to them online by a survey company to their reactions to products they are looking at in a grocery store* and trying to decide whether to buy. *The contexts are radically different*, and the stakes much higher when actual shopping decisions have to be made (because that means parting with money), which may influence responses." *Id.* (emphasis added). Judge Posner remarked "[w]e can imagine other types of expert testimony that might be illuminating in a case such as this—*testimony by experts on retail food products about the buying habits and psychology of consumers of inexpensive food products*." *Id.* (emphasis added). Those are exactly the skills Dr. Schroeter possesses, although she *also* possesses ample skill, education, experience, and training to highlight the material methodological flaws infusing Poret's methodology and conclusions. Poret, in contrast, conceded he is not an expert in consumer marketing (Poret Depo. Tr. 335:11-21), nor an expert in food sciences, food research, health economics, or food economics (*id*. at 86:8-19), and admitted that he has conducted no academic research into soft drink consumption or consumer purchasing habits. *Id.* at 87:4-10.

[22] *See also In re Agent Orange Prod. Liab. Litig*., 611 F. Supp. 1267, 1282 (E.D.N.Y. 1985), *aff'd sub nom. In re Agent Orange Prod. Liab. Litig*., MDL No. 381, 818 F.2d 187 (2d Cir. 1987)

---

remarkable because, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████ ████████████ . ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ . *See* Schroeter Rep. at ¶33. At deposition Poret

admitted he had not made any effort to identify and review such research[23] and only did so after

he reviewed Dr. Schroeter's report[24] because it referenced a number of the studies.[25]

Poret was also confronted with ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Poret neither acknowledged or addressed this research. █

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Poret responded that these results were irrelevant to his analysis. Poret Dep Tr. at 340:9-

17. Stated differently, he ignored them. ████████████████████████

████████████████████████████████████████████████████

---

(excluding medical expert for, *inter alia* failure to consider relevant epidemiologic studies
conducted on Vietnam veterans)
[23]     *See* Poret Depo Tr. at 210:7-15.
[24]     Poret Depo Tr. at 334:13-18.
[25]     Schroeter Rep. at ¶33.
[26]     *See,* Ex. Q Poret Depo. Ex. 8 (Coca-Cola 2008 internal study regarding awareness of
feelings towards various ingredients), TCCC00027369-0378.

1    ████████████████████████ Poret admitted that he "did not have a clear enough sense of what

2    was done at this moment to really comment on it" but nevertheless insisted that he disagreed with

3    Coca-Cola's methodology. Poret Depo. Tr. 351:15-19. He further admitted that even when he

4    prepared for his deposition he did not carefully read through all the pages of the reports and studies

5    that Dr. Schroeter cited in her rebuttal report. Poret Tr. at 354:8-16. He then strained to distinguish

6    ████████████████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████████████[27]

10   It is richly ironic for Coca-Cola to try and defeat class certification by proffering an expert

11   who: (1) did not bother reviewing and accounting for Defendants' (or anyone else's) research

12   regarding label claims or consumer attitudes towards artificial ingredients and preservatives, and

13   (2) when confronted with Defendants' own research that is at plain odds with his findings –

14   disagrees with Coca-Cola's methodology. For purposes of class certification, it suffices to say that

15   Poret's opinions stand in marked contrast to Coca-Cola's opinions, and, at most. raise potential

16   factfinder issues for later consideration. date. These are not the only flaws reflected in Poret's

17   report. To wit:

18       • Poret did not pre-test or pilot test his study to assess whether there were any flaws
         or problems (including whether respondents understood the questions they were being
19       asked). Poret admitted he merely evaluated results as they were received and made no
         adjustments to his study's design or structure. Poret Depo Tr. at 152:2-154:17.
20
21       • Poret also, in contravention of typical, common-sense protocols, conducted no
         meaningful follow-up questioning regarding the participants' responses. *See* Schroeter
22       Rep. at ¶¶91-95. Poret never asked respondents *why* the ingredient list or label impacted
         their purchasing decisions.
23
24       • Poret could not quantify his survey's response rate, and could only speculate that it
         was at least 15%, s*ee* Poret Depo Tr. at 160:11-24. He ultimately admitted that he never
25

26

27   ───────────────────
     [27] ██████████████████████████████████████████████████████████████████
28   ███████████████████████████████████████

knew the exact rate. *Id.* at 172:24-173:1.[28]

• Poret posed open-ended questions to consumers asking them what drove their decisions to purchase Coca-Cola. Because no respondents volunteered the alleged absence of artificial flavors or chemical preservatives, he concluded that this was not a relevant consideration. Poret never cross-checked his results by seeing if whether a closed-end question offering, for example, "absence of preservatives" yielded similar results.[29]

• Poret failed to account for population size in the six different states and used a grossly insufficient sampling size given the Class's size *See* Schroeter Rep. at ¶¶44-49.

• Poret's screening questions biased the sample selection by including purchasers without determining if a purchaser was *also* a consumer who drinks regular (sugar-sweetened) Coke and failed to take demographic questions into account that select respondents who are typical Coke consumers. *See* Schroter Rep. at ¶¶50-63.

• Poret failed to correctly calculate the impact of labels with respect to purchasing likelihood and willingness to pay. The low percentages that he calculated were not adjusted to include only participants who – based on their responses to earlier questions, actually had an opportunity to answer the questions. *See* Schroeter Rep. at ¶¶64-90. When the questions are properly filtered against the relevant universe of respondents, the difference of the label's impact upon participants purchasing habits is materially higher, requiring, at a minimum, further analysis. *See* Schroeter Rep. at ¶¶86, 89.

• Poret's Full Label Survey included a label misspelling the word "caffeine", which may have infected the survey's results, since it might have altered participants that the label was not authentic. See Schroeter Rep. at ¶96.

Poret typifies an "expert" who substitutes their CV and vague generalities in place of reliable, objective, analyses and conclusions. His methodology resulted in predictably rigged results. At most his opinions – *if* they are ever admitted at trial – are fodder for a jury's consideration, but are

---

[28]    *See In re ConAgra Food, Inc.*, 90 F. Supp. at 951. (Although survey's non-responsive rate generally goes to the weight of the results were offering party is unable "to validate that the survey was reliably designed and administered, such concerns reasonably suggest that the survey's methodology may be flawed.")

[29]    The Reference Guide on Survey Research (Shari Seidman Diamond) contained in the Federal Judicial Center's Reference Manual on Scientific Evidence, Third Edition (2011), which Poret cited in his report (Poret Rep. at n.18) explains, "[m]ost responses are less likely to be volunteered by respondents who are asked an open-ended question than they are to be chosen by respondents who are presented with a closed-end question" as "a closed-end question may remind respondents of options which they might not otherwise  consider or which simply do not come to mind as easily."  Poret Depo. Ex. 7 at 43.

not a basis to deny class certification. Again, materiality need not be determined at the class certification stage; Plaintiffs need only submit sufficient evidence of materiality, which they have here. Coca-Cola's label claims and omissions are not so clearly unimportant as to defeat certification.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to certify the proposed classes under Rule 23(b)(2); appoint Plaintiffs as class representatives; and appoint Plaintiffs' counsel as class counsel for MDL purposes.

Dated:  June 16, 2017.

Respectfully submitted,

By: /s/ *Don Barrett*
John W. ("Don") Barrett (admitted *pro hac vice*)
Richard Barrett (admitted *pro hac vice*)
BARRETT LAW GROUP, P.A.
P.O. Box 927
Lexington, MS 39095
Telephone: (662) 834-2488
Fax: (662) 834-2653
dbarrett@barrettlawgroup.com
rrb@rrblawfirm.net

Keith M. Fleischman (admitted *pro hac vice*)
Joshua D. Glatter (admitted *pro hac vice*)
June Park (admitted *pro hac vice*)
FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax: (917) 591-5245
keith@fleischmanlawfirm.com
jglatter@fleischmanlawfirm.com
jpark@Ffleischmalawfirm.com

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
(408) 429-6506
pgore@prattattorneys.com
*Attorneys for Plaintiff*

1

## **CERTIFICATE OF SERVICE**

2      I, Don Barrett, hereby certify that a true and correct copy of the foregoing was served to all

3  counsel of record via the Court's CM/ECF filing system on June 16, 2017.

4                              /s/ *Don Barrett*

5                              John W. ("Don") Barrett

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28