UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE COCA-COLA PRODUCTS MARKETING AND SALES PRACTICES LITIGATION**<br><br>This document applies to all actions | Case No.  14-md-02555-JSW<br><br>**AMENDED ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION FOR CLASS CERTIFICATION AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 160 |

Now before the Court for consideration is the motion for class certification filed by George Engurasoff ("Mr. Engurasoff"), Paul Merritt ("Mr. Merritt"), Joshua Ogden ("Mr. Ogden"), Ronald Sowizrol ("Mr. Sowizrol"), Michelle Marino ("Ms. Marino"), Yocheved Lazaroff ("Ms. Lazaroff"), Rachel Dube ("Ms. Dube"), and Thomas Woods ("Mr. Woods") (collectively "Plaintiffs").  The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, Plaintiffs' motion.[1]

## BACKGROUND

Plaintiffs in this multi-district litigation allege that Defendants, The Coca-Cola Company, Coca-Cola Refreshments U.S.A., Inc., BCI Coca-Cola Bottling Company of Los Angeles, and Coca-Cola Bottling Company of Sonora, California, Inc. (collectively "Coca-Cola"), affirmatively, and by material omissions, misled the public by representing on Coke's labels that Coke is, and always has been, free of artificial flavors and chemical preservatives.[2]

Coca-Cola lists phosphoric acid in the ingredients list on Coke's labels.  However,

---

[1]    The Court issues this amended order solely to correct the caption.

[2]    The term "Coke" refers only to the product known as "original formula" or "classic" Coke.

1

Plaintiffs allege Coca-Cola omitted the fact that phosphoric acid is used as, an artificial flavoring and chemical preservative (the "Ingredients List Claim"). (Dkt. No. 79, Consolidated Complaint ("Consol. Compl.") ¶¶ 62-107; Dkt. No. 26, Marino Amended Class Action Complaint ("Marino AC") ¶¶ 56-108, 114-116; *Sowizrol v. Coca-Cola Company*, 14-CV-3774, Dkt. No. 53, First Amended Complaint ("Sowizrol FAC") ¶¶ 51-99, 103-105; *Lazaroff v. Coca-Cola Company*, 14-cv-3686-JSW, Dkt. No. 27, Amended Complaint ("Lazaroff AC") ¶¶ 54-103, 107-109.)[3] Plaintiffs also allege that by failing to identify phosphoric acid as an artificial flavor and a preservative, Coca-Cola violated federal and state laws relating to information that must be included on food labels. (Consol. Compl. ¶¶ 21-30; Marino AC ¶¶ 21-33; Sowizrol FAC ¶¶ 21-30; Lazaroff AC ¶¶ 21-30.)

Plaintiffs also allege the phrase "*no artificial flavors. no preservatives added. since 1886.*", which appears on some Coke labels, is an affirmative misrepresentation because phosphoric acid is a preservative and an artificial flavor (the "Pemberton Claim"). (*See, e.g.,* Consol. Compl. ¶¶ 14-15, 25; Marino AC ¶¶ 14-15, 25, 54-56; Sowizrol FAC ¶¶ 14-15, 48-49; Lazaroff AC ¶¶ 14-15, 52-54.) Finally, Plaintiffs allege the phrase "*original formula*" is an affirmative misrepresentation. According to Plaintiffs, "the composition of Coca-Cola has repeatedly changed over time." Those changes include "the addition of artificial ingredients like phosphoric acid." (Consol. Compl. ¶ 16; Marino AC ¶ 16, 55, 135; Sowizrol FAC ¶ 16, 49, 123; Lazaroff AC ¶ 16, 53, 127.)

Coca-Cola does not concede that phosphoric acid is artificial flavor or an added preservative. For example, Coca-Cola asserts that the primary function of the Pemberton Claim "was to provide consumers with accurate information that Coke contains no added preservatives or artificial flavors." (Declaration of Jane Metcalf ("Metcalf Decl."), ¶ 2, Ex. 5 (Coca-Cola Supp. Resp. to Phase II Interrog. No. 2).)

Mr. Engurasoff, Mr. Merritt, and Mr. Ogden assert statutory claims for violations: of all three prongs of California's Unfair Competition Law, Business and Professions Code sections

---

[3]     Ms. Marino's amended complaint is docketed in 14-md-2555 but has not been docketed in case number 14-cv-4356.

17200, *et seq.* (the "UCL Claim"); California's False Advertising Law, Business and Professions Code sections 17500, *et seq.* (the "FAL Claims"); and California's Consumer Legal Remedies Act, Civil Code sections 1750, *et seq.* (the "CLRA Claim"). They also assert claims under California law for negligent misrepresentation, negligence, unjust enrichment, money had and received, and breach of express warranty.

Mr. Woods asserts claims statutory claims for alleged violations of: the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA Claim"), Florida Statutes sections 510.201, *et seq.*; the Florida Food Safety Act, Florida Statute sections 500, *et seq.*; and Florida's Misleading Advertising Statute, Florida Statute section 817.41. He also brings claims under Florida law for negligent misrepresentation, negligence, unjust enrichment, money had and received, and breach of express warranty.

Mr. Sowizrol asserts statutory claims for alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (the "IFCA Claim") and the Illinois Food, Drug, and Cosmetic Act, 410 ILCS 620/20. He also brings claims under Illinois law for breach of the implied warranty of merchantability, breach of express warranty, negligent misrepresentation, negligence, unjust enrichment, and money had and received.

Ms. Marino asserts statutory claims for alleged violations of: Massachusetts General Laws Chapter 93A (the "Chapter 93A Claim"); Massachusetts General Laws Chapter 94, sections 187 and 190; Massachusetts Regulation 520.116. She also asserts claims under Massachusetts law for breach of the implied warranty of merchantability, breach of express warranty, negligent misrepresentation, negligence, unjust enrichment, money had and received, and for a declaratory judgment that Coca-Cola violated federal and state laws regarding mislabeled and misbranded food products.

Ms. Lazaroff and Ms. Dube assert statutory claims for alleged violations of New York General Business Law sections 349 and 350 (the "Section 349 Claim" and the "Section 350 Claim") and New York Agriculture and Markets Law section 199-a. Ms. Lazaroff also asserts claims under New York law for breach of the implied warranty of merchantability, breach of express warranty, negligent misrepresentation, negligence, unjust enrichment, and money had and

3

received.

Ms. Dube also asserts statutory claims for alleged violations of the New Jersey Consumer Fraud Act, New Jersey Statutes Annotated sections 56:8-1, *et seq.* (the "NJCFA Claim") and New Jersey Statutes Annotated section 24:5-1. She also asserts claims under New Jersey law for breach of the implied warranty of merchantability, breach of express warranty, negligent misrepresentation, negligence, unjust enrichment, and money had and received.

Plaintiffs seek to certify six classes consisting of persons from California, Illinois, New York, New Jersey, Massachusetts, and Florida who:

> purchased Coca-Cola's Coke product within [those states] that: (1) lists phosphoric acid on the ingredients list but does not state that the product contains artificial flavoring and chemical preservatives; (2) includes the label statement *no artificial flavors. no preservatives added. since 1886.*; and/or (3) includes the label statement *original formula.*[4]

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.  Legal Standards Applicable to Class Certification.**

Class certification is governed by Federal Rule of Civil Procedure 23 ("Rule 23"). Under Rule 23(a), a court may certify a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b),

> [a] class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would

---

[4]     The Court has determined that only Ms. Lazaroff and Ms. Dube can pursue claims based on the "original formula" representation. However, the Court has not precluded the remaining Plaintiffs from arguing how that phrase may have impacted their understanding of the Pemberton and Ingredient List Claims.

4

1
2
3
4

    establish incompatible standards of conduct for the party opposing
the class; or (B) adjudications with respect to individual class
members that, as a practical matter, would be dispositive of the
interests of the other members not parties to the individual
adjudications or would substantially impair or impede their ability to
protect their interests;

5
6

    (2) the party opposing the class has acted or refused to act on
grounds that apply generally to the class, so that final injunctive
relief or corresponding declaratory relief is appropriate respecting
the class as a whole; or

7
8
9
10
11
12

    (3) the court finds that the questions of law or fact common to class
members predominate over any questions affecting only individual
members, and that a class action is superior to other available
methods for fairly and efficiently adjudicating the controversy.  The
matters pertinent to these findings include: (A) the class members'
interests in individually controlling the prosecution or defense of
separate actions; (B) the extent and nature of any litigation
concerning the controversy already begun by or against class
members; (C) the desirability or undesirability of concentrating the
litigation of the claims in the particular forum; and (D) the likely
difficulties in managing a class action.

13
14
15
16

    As the moving parties, Plaintiffs bear the burden to show that they meet each of Rule 23(a)'s requirements and that they meet at least one requirement under Rule 23(b).  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).  Plaintiffs move to certify the classes under Rule 23(b)(2).

17
18
19
20
21
22
23
24
25
26

    "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).  The Court must conduct a "rigorous analysis" of the Rule 23 factors, which "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351.  However, the Court has "no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013).

27
28

    "Class certification is not immutable, and class representative status could be withdrawn or

1    modified if at any time the representatives could no longer protect the interests of the class."

2    *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v.*

3    *County of Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)).

4    **B.**      **The Court Denies the Motion as to the Common Law Claims.**

5        Plaintiffs assert state law claims in their respective jurisdictions for breach of the implied

6    warranty of merchantability, breach of express warranty, negligent misrepresentation, negligence,

7    unjust enrichment, and money had and received. Plaintiffs state that for "efficiency's sake" their

8    analysis centers on the statutory claims."[5] (Mot. at 15 n.10.) Plaintiffs summarily argue that the

9    "common law claims are also susceptible to common proof," but they do not address the elements

10   of those claims for each jurisdiction at issue. (*Id.*)

11        Even if the Court were to assume that there are common questions of law or fact for each

12   common law claim in each jurisdiction, Plaintiffs seek damages as relief. Plaintiffs have not

13   demonstrated that any damages awarded on these common law claims would be "incidental" to the

14   injunctive relief they seek, *i.e.* "damages that flow directly from liability to the class as a whole on

15   the claims forming the basis of the injunctive or declaratory relief." *Wal-Mart*, 564 U.S. at 366

16   (internal quotations and citations omitted).

17        The Court concludes Plaintiffs have not met their burden to show they are entitled to class

18   certification of their common law claims, and it DENIES, IN PART, their motion on that basis.

19   **C.**      **The Requirements of Rule 23(b)(2).**

20        Coca-Cola argues Plaintiffs lack Article III standing to seek injunctive relief but does not

21   otherwise challenge their ability to satisfy the requirements of Rule 23(b)(2).

22       **1.**      **Applicable Legal Standards and Burden of Proof for Standing.**

23        Plaintiffs "must allege and show they personally have been injured, not that injury has

24   been suffered by other, unidentified members of the class to which they belong and which they

25   purport to represent." *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (internal quotations omitted). "In

26   a class action, standing is satisfied if at least one named plaintiff meets the" standing requirements.

27

---

28      [5]    Plaintiffs' arguments focus primarily on the consumer-protection claims rather than the claims alleging violations of food labeling laws.

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  In addition, one named plaintiff must have standing to pursue each claim that the class representatives assert and must have standing for each form of relief they seek.  *See, e.g., Davidson v. Kimberly Clark*, 889 F.3d 956, 967 (9th Cir. 2018); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).  Plaintiffs must support the elements of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

When a plaintiff moves for class certification, they must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Therefore, Plaintiffs must put forth some evidentiary proof to show they have standing to seek injunctive relief.  *See, e.g., Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-HSG, 2018 WL 4181896, at *4 (N.D. Cal. Aug. 31, 2018) (resolving motion for class certification and requiring plaintiffs to "make some evidentiary showing that they have standing, rather than simply alleging as much"); *Darisse v. Nest Labs., Inc.*, No. 14-cv-01363-BLF, 2016 WL 4385849, at *3 (N.D. Cal. Aug. 15, 2016) ("On a motion for class certification, … a plaintiff must show standing 'through evidentiary proof[.]'").

Three Plaintiffs assert claims under California law and two Plaintiffs assert claims under New York law.  Therefore, as long as one named Plaintiff from those jurisdictions has standing to seek injunctive relief in those jurisdictions, and the other Rule 23 requirements are satisfied, the Court could certify those classes.  For the remaining claims, there is only one named Plaintiff per jurisdiction, and that named Plaintiff must have standing to seek injunctive relief.

Plaintiffs must "demonstrate that [they have] suffered or [are] threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [they] will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (quoting *Lujan*, 504 U.S. at 560 and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  The latter inquiry turns on whether the plaintiff has a "real and immediate threat of repeated injury." *Id.*  The threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute an injury in fact for injunctive relief purposes. *Davidson*, 889 F.3d at 967.

**2.     Analysis.**

Coca-Cola argues that because each Plaintiff is now aware of how phosphoric acid allegedly is used in Coke, they cannot show an imminent threat that they will be deceived in the future.  In *Davidson*, the Ninth Circuit addressed the issue of standing to seek injunctive relief in the context of a false advertising case.  It held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase[.]"  889 F.3d at 969.

In *Davidson,* the plaintiff argued that the defendant's representations that its toilet wipes were flushable was false because the wipes were not suitable to dispose of in a toilet.  *Id.* at 961-62.  The plaintiff also alleged that she wanted to purchase wipes that were truly flushable and would purchase defendants' wipes if she could determine they were flushable before she purchased them.  *Id.* at 962.  She argued that when she was presented with defendants' packaging at stores, she had "no way of determining whether the representation 'flushable' is in fact true" without purchasing the product.  *Id.* at 972.

The court reasoned that "[k]knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future[.]"  *Id.*  It then provided two examples of when a plaintiff would face the "similar injury" of being unable to rely on a defendant's representations in deciding whether or not to purchase a product.  *Id.* at 970-72.  First, a plaintiff might show they have standing to seek injunctive relief by plausibly alleging their inability to rely on the labels would cause them to refrain from purchasing a product that they otherwise would want.  *Id.* at 970.  Second, a plaintiff might plausibly allege they would "purchase the product in the future, despite the fact it was once marred by false advertising or labeling" because they "may reasonably, but incorrectly, assume the product was improved."  *Id.*

Plaintiffs argue that Coca-Cola could stop using phosphoric acid as an ingredient in Coke.  Coca-Cola argues responds that such a decision is unlikely because "phosphoric acid is a mainstay of the Coke formula, having been used in the beverage for more than a century."  (Opp. Br. at

20:2-4.) Coca-Cola states that it used the phrase "original formula" on some Coke labels because

> [i]n 1985, Coca-Cola introduced a reformulated Coke product, commonly referred to by consumers as "New Coke." This introduction provoked a strong negative response from consumers who preferred the taste of the original Coca-Cola. As a result, Coca-Cola withdrew "New Coke" and reintroduced the original Code product. To avoid consumer confusion – and to inform consumers that the product was not "New Coke" – Coca-Cola introduced the terms "Classic" and "*original formula*" on some Coke labels.

(Metcalf Decl., ¶ 2, Ex. 5 (Resp. to Plaintiffs' Phase II Interrogatory No. 6).)

The parties have not yet engaged in Phase III discovery, which will pertain to the merits of Plaintiffs' claims. However, the Court concludes that Plaintiffs have not met their evidentiary burden to show it is likely – rather than speculative or conjectural – that Coca-Cola would remove phosphoric acid as one of Coke's ingredients. For that reason, the Court concludes that Plaintiffs have not shown the *Davidson* court's second example is applicable in this case.

Plaintiff also argue the *Davidson* court's first example is applicable. In *Fernandez v. Atkins Nutritionals, Inc.*, the plaintiff challenged the labels on products relating to the Atkins diet, which "instructs adherents to limit their intake of carbohydrates that impact their blood sugar level." No. 17-cv-01628-GPC-WVG, 2018 WL 280028, at *1 (S.D. Cal. Jan. 3, 2018). The plaintiff alleged the phrase "net carbs" on the defendant's labels was misleading because the method to the company used to calculate net carbohydrates excluded carbohydrates that did impact blood sugar levels. That method differed from the method used by the Atkin diet's founder. *Id.*, 2018 WL 280028, at *1-*2.

The court concluded that the plaintiff had not alleged facts to show she had standing to seek injunctive relief under *Davidson*. First, the plaintiff had not alleged she wanted to purchase the defendant's products in the future. Second, she admitted that "she now has knowledge that enables her to make an appropriate choice with respect to" the defendant's products. *Id.*, 2018 WL, 280028, at *15. Therefore, the court determined there was no risk that she would be misled in the future, unlike the plaintiff in *Davidson* who had no way to determine whether the defendant's wipes conformed to the representations on the labels. *Id.*; *but see Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at *4-5 (N.D. Cal. Apr. 25, 2018)

(disagreeing with *Fernandez* and concluding the Ninth Circuit would reject the defendant's reasoning that a plaintiff cannot establish standing if they can look to the label to determine whether or not they are being deceived).

Similarly, in *Rahman v. Motts LLP*, the plaintiff argued the statement "No Sugar Added" on the defendant's 100% apple juice did not comply with FDA regulations and caused him to believe that the defendant's apple juice contained less sugar and was healthier than other 100% apple juices. Before the Ninth Circuit issued its opinion in *Davidson,* the court granted summary judgment and found the plaintiff lacked standing to seek injunctive relief. No. 13-cv-03482-SI, 2014 WL 5282106, at *6 (N.D. Cal. Oct. 15, 2014). In that opinion, the court noted that "whatever his state of prior knowledge, Rahman is now fully aware that 'No Sugar Added' simply means that no sugar was added to a product, not that the product does not contain sugar or is a good beverage for a Type 2 diabetic to drink." *Id.*

The court reconsidered that decision after *Davidson* and again concluded the plaintiff lacked standing. *Rahman v. Motts LLP*, No. 13-cv-03482-SI, 2018 WL 4585024, at *3-4 (N.D. Cal. Sept. 25, 2018). The court found that the plaintiff sufficiently alleged both that he had been deceived by the statement "No Sugar Added" and that he intended to purchase the product again. *Id.*, 2018 WL 4585024, at *3. The court agreed with the reasoning in *Fernandez* and determined that the plaintiff was now aware that his belief that the defendant's product was "healthier" and contained less sugar was unfounded. *Id.* Therefore, because he was "able to rely on the packaging now that he understands … the label," he had not established the requisite future injury. *Id.*

In *Cordes v. Boulder Brands USA, Inc.*, the plaintiff alleged he purchased pretzels in a container with greater than forty-percent empty space, or "slack-fill." No. CV 18-6534 PSG (JCx), 2018 WL 6714323, at *1 (C.D. Cal. Oct. 17, 2018). The plaintiff alleged that this empty space led him to believe that the container contained more pretzels than it did. *Id.* The court held the plaintiff lacked standing to seek injunctive relief. Notably, the plaintiff did not allege he wanted to purchase the product again. *Id.*, 2018 WL 6714323, at *1. The court also distinguished the facts at issue from the facts in *Davidson* on the basis that in *Davidson* "and the other cases cited in that opinion … the plaintiff could not easily discover whether a previous

10

misrepresentation had been cured without first buying the product at issue." *Id.*, 2018 WL 6714323, at *4. The court concluded the plaintiff had "not adequately explained why he will be deceived by slack-fill in the future, now that he knows that he can easily determine the number of pretzels in each package by simply reading the label," which included the net weight of the product. *Id.* In contrast, in *Padilla v. Whitewave Foods Company*, another slack-fill case, the court concluded the plaintiffs sufficiently alleged standing to seek injunctive relief where they alleged the containers containing the product were opaque. No. LA CV19-09327 JAK (JCx), 2019 WL 4640399, at *6-8 (C.D. Cal. July 26, 2019). The court concluded that because the plaintiffs could not "unravel" the nature of the misrepresentation prior to purchase, they plausibly alleged the requisite future injury. *Id.*, 2019 WL 4640399, at *8.

It is undisputed that Coca-Cola includes phosphoric acid in the Coke ingredient list, but the question of whether Coca-Cola's labels are deceptive does not depend on the *fact* that phosphoric acid is an ingredient. Rather, the issue is the nature and function of that ingredient, which is disputed and which is not readily apparent from the labels themselves. As such, the Court concludes this case is more analogous to *Davidson* or *Padilla* than to *Fernandez, Rahman,* or *Cordes.* In light of the parties' positions on the nature and function of phosphoric acid, the Court also cannot conclude Plaintiffs have a true understanding of what the statements on the labels mean.

During his deposition, Mr. Merritt testified that he has not purchased Coke since he learned about the alleged misrepresentation on the label. (*See* Dkt. No. 104-4, Deposition of Paul Merritt at 19:6-23, 20:22-21:3.)[6] Mr. Merritt attests that if Coca-Cola properly labeled Coke, including "disclosing phosphoric acid's status as an artificial flavor or preservative," he would consider purchasing Coke in the future. (Dkt. No. 176-3, Declaration of Paul Merritt, ¶¶ 2-3.) The Court concludes that Mr. Merritt has met his burden to show he has standing to seek

---

[6]     The full transcript of each Plaintiff's deposition is in the record as an exhibit to Plaintiffs' motion for class certification or as an exhibit submitted during briefing on Coca-Cola's motion for summary judgment. To the extent certain Plaintiffs testified they would be interested in purchasing Coca-Cola in the future, Coca-Cola has not pointed the Court to any testimony that would call that testimony into question.

injunctive relief on behalf of the California class. For that reason, the Court does not address whether Mr. Engurasoff and Mr. Merritt also have standing. *See Bates*, 511 F.3d at 985.

Mr. Woods testified that after he learned the Pemberton Claim was, in his view, false, he stopped purchasing Coke for his own consumption but would occasionally buy it for others. Mr. Woods also testified that his primary complaint was that the label suggested Coke did not have artificial flavors or ingredients, when, in his view, it did. He interpreted the Pemberton Claim to mean that Coke was a healthier option than other sodas because it did not contain artificial flavors or preservatives. His testimony suggested that if Coke was correctly labeled, he would be willing to purchase it again. (Dkt. No. 160-19, Declaration of Richard Barrett ("Barrett Decl."), ¶ 9; Dkt. No. 160-12, Barrett Decl., Ex. K (Deposition of Thomas Woods ("Woods Depo.") at 45:22-46:18, 62:3-63:11, 70:7-71:22).) The Court concludes that Mr. Woods has met his burden to show he has standing to seek injunctive relief on behalf of the Florida class.

Ms. Marino testified that she has not purchased Coke since she filed the complaint in her case "[b]ecause there's misleading information … on the label," referring to the Pemberton Claim. Ms. Marino also testified she has made it a practice not to consume Coke since that time. (Barrett Decl., ¶ 8; Dkt. No. 160-11, Barrett Decl., Ex. J (Deposition of Michelle Marino ("Marino Depo.") at 44:20-45:9, 46:6-19).) Ms. Marino also testified that she would probably buy Coke in the future, if Coca-Cola began labeling its product correctly. (Marino Depo. at 135:6-11, 142:5-143:9.) The Court concludes Ms. Marino has met her burden to show she has standing to seek injunctive relief on behalf of the Massachusetts class.

Mr. Sowizrol stopped buying Coke at some point around the time he retained counsel in this case and avoids drinking it, but he could not provide a specific reason for why he avoids it. (Barrett Decl., ¶ 10; Dkt. No. 160-13, Barrett Decl., Ex. L (Deposition of Ronald Sowizrol ("Sowizrol Depo.") at 34:23-35:9, 49:11-20).) Mr. Sowizrol also testified that he believes phosphoric acid is a chemical preservative and an artificial flavor. He will, on occasion, buy and consume products that contain artificial flavors or preservatives and does not necessarily avoid products that contain phosphoric acid. (*Id.* at 51:16-53:6.) Mr. Sowizrol was not asked if Coca-Cola "properly labeled Coke, including disclosing phosphoric acid's status as an artificial flavor or

chemical preservative," whether he would consider purchasing it. (Dkt. No. 176-4, Declaration of Ronald Sowizrol ("Sowizrol Decl."), ¶ 2.) He did testify that he would want Coca-Cola either to disclose on its label that Coke contains a preservative or to refrain from making the representation that it is preservative free. (Sowizrol Depo. at 72:22-73:3.) Mr. Sowizrol also attests that "[i]f Coca-Cola properly labeled Coke," he "would consider purchasing it in the future." (Sowizrol Decl. ¶ 3.) The Court concludes Mr. Sowizrol has met his burden to show he has standing to seek injunctive relief on behalf of the Illinois class.

Ms. Lazaroff testified that the last time she purchased or consumed Coke was around 2014, after she determined the Pemberton Claim was not true because phosphoric acid was an artificial flavor and a chemical preservative. (*See* Dkt. No. 104-1, Deposition of Yocheved Lazaroff ("Lazaroff Depo.") at 13:15-15:6, 15:18-16:9, 81:23-82:5, 100:19-101:4.) Ms. Lazaroff attests that she was not asked at her deposition if Coca-Cola "properly labeled Coke, including disclosing phosphoric acid's status as an artificial flavor or chemical preservative," whether she would consider purchasing it. (Dkt. No. 176-5, Declaration of Yocheved Lazaroff, ¶ 2.) Ms. Lazaroff attests that "[i]f Coca-Cola properly labeled Coke," she "would consider purchasing it in the future." (*Id.* ¶ 3.) Ms. Lazaroff did testify that she now tries to avoid purchasing food with phosphoric acid and tries to avoid artificial flavors and preservatives when purchasing food or beverages. (*See, e.g.,* Lazaroff Depo. at 35:8-20.) In light of the dispute over the function of phosphoric acid, the Court concludes Ms. Lazaroff has met her burden to show she has standing to seek injunctive relief on behalf of the New York class.

Ms. Dube testified that the Original Formula and the Pemberton Claims caused her to believe Coke was a healthier option than other soft drinks because it was "natural." In her view, those claims are misleading because phosphoric acid is an artificial flavor and a preservative. (Barrett Decl., ¶ 11; Dkt. No. 160-14, Barrett Decl., Ex. M (Deposition of Rachel Dube ("Dube Depo.") at 12:6-14:11).) She also testified that she stopped purchasing and drinking Coke after she came to believe phosphoric acid was a preservative and an artificial flavor, which was before she filed her complaint. (*Id.* at 50:4-51:14.) Ms. Dube testified that if she knew Coke contained artificial flavors or preservatives, she would have purchased it but in limited quantities. (*Id.* at

114:2-19; *see also id.* at 116:5-24.)  The Court concludes Ms. Dube has met her burden to show she has standing to seek injunctive relief on behalf of the New Jersey class.

### 3. Statutory Standing.

Coca-Cola also argues that Ms. Marino, Ms. Lazaroff, and Ms. Dube lack statutory standing to bring the Chapter 93A, the Sections 349 and 350 Claims, and the NJCFA Claim because they must prove an ascertainable loss.  Unlike Article III standing, the issue of whether a plaintiff has statutory standing does not necessarily implicate the Court's jurisdiction.  *See, e.g., Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  To the extent Coca-Cola argues this impacts Ms. Dube's ability to satisfy the commonality requirement, the Court rejects that argument in the following section.  Coca-Cola does not otherwise link this argument to these Plaintiffs' ability to satisfy Rule 23(a)'s commonality and typicality requirements.  It also does not contend these Plaintiffs' alleged failure to establish an ascertainable loss prevents them from showing they have Article III standing to pursue these claims.  The Court has carefully considered Coca-Cola's argument on this issue, and it concludes the argument goes to the merits of Plaintiffs' claims and should be addressed in that context.

### D. The Rule 23(a) Requirements.

#### 1. Numerosity.

Coca-Cola does not dispute this factor, and there is evidence that each class has at least 1,000 members.  (Bartlett Decl., ¶ 2, Ex. A (Resps. to Plaintiffs' First Set of Request for Admissions 1-8).)  The Court concludes the classes are sufficiently numerous.  *See, e.g., Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D. 623, 628-29 (N.D. Cal. 2005) (finding joinder was impractical where there were over 236 members in the putative class).

#### 2. Adequacy.

Coca-Cola does not dispute that Plaintiffs and their counsel will adequately represent each class.  In order to determine whether the adequacy prong is satisfied, courts consider two questions.  First, "[d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members."  *Staton v. Boeing, Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  There is no evidence in the record to suggest that is the case here.  Second, "will the representative plaintiffs

and their counsel prosecute the action vigorously on behalf of the class?" *Id.* The Court concludes Plaintiffs have met their burden to show they and their counsel will prosecute this action vigorously and will adequately represent the class. (*See, e.g.,* Dkt. Nos. 160-7 through 160-9, Declarations of John W. (Don) Barrett, Keith M. Fleischman, and Pierce Gore.)

### 3. Commonality.

Coca-Cola argues Plaintiffs cannot show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)'s commonality requirement is construed permissively. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. Plaintiffs must establish "the class members have suffered the same injury," which means more than demonstrating they "suffered a violation of the same provision of law." *Wal-Mart,* 564 U.S. at 350 (internal quotations and citations omitted). Rather, the "claims must depend on a common contention … of such a nature that it is capable of classwide resolution," *i.e.* "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification" is whether a class-wide proceeding has "the capacity … to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation and citation omitted).

To prevail under their theory, Plaintiffs will be required to proffer evidence about the nature of phosphoric acid and how it is used in order to show Coca-Cola's labels are false or misleading or that Coca-Cola violated state or federal food labeling laws. In *Hilsley v. Ocean Spray Cranberries, Inc.*, the plaintiffs challenged the use of the phrase "all natural" on the defendant's products because the products contained synthetic fumaric and malic acids. According to the plaintiffs those acids were artificial flavors; a fact the defendant disputed. No. 17-cv-2335-GPC (MDD), 2018 WL 6300479, at *1-2, 4 (S.D. Cal. Nov. 29, 2018). The court concluded that "whether fumaric and malic acids, as used in Defendants' Products, act as flavor ingredients is one contention common to the class." *Id.*, 2018 WL 6300479, at *5. The issue of how phosphoric acid is used in Coke is a question that must be answered to resolve each of the statutory claims for relief, and the Court concludes that question would have "the capacity … to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350

(internal quotation and citation omitted). Therefore, at the very least, as in *Hilsley*, whether phosphoric acid as used in Coke to act as an artificial flavor or as a preservative, or both, "is one contention common to the class." *Id.*

The primary dispute on this factor is based on Coca-Cola's argument that Plaintiffs will not be able to show the statements at issue are material to the majority of the classes. The Court examines whether, under relevant law, Plaintiffs would be entitled to offer class-wide proof to establish materiality. The Court will then examine whether the record is sufficient to show Plaintiffs may be able to do so in this case.

### a. FAL, UCL, and CLRA.

To establish a label is misleading under each of these statutes, Plaintiffs must satisfy the "reasonable consumer" standard. *See, e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Kosta v. DelMonte Foods*, 308 F.R.D. 217, 224 (N.D. Cal. 2015) ("Questions of materiality and reliance are determined based on the reasonable consumer standard, not the subjective understandings of individual plaintiffs."). "[T]he CLRA demands that each potential class member have both an actual injury and show that the injury was caused by the challenged practice." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, __ U.S. __, 137 S.Ct. 1702 (2017). However, in situations where a material misrepresentation is "made to the entire class, an inference of reliance arises as to the class." *Id.* (internal citations and quotations omitted).

In food labeling cases such as this, courts have concluded that a plaintiff will satisfy the commonality requirement based the question of whether the label would be deceptive to a reasonable consumer. For example, in *In re ConAgra Foods, Incorporated*, the plaintiffs alleged that defendant deceptively labeled cooking oil as "100% Natural," when the oil contained genetically modified organisms ("GMOs"). 90 F. Supp. 3d 919, 939 (C.D. Cal. 2015).[7] The court

---

[7] In *In re ConAgra*, the plaintiffs moved for class certification of twelve statewide classes and brought claims under, *inter alia*, the UCL, the FAL, the CLRA, the FDUTPA, the IFCA, and Section 349. The Ninth Circuit affirmed the District Court's decision in two opinions. In an unpublished opinion, the Ninth Circuit affirmed the district court's conclusion on typicality, predominance, and superiority. *Briseno v. ConAgra Foods, Inc.*, 674 Fed. Appx. 654 (9th Cir. 2017). In its published opinion, the Ninth Circuit held plaintiffs seeking to certify a class are not

concluded that the plaintiffs satisfied the commonality requirement because their claims presented the common question of whether the "100% Natural" statement was false or misleading. 90 F. Supp. 3d at 973; *see also Ries v. Ariz. Beverages USA, LLC*, 287 F.R.D. 523, 538 (N.D. Cal. 2012) ("Plaintiffs meet the *Dukes* standard because the entire proposed class has suffered the same injuries flowing from the alleged misrepresentations, and the requested injunctive relief, prohibiting defendants from advertising beverages containing HFCS or citric acid as 'natural' (or variants thereof) will have the effect of remedying the purported harm class-wide.").

Coca-Cola also argues that Coke labels varied throughout the class period. However, all class members would have been exposed to the Ingredients List. With respect to the Original Formula and the Pemberton Claims because of the manner in which Plaintiffs have defined the classes, the Court can infer that individuals who fall within the class would have been exposed to the same alleged misrepresentation. Therefore, under the UCL, the FAL, and the CLRA, the question of whether the statements at issue would be material to a reasonable consumer is a common question apt to drive a common answer that would dispose of these claims.

### b. IFCA

Coca-Cola argues that under the IFCA, Plaintiffs will be required to show that, subjectively, the representations and omissions were material to each class member. The court *In re ConAgra* noted that materiality under the IFCA is established "by applying a reasonable person standard" and concluded that the issues of materiality and reliance "do not preclude certification of the class on predominance grounds." 90 F. Supp. 3d at 996. The court also noted that although the IFCA required a plaintiff to show that "defendant's deception proximately caused his or her damage," if a plaintiff could show that the representation at issue was "made to all putative class members, Illinois courts have concluded that causation is susceptible to classwide proof and that individualized inquiries concerning causation do not predominate if plaintiffs are able to adduce sufficient evidence that the representation was material." *Id.* at 997; *see also id.* at 997-98 (citing

---

required to show there is an administratively feasible way to identify putative class members. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).

cases).  Because the court concluded that the plaintiffs would be capable of proving materiality on

a classwide basis, it granted the plaintiffs' motion to certify a class under the IFCA.  *Id.* at 998,

1018-21, 1036.

In *Tylka v. Gerber Products Company,* the court determined that the plaintiffs satisfied the

commonality requirement based on allegations that the defendant misrepresented the contents of

its baby food products.  178 F.R.D. 493, 496-97 (N.D. Ill. 1998).  The court reasoned that

although there were some variations in advertising, the defendant's "standardized conduct

regarding adulteration and advertising is the crux of this litigation" and was sufficient to show that

a common issue of law or fact existed.  *Id.* at 497.

The Court concludes that the question of whether the representations at issue would be

material to a reasonable consumer is a common question apt to drive a common answer that would

dispose of the IFCA claim.

### c.    FDUPTA.

Coca-Cola argues that under the FDUPTA, Plaintiffs must make a subjective showing that

the representations and omissions were material to each class member.  The Court is not

persuaded.  In *In re ConAgra,* the court addressed the question of reliance in its predominance

inquiry and stated that "[c]laims under the FDUTPA are governed by a 'reasonable consumer'

standard, obviating the need for proof of individual reliance by class members."  90 F. Supp. 3d at

992.  It noted, however, that "a classwide inference of reliance is inappropriate if plaintiffs cannot

establish that the conduct would be material to a reasonable person."  *Id.*  The court also

determined the plaintiffs had presented sufficient evidence that they could establish materiality on

a class-wide basis.  *Id.* at 1018-21, 1036.

Similarly, in *Fitzpatrick v. General Mills, Inc.*, the court stated that to satisfy the

FDUPTA's causation requirement, "each plaintiff is required to prove only that [the defendant's]

deceptive practice would – in theory – deceive an objectively reasonable consumer."  263 F.R.D.

687, 695 (S.D. Fla. 2010), *vacated on other grounds* 635 F.3d 1279, 1283 (11th Cir. 2011).[8]  The

---

[8]    The Eleventh Circuit affirmed the district court's analysis of the Rule 23 factors but found
a conflict between the analysis and the class definition, which appeared to take into account

1   court in that case found the plaintiff satisfied Rule 23(a)'s commonality requirement where the

2   evidentiary record suggested "that a significant number of Yo-Plus consumers purchased Yo-Plus

3   because of its purported digestive health benefit[.]"  *Id.* at 697.  The *Fitzpatrick* court also

4   concluded that the evidence necessary to prove whether Yo-Plus worked as advertised would also

5   be the same for each plaintiff.  *Id.*

6          The Court concludes that the question of whether the representations at issue would be

7   material to a reasonable consumer is a common question apt to drive a common answer that would

8   dispose of the FDUPTA claim.

9                          **d.      Chapter 93A.**

10          Coca-Cola argues that under Chapter 93A, Plaintiffs must make a subjective showing of

11  materiality.  Once again, the Court is not persuaded.  *See, e.g., In re M3 Power Razor Sys. Mktg.*

12  *and Sales Pracs. Litig.*, 270 F.R.D. 45, 54 (D. Mass. 2010) ("*In re M3 Power*").  In that case, the

13  court reiterated that "[t]he threshold for commonality is not high."  *Id.* at 54.  The court concluded

14  that the question of whether the defendant "misrepresented the capabilities of the M3P razor to the

15  potential class" was a common question for claims brought under Chapter 93A.  *Id.* at 54, 56.  The

16  court also noted that under Chapter 93A, "[m]ateriality and causation are established by a showing

17  that the deceptive representation could reasonably be found to have caused a person to act

18  differently from the way he or she otherwise would have acted."  *Id.* (internal quotations, brackets

19  and citations omitted).

20          The Court concludes that the question of whether the representations at issue would be

21  material to a reasonable consumer is a common question apt to drive a common answer that would

22  dispose of the Chapter 93A claim.

23                          **e.      GBL Sections 349 and 350.**

24          Under GBL Sections 349 and 350, a "plaintiff must prove that the defendant made

25  misrepresentations or omissions that were likely to mislead a reasonable consumer in the

26  plaintiff's circumstances."  *Solomon v. Bell Atl. Co.*, 777 N.Y.S.2d 50, 52 (Sup. Ct., App. Div.

27

28  individual reliance.  635 F.3d at 1283.

2004); *accord In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) ("Materiality under Section 349 of the GBL is an objective inquiry. … The same analysis applies to false advertising claims under Section 350;" and noting claims under Sections 349 and 350 do not require proof of reliance). The Court concludes that the question of whether the representations at issue would be material to a reasonable consumer is a common question apt to drive a common answer that would dispose of the Section 349 and Section 350 claims.

### f. New Jersey CFA.

Coca-Cola argues commonality is lacking under the NJCFA because each class member will be required to prove an ascertainable loss. It also argues that there are individualized issues as to materiality, suggesting that each class member would be required to establish that the alleged misrepresentations caused them a loss. A plaintiff need not prove reliance under the NJCFA, and causation under the NJCFA is not the equivalent of reliance. *Lee v. Carter-Reed Co., L.L.C.*, 4 A.3d 561, 577 (N.J. 2010); *see also Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997) (noting that under the CFA liability results from "misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby'") (quoting N.J.S.A. 56:8–2)). "To establish causation, a consumer merely needs to demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." *Lee,* 4 A.3d at 577.

In addition, where a plaintiff seeks to certify a Rule 23(b)(2) class, only the named plaintiffs needs to show ascertainable loss. *See, e.g., Cameron v. South Jersey Pubs., Inc.*, 213 A.3d 967, 986 (N.J. Super. Ct. App. Div. 2019). Because the Court has determined that at least one common question is whether phosphoric acid is or is used as an artificial flavor or a preservative, and because Ms. Dube need not show individual class members suffered an ascertainable loss to certify a class under Rule 23(b)(2), the Court concludes that there are common questions apt to drive common answers that would dispose of the NJCFA claim.

### g. The Record on Materiality.

Coca-Cola argues that the evidence demonstrates that Plaintiffs will not be able to able establish materiality on a class-wide basis, and its arguments on that issue delve into the merits of Plaintiffs' claims. The Court may consider the issue of materiality only to the extent it is "relevant

to determining whether the Rule 23" commonality requirement is satisfied.  To support its position, Coca-Cola relies, in part, on *Algarin v. Maybelline, LLC*, 300 F.R.D. 444 (S.D. Cal. 2014).  In that case, the plaintiffs alleged the defendant's advertising for its "SuperStay 24HR" line of cosmetics was misleading, in particular the representations "24HR wear" and "No Transfer."  According to the plaintiffs, those statements were misleading because the products did not last 24 hours.  *Id.* at 450-51.

In opposition to the plaintiffs' motion for class certification, the defendant presented a report from its expert in which he opined "repeat purchasing is a behavioral indicator of customer satisfaction and … that repeat purchasers are fully informed as to the duration claims and realities when they" purchase defendant's products again.  Those consumers, therefore, would not "be considered injured in the manner proposed by the" plaintiffs.  *Id.* at 453.  According to the expert's report, between 9% and 14% of his sample were one-time purchasers who had expected the product to last 24 hours and that about 54% of purchasers were not injured in the manner alleged by the plaintiffs.  *Id.* at 453-54.

The court determined this evidence demonstrated "who the reasonable consumer in the target audience is and what drives her in making purchasing decisions."  *Id.* at 453.  The court found that the defendant's expert report showed that "a substantial number of class members … were not misled by the 24-hour claim" and determined that the survey results and expert evidence demonstrated that the plaintiffs would not be able to establish materiality and reliance by way of common proof.  *Id.* at 457.  Moreover, the plaintiffs did not refute the defendant's evidence.

In *In re ConAgra*, the parties presented evidence about whether the claims at issue were material to a reasonable consumer.  90 F. Supp. 3d at 1018-21 (considering issue in the context of Rule 23(b)(3)'s predominance factor).  The plaintiffs put forth third-party surveys that purported to show 59% of consumers would look for "a 'natural claim when shopping for packaged or processed foods, such as" the defendant's oils.  *Id.* at 1018.  The plaintiffs also relied, in part, on the defendant's market research.  The court also cited decisions finding "a representation material when significantly smaller percentages of consumers than those reflected in the surveys" presented viewed a representation to be material.  *Id.* at 1019 (citing cases).  The court ultimately determined

the plaintiffs' evidence was sufficient to show that materiality *could* be proved on a class-wide basis.  *Id.* at 1021.

Coca-Cola has put forth survey evidence conducted by its expert, Hal Poret, Ph.D., which it argues demonstrates that the failure to identify phosphoric acid as a preservative or as an artificial flavor on Coke's label is not material to consumers.  Coca-Cola also argues that Dr. Poret's surveys demonstrate the Pemberton Claim is not material.  (*See generally* Metcalf Decl., ¶ 2, Ex. 1 (Poret Expert Report and Appendices).)  Plaintiffs present evidence from their expert, Christiane Schroeter, Ph.D., in which Dr. Schroeter argues that Dr. Poret's surveys are flawed – in design and in their conclusions.  (Barrett Decl., ¶ 14, Ex., P (Schroeter Expert Report).)[9] Plaintiffs also present Coca-Cola's internal marketing studies, which they argue demonstrate that the claims at issue in this case would be material to a reasonable consumer.  (*Id.*, ¶¶ 4-5, Exs. C-D.)

Unlike the plaintiffs in *Algarin*, Plaintiffs have put forth evidence to refute Dr. Poret's conclusions on materiality, including Coca-Cola's own internal marketing materials.  Plaintiffs contend those surveys demonstrate that Coca-Cola knew the representations at issue would be important to reasonable consumers.  *See, e.g., Hinojos v. Kohls Corp.*, 718 F.3d 1089, 1107 (9th Cir. 2013) ("A representation is 'material,' … if a reasonable consumer would attach importance to it *or if "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action*.") (emphasis added).

It is evident that Coca-Cola believes it will prevail on the issue of materiality when the Court addresses the merits of Plaintiffs' claims.  For purposes of class certification, however, the Court concludes Plaintiffs have met their burden to show a fact-finder would be able to answer the question of whether the statements are material to a reasonable consumer on a class-wide basis.  Accordingly, the Court concludes that Plaintiffs have met their burden to show common questions or law or fact exist on their statutory claims.

---

[9]    Although Plaintiffs argue that Dr. Poret's surveys are flawed and that his opinion is unreliable, they do not move to strike his report.

####        4.        Typicality.

Coca-Cola also argues that Plaintiffs cannot satisfy the typicality requirement.  Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality requirement also is applied permissively. *Hanlon*, 150 F.3d at 1020.  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative.").  Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Coca-Cola also argues Plaintiffs are atypical of absent class members because the statements Plaintiffs assert are material to them are not material to the majority of the putative class members.  For the reasons set forth above in its discussion of commonality, the Court concludes that Plaintiffs have met their burden to show their claims are typical of other class members.  The Court's conclusion on this point is reinforced by *In re ConAgra*, in which the court reasoned that, although "some class members may not have relied on" the representation at issue, that did not render the plaintiffs atypical class members.  90 F. Supp. 3d at 975.  The court found the plaintiffs satisfied the typicality requirement because their claims and the absent class members' claims arose from the same course of conduct.  It also noted that the named plaintiffs were not subject to unique defenses, which might have been the case if any named plaintiff had not relied on the label when they purchased the defendant's cooking oils.  *Id.*

The Court concludes Plaintiffs have met their burden to satisfy the typicality requirement.

### CONCLUSION

 For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART Plaintiffs' motion for class certification.  The Court HEREBY ORDERS the parties to appear on March 13, 2020 at 11:00 a.m. for a further case management conference.  The parties shall file a

joint case management conference statement by March 6, 2020.

**IT IS SO ORDERED.**

Dated: February 14, 2020

_____

JEFFREY S. WHITE
United States District Judge